UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
THE SANDS HARBOR MARINA CORP.,
SANDS HARBOR MARINA LLC, THE SANDS
HARBOR MARINA OPERATING CORP.,
SANDS HARBOR MARINA OPERATING LLC,
GREG W. EAGLE, PINE CREEK RANCH,
LLC, and UNIVERSITY 1248, LLC,

                        Plaintiffs,        <u>MEMORANDUM & ORDER</u>
                                           09-CV-3855(JS)(WDW)
        -against-

WELLS FARGO INSURANCE SERVICES OF
OREGON, INC.; WELLS FARGO BANK,
N.A.; EVMC REAL ESTATE CONSULTING,
INC.; LARRY ESACOVE; THE ESTATE OF
AIDA ESACOVE; DAVID P. GUILOT;
ANTHONY B. CHOPRA; TISDALE &
NICHOLSON, LLP; JEFFREY A. TISDALE;
GUY C. NICHOLSON; and MICHAEL D.
REIS,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:          Roy A. Klein, Esq.
                         Law Offices of Roy A. Klein
                         352 Broad Hollow Road, Suite 144
                         Melville, NY 11747

For Defendants
For Wells Fargo
Defendants:              Jason Ederer, Esq.
                         Jennifer H. Feldscher, Esq.
                         Goldberg Segalla LLP
                         780 Third Avenue, Suite 3100
                         New York, NY 10017

                         Peter J. Biging, Esq.
                         Sanem Ozdural, Esq.
                         Lewis, Brisbois, Bisgaard & Smith, LLP
                         77 Water Street, Suite 2100
                         New York, NY 10005

For T&N Defendants:      Gregory John Radomisli, Esq.

```
                              Martin, Clearwater & Bell
                              220 East 42nd Street
                              New York, NY 10028

For Reis:                     Michael F. Bachner, Esq.
                              Scott James Splittgerber, Esq.
                              Bachner & Herskovits, P.C.
                              26 Broadway, Suite 2310
                              New York, NY 10004

                              Howard S. Weiner, Esq.
                              Bachner & Associates, P.C.
                              39 Broadway, Suite 1610
                              New York, NY 10006

For the EVMC Defendants,
David P. Guilot,
Anthony B. Chopra:            No appearances.
```

SEYBERT, District Judge:

Currently pending before the Court are: (1) plaintiffs The Sands Harbor Marina Corp., Sands Harbor Marina LLC, The Sands Harbor Marina Operating Corp., the Sands Harbor Operating LLC, Greg W. Eagle, Pine Creek Ranch, LLC, and University 1248, LLC's ("Plaintiffs") motion for default judgment against the EVMC Defendants[1] (Docket Entry 135) and Magistrate Judge William D. Wall's Report and Recommendation (R&R) on that motion (Docket Entry 144); (2) the T&N Defendants'[2] motions for reconsideration

---

[1] Unless otherwise specified, capitalized terms shall have the same meaning as the Court's prior orders. "EVMC Defendants" shall mean EVMC Real Estate Consultants, Inc.; Larry Esacove; and the Estate of Aida Esacove. "Defendants" refers to all of the defendants generally.

[2] The "T&N Defendants" refers to Tisdale & Nicholson, LLP ("Tisdale & Nicholson"); Jeffrey A. Tisdale ("Tisdale"); and Guy C. Nicholson ("Nicholson").

(Docket Entries 140 and 146); and (3) Plaintiffs' motion for reconsideration (Docket Entry 148). For the following reasons: (1) Judge Wall's R&R is ADOPTED in its entirety and Plaintiffs' motion for default against the EVMC Defendants is DENIED; and (2) Plaintiffs' and the T&N Defendants' motions for renewed reconsideration are GRANTED, but with certain caveats.

BACKGROUND[3]

## I. Factual Background

The Court presumes general familiarity with the background of this case, which is detailed in the Court's previous orders. Briefly, Plaintiffs allege that Defendants engaged in a fraudulent scheme in which Defendants led Plaintiffs to believe that Plaintiffs would receive financing for real estate projects. (Second Amended Complaint ("SAC") ¶ 1[4].) Defendants allegedly perpetuated this scheme through forged documents from EVMC, a purported shell corporation, and false representations and promises. (SAC ¶ 1.)

Specifically,

---

[3] The Court will provide greater detail regarding the factual and procedural background as necessary during the discussion of specific issues.

[4] Pursuant to the Court's August 7, 2014 Electronic Order, Plaintiffs filed a Third Amended Complaint ("TAC," Docket Entry 147). The paragraph numbers in the TAC coincide with those in the SAC--with the exception that the TAC provides greater detail regarding subject matter jurisdiction--and therefore the Court will refer solely to the SAC.

> [u]nder the scheme, defendant Wells Fargo
> Bank N.A., through a Vice President of one
> of its wholly owned subsidiaries Wells Fargo
> Insurance Services of Oregon, Inc., Michael
> D. Reis, fraudulently induced [Plaintiffs]
> Sands Harbor and Eagle to make payments to
> the law firm of Tisdale & Nicholson, LLP,
> which payments the plaintiffs believed to be
> fees and expenses that EVMC was incurring to
> obtain the requested financing. But EVMC
> did nothing to obtain any financing for
> plaintiffs. Instead, Tisdale & Nicholson
> merely disbursed plaintiffs' payments to
> itself, to EVMC, to EVMC's principals
> (defendants Aida Esacove and Larry Esacove),
> to EVMC's officers (defendants Guilot and
> Chopra), to Wells Fargo and to Michael Reis.

(SAC ¶ 2.)

Essentially, Defendants had a "protocol" whereby Wells Fargo provided "a false imprimatur of legitimacy" to EVMC. (SAC ¶ 18, see also SAC ¶ 15.) This would entice "victims" to wire money to Tisdale & Nicholson for loan funding the "victims" expected to receive. (SAC ¶ 18.) Defendants would then provide fraudulent loan documentation and "proof of funds" letters and make empty promises of performance. (SAC ¶ 18.) Ultimately, Defendants would either force the "victims" to forfeit their contract money, providing an excuse for non-performance of the contract, or create an eleventh-hour condition precedent for the "victim" to default upon. (SAC ¶ 18.)

II. Procedural Background

Plaintiffs initially commenced this action for violations of the Racketeer Influenced and Corrupt Act of 1970,

4

as codified by 18 U.S.C. § 1961 et seq. ("RICO") and various other state laws. On February 19, 2013, this Court issued a Memorandum and Order addressing numerous pending motions to dismiss, ultimately dismissing all of Plaintiffs' RICO claims against the moving defendants and declining supplemental jurisdiction over the state law claims. (See Feb. 2013 Order, Docket Entry 108.)

Upon reconsideration, however, the Court noted that subject matter jurisdiction over the state law claims may be appropriate, either because there were still potential RICO claims pending against the EVMC Defendants, who did not appear in the action, or pursuant to diversity jurisdiction. (See Sept. 2013 Order, Docket Entry 132.) Accordingly, the Court allowed Plaintiffs to renew their motion for default against the EVMC Defendants and reserved judgment on reconsideration of the state law claims until such time as subject matter jurisdiction could be determined.

Plaintiffs' motion for default and Judge Wall's R&R on the matter are now pending before the Court. In addition, the Court has noted that it apparently has diversity jurisdiction over this action. Accordingly, the viability of the state law claims is also ripe for review.

The Court will first address Plaintiffs' motion for default judgment against the EVMC Defendants before turning to the renewed motions for reconsideration.

## I. Plaintiffs' Motion for Default Judgment

### A. Relevant Background

On August 24, 2012, after a prior unsuccessful attempt, Plaintiffs requested a certificate of default regarding the EVMC Defendants. (Docket Entry 92.) The Clerk of the Court certified the EVMC Defendants' default on October 1, 2012. (Docket Entry 93.) Plaintiffs filed a formal motion (Docket Entry 94), which the Court denied with leave to renew in its September 2013 Order.

Plaintiffs timely renewed their motion for default judgment against the EVMC Defendants on October 29, 2013. (Docket Entry 135.) As part of that motion, Plaintiffs argue that the SAC states valid claims against the EMVC Defendants for: (1) violations of 18 U.S.C. § 1962(c); (2) breach of contract; (3) fraud; (4) negligent misrepresentation; (5) negligence; (6) breach of fiduciary duty; and (7) unjust enrichment. (See Docket Entry 136.) Plaintiffs also reiterate their prior arguments that this Court has diversity jurisdiction and that therefore a decision on the merits of the state law

claims is appropriate, even if the RICO claims fail. (<u>See</u> Docket Entry 136.)

Judge Wall issued his R&R on July 28, 2014, recommending that Plaintiffs' motion be denied. Specifically, Judge Wall found that Plaintiffs had abandoned their RICO claims against the EVMC Defendants pursuant to 18 U.S.C. § 1962(a) and (b). (R&R at 8.) As to Section 1962(c), Judge Wall found first that Plaintiffs had not alleged any control or management of an enterprise by Larry Esacove. (R&R at 10.) He then went on to hold that, given this Court's prior rulings, Plaintiff had not sufficiently alleged a pattern of racketeering. (R&R at 11-13.) The R&R did not address Plaintiff's state law claims against the EVMC Defendants because it was premature until the Court determined whether it has subject matter jurisdiction. (R&R at 13-14.) Judge Wall noted that "[i]f Judge Seybert ultimately decides that there is diversity jurisdiction, it is recommended that plaintiffs be permitted to renew their motion for a default judgment as to the state law claims [against the EVMC Defendants]." (R&R at 14.)

B. <u>Plaintiffs' Motion for Default</u>

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If no timely objections have been made, the

7

"court need only satisfy itself that there is no clear error on the face of the record." <u>Urena v. New York</u>, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (internal quotation marks and citation omitted).

Objections were due within fourteen (14) days of the date of the R&R.  The time for filing objections has expired, and no party has objected.  Accordingly, all objections are hereby deemed to have been waived.

Upon careful review and consideration, the Court finds Judge Wall's R&R to be comprehensive, well-reasoned and free of clear error, and it ADOPTS the R&R in its entirety.  As such, Plaintiffs' motion for default is DENIED, and Plaintiffs are free to re-file a motion for default as to the state law claims against the EVMC Defendants if appropriate.

II. <u>Motions for Reconsideration</u>

Also pending before the Court are renewed requests for reconsideration of the state law claims by both the T&N Defendants as well as Plaintiffs.  (<u>See</u> Docket Entries 140, 146, 148.)  In the September 2013 Order, this Court indicated that, if it retained subject matter jurisdiction--either through the viability of Plaintiffs' RICO claims against the EVMC Defendants or through diversity jurisdiction--that reconsideration of the state law claims would likely be appropriate.  (Sept. 2013 Order at 8-9.)  Since then, the Court has found that it does retain

subject matter jurisdiction due to the existence of diversity jurisdiction and directed Plaintiffs to file a Third Amended Complaint reflecting such. (Aug. 7, 2014 Electronic Order.) The Third Amended Complaint does indeed reflect diversity jurisdiction. (TAC ¶¶ 4-10.) Accordingly, the state law claims are ripe for consideration. Before the Court will address the pending motions, however, the Court will review the legal standards on a motion for reconsideration and a motion to dismiss.

A. <u>Legal Standards</u>

1. <u>Reconsideration</u>

Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3. See <u>Wilson v. Pessah</u>, No. 05-CV-3143, 2007 WL 812999, at *2 (E.D.N.Y. Mar. 14, 2007). A motion for reconsideration is appropriate when the moving party believes that the Court overlooked important "matters or controlling decisions" that would have influenced the prior decision. <u>Shamis v. Ambassador Factors Corp.</u>, 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (internal quotation marks and citation omitted). The Court may also reconsider an order or judgment where there was "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b).

Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion. See United States v. Gross, No. 98-CR-0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) ("A party may not use a motion to reconsider as an opportunity to reargue the same points raised previously."). Nor is it proper to raise new arguments and issues. See Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997). Reconsideration may only be granted when the Court did not evaluate decisions or data that might reasonably be expected to alter the conclusion reached by the Court. Wechsler v. Hunt Health Sys., 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002).

2. Motion to Dismiss

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6)

motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>; <u>accord</u> <u>Harris</u>, 572 F.3d at 72.

B. <u>Claims against the T&N Defendants</u>

Thus, with these standards in mind, the Court now turns to Plaintiffs' and the T&N Defendants' motions for reconsideration. The T&N Defendants assert that this Court should dismiss Plaintiffs' state law claims for unjust enrichment, fraud, and negligent misrepresentation against them with prejudice. Plaintiffs, on the other hand, assert that the Court erred in dismissing the state law claims at all. The Court will address each of the claims in turn.

1. <u>Unjust Enrichment</u>

The T&N Defendants assert that Plaintiffs' allegations that the T&N Defendants kept monies wired to them in furtherance of a conspiracy are insufficient (T&N Defs.' Br. for Recon., Docket Entry 116, at 5.) Specifically, they argue that "[P]laintiffs do not provide any factual support or documentation to bolster their conclusion that T&N retained any portion of the money sent to them by [P]laintiffs (as distinct from fees for services rendered)." (T&N Defs.' Br. for Recon. at 5.) Plaintiffs have argued that whether the money the T&N Defendants retained was for legitimate legal fees or was a

portion of "loot" stolen from Plaintiffs is a question of fact. (Pls.' Opp. Br. to T&N Defs.' Mot. to Dismiss, Docket Entry 72, at 29.)  The Court agrees with Plaintiffs.

To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  Briarpatch, Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004); see also Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182, 944 N.E.2d 1104, 1110, 919 N.Y.S.2d 465, 471 (2011).  Plaintiffs have sufficiently alleged the first element because the SAC and TAC assert that the T&N Defendants were enriched by receiving money. In fact, Plaintiffs allege several instances in which the T&N Defendants disbursed money to themselves.  (See, e.g., SAC ¶¶ 60, 84, 104, 269.)  Such allegations are sufficient.  See Labajo v. Best Buy Stores, L.P., 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) (pleading, inter alia, that defendants were enriched by realizing millions of dollars from magazine promotion was sufficient).

Plaintiffs also adequately plead the second and third elements.  Enrichment is "at Plaintiff's expense" if "defendant received something of value which belongs to the plaintiff." Bazak v. Int'l Corp. v. Tarrant Apparel Grp., 347 F. Supp. 2d 1,

4 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). Here, Plaintiffs allege that the T&N Defendants took the monies wired from Sands Harbor and Eagle and kept a portion for themselves. Although the T&N Defendants are correct that some or all of the money may have been for legitimate legal fees, Plaintiffs' allegations make clear that they assert that the work supposedly being performed was never legitimate and that Defendants never intended to provide any financing to Plaintiffs. (See, e.g., SAC ¶¶ 270-72.) Accordingly, it is plausible that the T&N Defendants used the funds for purposes other than legitimate fees. See Dover Ltd. v. Morrow, No. 08-CV-1337, 2011 WL 4494763, at *4 (S.D.N.Y. Sept. 28, 2011) ("[T]he extent to which the disbursements made by Morrow and Begley of the money they received from Dover were for legitimate expenses of the Insuragift project is a disputed fact . . . ."); Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 421 (S.D.N.Y. 2010) (finding that defendants were "undoubtedly enriched" at the plaintiffs' expense by collecting money for managing mirage investments and that equity and good conscience would require disgorgement if fees were indeed steered into Ponzi scheme).

Accordingly, Plaintiffs' and T&N Defendants' motions for reconsideration are GRANTED. However, the T&N Defendants'

motion to dismiss Plaintiffs' unjust enrichment claims against them is DENIED.

## 2. Negligent Misrepresentation

The T&N Defendants argue in their motion for reconsideration that Plaintiffs did not sufficiently plead a claim for negligent misrepresentation because Plaintiffs neither alleged contractual privity or a relationship so close as to approach that of privity, as required. (See T&N Defs.' Br. for Recon. at 7-8.) They also argue that Plaintiffs did not plead that the "purpose" or "end and aim" of the retention of the T&N Defendants was to induce Plaintiffs to rely on alleged misrepresentations.[5] (T&N Defs.' Br. for Recon. at 8-9.) Plaintiffs countered in their opposition to the original motion to dismiss and again in their subsequent motions that they alleged that the T&N Defendants gave Eagle multiple assurances about the bona fides of the financing transaction. (See Pls.' Opp. Br. to T&N Defs.' Mot. to Dismiss at 28-29.) Plaintiffs also assert that they alleged that EVMC used T&N for the purpose

---

[5] The T&N Defendants had also argued in their original motion to dismiss that Federal Rule of Civil Procedure 9(b) governs claims for negligence misrepresentation, thus requiring specificity in the pleadings. (T&N Defs.' Mot. to Dismiss, Docket Entry 61, at 39.) They did not raise this argument again in their motion for reconsideration, however. In any event, whether Rule 9(b) applies is unclear. See Eaves v. Designs for Finance, Inc., 785 F. Supp. 2d 229, 254 (S.D.N.Y. 2011) ("The Second Circuit has not explicitly ruled on whether such claims must satisfy Rule 9(b).").

of assuring Plaintiffs that the fraudulent scheme was legitimate. The Court agrees with Plaintiffs.

Defendants are correct that Plaintiffs' negligent misrepresentation claim against the T&N Defendants "'requires that the underlying relationship between the parties be one of contract or the bond between them so close as to be the functional equivalent of contractual privity.'" Liberty Mut. Ins. Co. v. WAWA Tours, Inc., No. 07-CV-0880, 2007 WL 2743500, at *4 (E.D.N.Y. Sept. 18, 2007) (quoting Ossining Union Free Sch. Dist. v. Anderson, 73 N.Y.2d 417, 419, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989)). A relationship approaching that of privity "requires '(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance.'" Id. (quoting Parrot v. Coopers & Lybrand, LLP, 95 N.Y.2d 479, 484, 741 N.E.2d 506, 718 N.Y.S.2d 709 (2000)).

Here, it is apparent that Plaintiffs were not in contractual privity with the T&N Defendants. However, Plaintiffs also allege that the T&N Defendants, inter alia, made representations to Eagle that financing was in the process of occurring and that it was "certain and imminent." (SAC ¶ 703.)

15

For example, Plaintiffs allege that Tisdale wrote Eagle emails stating that he was working with "depositors and lenders involved in raising the loan funds" and that parties working on deposits and lending did not care about particular deadlines. (See SAC ¶ 64 (internal quotation marks and citation omitted).)

The SAC and TAC are replete with allegations that such statements were made with the awareness that Eagle would use those statements for the particular purpose of moving forward with the deal and entrusting money with Defendants. (See, e.g., SAC ¶ 63 ("Part of this false imprimatur of legitimacy was Tisdale's and Nicholson's ongoing representations to their victims that they were working with 'bankers' and 'institutional counterparties' on 'trust agreements' when, in reality, no such conversations ever took place and no work product was ever performed.").) Moreover, Plaintiffs have plausibly asserted that the T&N Defendants knew that these statements would be used for that purpose. In representing that they were working with certain institutions, the T&N Defendants knew that Eagle would rely on those statements to assume that the financing work was being performed. See Liberty Mut. Ins. Co., 2007 WL 2743500, at *6 ("[S]ince Liberty alleges that Fairmont acknowledged in the Application that it had read the Plan, Liberty has sufficiently alleged that Fairmont was aware the statements in the application would be used for a particular purpose, namely to

determine the initial premiums on the issued policies."). Finally, the T&N Defendants made these statements directly to Eagle, thus satisfying the third prong of the relationship analysis. See Prudential Ins. Co. of Am. v. Dewey, Ballentine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 385, 605 N.E.2d 318, 322, 590 N.Y.S.2d 831, 835 (N.Y. 1992) ("[B]y addressing and sending the opinion letter directly to Prudential, Gilmartin clearly engaged in conduct which evinced its awareness and understanding that Prudential would rely on the letter, and provided the requisite link between the parties."). In fact, Plaintiffs make clear that the T&N Defendants' very involvement, and therefore their activities and statements, were for the "purpose" or "end and aim" to add legitimacy to the alleged fraudulent scheme such that Eagle would accept the T&N Defendants' representations as true. See id. ("[T]he end and aim of the opinion letter was to provide Prudential with the financial information it required.").

The T&N Defendants have not challenged the other elements of negligent misrepresentation claim, and their motion to dismiss based on lack of privity or the requisite relationship is DENIED.

### 3. Fraud

The T&N Defendants argue that Plaintiffs' fraud claims against them fail for a litany of reasons, including that

Plaintiffs did not particularize and prove each defendant's participation in the fraud, that Plaintiffs' allegations do not meet the requisite specificity of Rule 9(b), and that sufficient allegations regarding motive are lacking. (T&N Defs.' Br. for Recon. at 6-7.) Plaintiffs identify several fraudulent statements or omissions and claim that they specifically identified Tisdale as the speaker a number of times. The Court partially agrees with Defendants.

Under New York law, a common law fraud claim has four elements: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Banque Arabe et Internationale D'Investissement v. MD. Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995). Rule 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To comply with the particularity requirement, a "[p]laintiff must: (1) specify the alleged fraudulent statements; (2) identify the speaker; (3) state where, when and to whom the statements were made; and (4) explain why the statements were fraudulent." Waldman v. New Chapter, Inc., 714 F. Supp. 2d 398, 402 (E.D.N.Y. 2010). Moreover, Plaintiffs must specifically plead the circumstances

constituting fraud with respect to each of the Defendants. DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

Initially, the Court notes that none of these allegations pertain to Nicholson specifically. In fact, at no point throughout the nearly 200-page complaint do Plaintiffs assert that Nicholson made any particular representation or omission, despite the painstaking detail with which they lodge such allegations against Tisdale and others. In fact, in response to the T&N Defendants' initial motion to dismiss in which the T&N Defendants argued--as they do in their motion for reconsideration--that Plaintiffs did not particularize Nicholson's participation in the fraud, Plaintiffs pointed to representations and omissions by Tisdale and only generalized knowledge by Nicholson. (See Pls.' Opp. Br. to T&N Defs.' Mot. to Dismiss at 31.) Plaintiffs' failure to assert any fraudulent activity against Nicholson is fatal to their claim as against him. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); S.E.C. v. U.S. Envtl., Inc., 82 F. Supp. 2d

237, 241 (S.D.N.Y. 2000) (stating that a plaintiff cannot satisfy Rule 9(b) "by making vague allegations about the defendants as a unit"). Moreover, given the extreme detail of the Complaints, the Court finds that any amendments as to Nicholson would be futile. Accordingly, the T&N Defendants' motion to dismiss is GRANTED in this regard, and Plaintiffs' fraud claim against Nicholson as an individual is DISMISSED WITH PREJUDICE.[6]

With that in mind, the Court thus turns to the specifics of Plaintiffs' allegations and the T&N Defendants' arguments. The T&N Defendants' first argue that Plaintiffs' allegations are not particularized enough to satisfy Rule 9(b). (See T&N Defs.' Br. for Recon. at 6.) The Court disagrees, however. The T&N Defendants' assertion arises from their somewhat disingenuous categorization of Plaintiffs' claims, such as that the T&N Defendants used the credibility of the law practice to maintain an illusion of legitimacy, that the T&N Defendants used their reputations as attorneys to bolster the appearance of legitimacy, and that the implied promise of trust convinced Plaintiffs to wire money. (See T&N Defs.' Br. for

---

[6] The T&N Defendants also assert that Plaintiffs did not properly advance any allegations of fraud against T&N as a separate law firm. (T&N Defs.' Br. for Recon. at 7.) However, it is conceivable that Tisdale's statements could be attributable to T&N. The parties have not addressed this issue specifically and the Court therefore will not consider it now.

Recon. at 6 (quoting SAC ¶¶ 50, 58, 62).) The Court, though, categorizes Plaintiff's allegations of fraud as based on the following: (1) the T&N Defendants' omissions regarding their clients'--and perhaps their own--prior history (See Pls.' Opp. Br. to T&N Defs.' Mot. to Dismiss at 30-31 (citing SAC ¶¶ 51, 54)); (2) the T&N Defendants fraudulently represented that they were conducting financing work (See Pls.' Opp. Br. to T&N Defs.' Mot. to Dismiss at 31 (citing SAC ¶¶ 58-59, 63-66)); and (3) "Tisdale knew before the fact--but never disclosed--that defendants would be manufacturing and delivering forged proof-of-funds letters with respect to plaintiffs' loan transactions, fabricated on phony Citibank letterhead and purportedly signed by a Citibank executive (David Lowman) whom T&N knew had left Citibank months earlier" (Pls.' Opp. Br. to T&N Defs.' Mot. to Dismiss at 31 (citing SAC ¶¶ 148-91, especially ¶¶ 174-75, 189, and 191)).

Contrary to the T&N Defendants' assertions, the categories that Plaintiffs raise and that the Court has identified satisfy Rule 9(b). For example, Plaintiffs identify particular statements or omissions. (See, e.g., SAC ¶¶ 51, 54, 59, 64, 175, 189, 191.) Moreover, Plaintiffs specifically allege that Tisdale either knew the necessary information or failed to disclose it and they state where, when, and to whom particular statements were made. (See, e.g., SAC ¶¶ 54, 59, 64,

175, 189.)  Finally, the allegations also incorporate the reasons why the statements or omissions were fraudulent, such as that the financing work was never actually being performed and that the proof-of-funds letters were frauds because the person alleged to have signed the documents as an executive of Citibank did not actually work at Citibank at the time.

The T&N Defendants also argue that Plaintiffs do not properly allege fraudulent intent or motive because "fraudulent intent cannot be inferred from an allegation that profit was the motivating factor in the scheme." (T&N Defs.' Br. for Recon. at 6 (citations omitted).)  Rule 9(b) provides that state of mind, such as motive or intent, may be averred generally. See Karasyk v. Marc Commodities Corp., 770 F. Supp. 824, 829 (E.D.N.Y. 2013).  However, the complaint must also "provide[ ] a factual basis that gives rise to a strong inference of intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. De-Con Mech. Contractors, Inc., 896 F. Supp. 342, 347 (S.D.N.Y. 1995).  One way of showing a strong inference is "'by identifying circumstances indicating conscious behavior by the defendant through correspondingly strong allegations . . . .'" Jerome M. Sobel & Co. v. Fleck, No. 03-CV-1041, 2003 WL 22839799, at *7 (S.D.N.Y. Dec. 1, 2003) (quoting Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp.

2d 282, 295 (S.D.N.Y. 2000), <u>adopted by</u> 2004 WL 48877 (S.D.N.Y. Jan. 8, 2004).

Plaintiffs have sufficiently alleged as much here. By way of example, Plaintiffs allege that Tisdale had affirmative knowledge that Lowman did not work at Citibank, yet failed to disclose this information to Eagle. (<u>See</u> SAC ¶ 175 (discussing an email in which Reis indicated to Tisdale that Lowman had been listed as working for JP Morgan Chase at the relevant time, not Citibank).) Similarly, Tisdale affirmatively represented that the financing was taking place, when, according to Plaintiffs, no other financial institutions were involved and the purported work as a sham. (<u>See, e.g.</u>, SAC ¶¶ 64-65.) Such alleged conscious behavior demonstrates that Plaintiffs do not simply rely on motive to infer intent and is sufficient to make out a claim for fraud at this stage. <u>See</u> <u>Hughes v. Ester C Co.</u>, 930 F. Supp. 2d 439, 472 (E.D.N.Y. 2013) (finding sufficient allegations of intent where defendants purportedly made statements, knowing that they were false, as suggested by lack of scientific evidence); <u>Jerome M. Sobel & Co.</u>, 2003 WL 22839799, at *8 (finding allegations of intent through conscious behavior to be sufficient where plaintiffs alleged, <u>inter alia</u>, that defendant deposited checks into personal accounts, directed or influenced unlawful activities, and used resources without consent); <u>Karasyk</u>, 770 F. Supp. at 829-30 ("Allegations

23

supporting an inference of fraudulent intent frequently include defendant's statement that a fact exists or an event will come to pass coupled with allegations that the fact did not exist or the event did not occur, and circumstances indicating that the statement was false when made.").

Accordingly, the T&N Defendants' motion to dismiss the fraud claims against Tisdale and T&N is DENIED.

## C. Plaintiffs' Renewed Motion for Reconsideration as to Wells Fargo and Reis

Plaintiffs have also renewed their motion for reconsideration of the state law claims as dismissed against the Wells Fargo Defendants[7] and defendant Michael D. Reis ("Reis"). (See Docket Entries 117, 148.) Specifically, Plaintiffs asserted in their original motion that the Court should not have dismissed the state law claims against these Defendants because the Court has original diversity jurisdiction. (See Pls.' Br. for Recon., Docket Entry, 118.) As stated, the Court agrees that it has diversity jurisdiction. Accordingly, Plaintiffs' motion is GRANTED.

As to the Wells Fargo Defendants, Plaintiffs assert that WFIS did not seek dismissal of Plaintiffs' non-RICO claims against it. (See Pls.' Br. for Recon. at 2 n.3.) Plaintiffs

---

[7] The "Wells Fargo Defendants" refer to Wells Fargo Insurance Services of Oregon, Inc. ("WFIS") and Wells Fargo Bank, N.A. ("Wells Fargo Bank" or "WFB").

are correct in this regard. Accordingly, Plaintiffs' state law claims against WFIS remain valid causes of action.[8]

As to Reis, however, Plaintiffs' renewed motion for reconsideration also addresses the merits of their state law claims against Reis. (See Pls.' Br. for Recon. at 4-5.) Plaintiffs' arguments, however, do not address Reis' assertions in his original motion to dismiss that this Court lacks personal jurisdiction over him. Specifically, Reis had argued that Plaintiffs based personal jurisdiction over Reis on 18 U.S.C. § 1965, which could not be exercised in the absence of RICO claims. (See Reis' Br. to Dismiss, Docket Entry 80-1, at 20.) Section 1965 provides:

> (a) Any civil action or proceeding under [Chapter 96 entitled Racketeer Influenced and Corrupt Organizations] against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
>
> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

---

[8] Plaintiffs do not seek reconsideration on, or reinstatement of, any state law claims against Wells Fargo Bank. In fact, the SAC and TAC do not assert state law claims against WFB.

18 U.S.C. § 1965(a)-(b).  Thus, personal jurisdiction pursuant to this section requires RICO claims.  Reis is correct that where, as here, the Court has dismissed the RICO claims, the exercise of personal jurisdiction pursuant to Section 1965 is inappropriate.  See Cont'l Petroleum Corp. Inc. v. Corp. Funding Partners, LLC, No. 11-CV-7801, 2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012) ("Because plaintiffs' RICO claims have been dismissed, personal jurisdiction over these two defendants is, necessarily, lacking, and all claims against them must be dismissed."); see also Prakash v. Altadis U.S.A. Oblio Telecom, Inc., 711 F. Supp. 2d 668, 676 (N.D. Tex. 2008) ("Asia Telecom has not moved to dismiss the RICO claim brought against it, and if the court were to dismiss this claim against it, then the court would not have personal jurisdiction over Asia Telecom pursuant to 18 U.S.C. § 1965."); Rolls-Royce Corp. v. Heros, Inc., 576 F. Supp. 2d 765, 773 (N.D. Tex. 2008) ("If dismissal of Rolls-Royce's RICO claims based on either of these affirmative defenses is proper, then Rolls-Roycle cannot establish personal jurisdiction over defendants under 18 U.S.C. § 1965.").

However, this is not the only basis for personal jurisdiction, as Plaintiffs could also assert personal jurisdiction under the laws of the forum state.  See Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir.

2005). Neither Reis nor Plaintiffs have addressed this issue. As personal jurisdiction can be waived, see, e.g., China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc., 882 F. Supp. 2d 579, 588 (S.D.N.Y. 2012), the Court will not sua sponte consider the issue further.

Plaintiffs' renewed motion for reconsideration also does not address Reis' argument in his original motion to dismiss that venue is improper. Reis had argued that his alleged acts and omissions took place in Oregon, where he resides and works, and that "no 'substantial part of the events or omissions giving rise to the claims occurred' in this District." (Reis' Br. to Dismiss at 20.) Venue is governed by 28 U.S.C. § 1391(b), which provides:

[a] civil action maybe brought in--

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). Subsection (1) is inapplicable here, and therefore Reis argued on the basis of subsection (2),

that a substantial part of the events or omissions giving rise to the claims occurred in this District.

When considering a motion to dismiss for improper venue, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cartier v. Micha, Inc., No. 06-CV-4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007). Although the plaintiff has the burden of proving that venue is proper, "[a]bsent a formal hearing on the motion, a plaintiff need only make a prima facie showing of venue to defeat the motion." Id. (citing Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005)). Under Section 1291(b)(2), the Court must conduct a two-part analysis to determine whether venue is appropriate. Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005); Cold Spring Harbor Lab. v. Ropes & Gray LLP, 762 F. Supp. 2d 543, 553 (E.D.N.Y. 2011). First, the Court must "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." Daniel, 428 F.3d at 432 (citing Gulf Ins., Co., 417 F.2d at 357). Second, the Court must "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether significant events or omissions material to [those] claim[s] . . . have occurred in the district in question." Id.

(internal quotation marks and citation omitted) (alterations and omission in the original).

Here, Plaintiffs allege claims for fraud, negligent misrepresentation, negligence, breach of fiduciary duty, and unjust enrichment against Reis. These claims focus primarily on alleged representations directed toward Plaintiffs and omissions from Plaintiffs. Plaintiffs allege that at least some of those representations were directed towards--and Reis' interactions dealt with--Sands Habor representatives on Long Island. (SAC ¶ 4.) In this context, communications toward persons in the District may be enough for venue purposes. See United Computer Capital Corp. v. Daidone, No. 02-CV-1431, 2005 WL 579565, at *4 (N.D.N.Y. Mar. 7, 2005) ("[V]irtually all of the events or omissions alleged have a connection with UCCC in this district. Plaintiffs have met their burden of demonstrating that a substantial part of the events or omissions giving rise to the claim occurred in this district . . . ."); N.Y. Mercantile Exch. v. Cent. Tours Int'l, Inc., No. 96-CV-8988, 1997 WL 370600, at *4 (S.D.N.Y. July 1, 1997) (finding that venue was proper because "many of the fraudulent acts alleged either occurred in or have a substantial relationship to this venue"). Neither party provides greater information regarding how many of Reis' interactions pertained to persons on Long Island versus persons

in other locations.[9]  At this moment, drawing all inferences in Plaintiffs' favor, venue is proper.

Finally, Reis' original motion to dismiss as well as Plaintiffs' renewed motion for reconsideration both address whether Plaintiffs adequately pleaded a duty in order to maintain their state law claims against Reis.  Specifically, Reis argued that Plaintiffs' claims for negligence, negligent misrepresentation, and breach of fiduciary duty are all deficient because Plaintiffs did not sufficiently allege a duty. (Reis' Br. to Dismiss at 20-21.)  Notably, Reis does not challenge Plaintiffs' claims for fraud and unjust enrichment, as these claims do not require a duty.  Accordingly, these claims may proceed against Reis.

As stated previously, a plaintiff asserting a claim for negligent misrepresentation must allege:

> that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

---

[9] In fact, both Reis' and Plaintiffs' submissions on the state law claims are bare bones and conclusory, often making terse arguments with little or no case law or support.  In any event, if appropriate, the Court would consider additional submissions regarding venue.

King Cnty., Wash. v. IKB Deutsche Industriebank AG, 863 F. Supp. 2d 288, 299 (S.D.N.Y. 2012) (citation omitted).

Reis challenges only whether Plaintiff has alleged a duty. The

> "duty" element of the cause of action is satisfied by showing: (1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance.

N.Y. Islanders Hockey Club, LLP v. Comerica Bank--Texas, 71 F. Supp. 2d 108, 119 (E.D.N.Y. 1999). Plaintiffs here have proffered sufficient allegations to meet this standard. The SAC and TAC repeatedly allege that Reis made specific misrepresentations in order to lull Plaintiffs into a false sense of security and to believe that the transactions were legitimate and financing work was taking place. (See, e.g., SAC ¶¶ 31, 43, 98-102, 108-10, 118, 124, 133, 138, 158-59, 162-64, 200-02, 255.) Moreover, Plaintiffs allege that Plaintiffs relied on these statements by giving Defendants money, continuing with the transactions, and continuing to give over additional funds. (See, e.g., SAC ¶¶ 43, 103, 259.) Finally, Plaintiffs proffer a number of examples when Reis directly contacted Plaintiffs, thus linking his conduct to Plaintiffs and

evincing his understanding. (See, e.g., SAC ¶¶ 32, 43, 98-102, 108-10, 118, 124, 133, 158-59, 162-64, 200-02, 255.) Accordingly, Plaintiffs have alleged a duty for purposes of a negligent misrepresentation claim. As this was the only basis for Reis' original motion to dismiss, this claim may proceed. However, the Court notes that alleged misrepresentations that were promissory in nature do not state a claim. See Siben v. Am. Airlines, Inc., 913 F. Supp. 271, 279 (S.D.N.Y. 1996).

As to Plaintiffs' negligence claim against Reis, however, the Court finds that it is duplicative of their negligent misrepresentation claims against him. The same allegations form the basis of their negligence claim as their negligent misrepresentation claim. (Compare SAC ¶¶ 445-46 and 453-54 with ¶¶ 594-95 and 602-03.) Accordingly, dismissal of this claim is appropriate and Plaintiffs' negligence claim against Reis is DISMISSED WITH PREJUDICE. See Paladini v. Capossela, Cohen, LLC, No. 11-CV-2252, 2012 WL 3834655, at *6 (S.D.N.Y. Aug. 15, 2012) (dismissing claims as duplicative where claims including negligence and negligent misrepresentation were based upon the same allegations and injuries), aff'd, 515 F. App'x 63 (2d Cir. 2013); Donald Dean & Sons, Inc., v. Xonitek Sys. Corp., 656 F. Supp. 2d 314, 323 n.12 (N.D.N.Y. 2009) ("Although the Second Cause of Action is captioned as a 'negligence and negligent misrepresentation' claim, there are no

32

allegations of negligence beyond those asserting that [defendants] 'negligently misrepresented' certain facts . . . ."); see also King Cnty., Wash., 863 F. Supp. 2d at 301 (rejecting argument that negligence claim and negligent misrepresentation claims were duplicative because they were based on different conduct).

Finally, to properly assert a claim for breach of fiduciary duty against Reis, Plaintiffs must allege "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." King Cnty., Wash., 863 F. Supp. 2d at 299 (internal quotation marks and citation omitted).

> A fiduciary relationship may exist where one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party, or in situations in which influence has been acquired and abused, in which confidence has been reposed and betrayed.

Id. (internal quotation marks and citations omitted).

Here, although the Court finds that Plaintiffs adequately alleged a duty for purposes of a negligent misrepresentation claim, Plaintiffs have not alleged enough to demonstrate a fiduciary relationship between themselves and Reis. See id. at 314 (noting that a "fiduciary duty claim requires a closer relationship than the 'special relationship'

33

necessary for a negligent misrepresentation claim"). "Classic examples of fiduciary relationships include trustee-beneficiary, guardian-ward, principal-agent, and attorney-client relationships." Id. Here, where the parties were apparently both sophisticated persons or entities engaging in business transactions, the relationship simply does not rise to the necessary level. In fact, there are discussions during the SAC and TAC regarding counsel, indicating that Plaintiffs were not blindly at Reis' mercy. Accordingly, Plaintiffs' breach of fiduciary duty claim against Reis is DISMISSED. As the Court finds that amendment would be futile in this regard, the claims are DISMISSED WITH PREJUDICE.

<u>CONCLUSION</u>

For the foregoing reasons, Judge Wall's R&R is ADOPTED in its entirety and Plaintiffs' motion for default judgment against the EVMC Defendants is DENIED. Plaintiffs are free to re-file a motion for default as to the state law claims against the EVMC Defendants if appropriate.

Plaintiffs' and the T&N Defendants' renewed motions for reconsideration are GRANTED. The T&N Defendants' motion to dismiss Plaintiffs' unjust enrichment and negligent misrepresentation claims against them and the fraud claims against Tisdale and T&N is DENIED. It is GRANTED insofar as Plaintiffs allege a fraud claim against Nicholson only, and this

claim is DISMISSED WITH PREJUDICE.  In addition, Plaintiffs'
negligence and breach of fiduciary duty claims against Reis are
DISMISSED WITH PREJUDICE.

                                        SO ORDERED

                                        _/s/ JOANNA SEYBERT_____
                                        Joanna Seybert, U.S.D.J.

DATED:      August 29, 2014
            Central Islip, New York