**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

THE SANDS HARBOR MARINA CORP., SANDS
HARBOR MARINA LLC, THE SANDS HARBOR
MARINA OPERATING CORP., SANDS HARBOR
MARINA OPERATING LLC, GREG W. EAGLE, PINE
CREEK RANCH, LLC, and UNIVERSITY 1248, LLC,

                                     Plaintiffs,

                  -against-

WELLS FARGO INSURANCE SERVICES OF
OREGON, INC., WELLS FARGO BANK, N.A., EVMC
REAL ESTATE CONSULTANTS, INC., LARRY
ESACOVE, THE ESTATE OF AIDIA ESACOVE,
DAVID P. GUILOT, ANTHONY CHOPRA, TISDALE &
NICHOLSON, LLP, JEFFERY A. TISDALE, GUY C.
NICHOLSON and MICHAEL D. REIS,

                                  Defendants.

No. 09-CV-03855 (JS) (SIL)

**ECF**

---

**MEMORANDUM OF LAW IN SUPPORT OF MICHAEL D. REIS'S**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

BACHNER & ASSOCIATES, P.C.
*Attorneys for Defendant Michael D. Reis*
39 Broadway, Suite 1610
New York, New York  10004
(212) 344-7778

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF PLAINTIFFS' ALLEGATIONS ............................................................ 1

PLAINTIFFS' AMENDED JURISDICTIONAL ALLEGATIONS ................................... 2

ARGUMENT .......................................................................................................................... 3

POINT I

PLAINTIFFS FAILED TO CARRY THEIR BURDEN TO ESTABLISH A NON-RICO BASIS FOR PERSONAL JURISDICTION OVER REIS IN NEW YORK .............. 3

POINT II

VENUE IS IMPROPER IN THE EASTERN DISTRICT OF NEW YORK ........................ 6

POINT III

THE LLC PLAINTIFFS LACK CAPACITY TO ASSERT THEIR DIVERSITY-BASED, COMMON LAW CLAIMS AGAINST REIS ....................................................... 15

POINT IV

EAGLE'S CLAIMS AGAINST REIS ARE BARRED BY THE DOCTRINE OF *IN PARI DELICTO*, IN LIGHT OF HIS FEDERAL CONVICTIONS ON MULTIPLE COUNTS OF BANK, WIRE AND MAIL FRAUD RELATED TO HIS SCHEME TO DEFRAUD LENDERS ................................................................................................. 19

CONCLUSION

FOR THE ABOVE-STATED REASONS, REIS'S MOTION TO DISMISS SHOULD BE GRANTED, TOGETHER WITH SUCH OTHER AND FURTHER RELIEF AS THIS COURT DEEMS JUST AND NECESSARY ....................................... 25

TABLE OF AUTHORITIES

**CASES**

*Abright v. Shapiro*, 214 A.D.2d 496 (N.Y. App. Div. 1995) .........................................21,22

*Abuhouran v. Nicklin*, 764 F. Supp. 2d 130 (D.D.C. 2011) .............................................15

*Albergo v. Pearlman*, 2011 WL 102749 (S.D.N.Y. Jan. 10, 2011)................................9,10

*Astor Holdings, Inc. v. Roski,* 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) .......................13

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999) ..............5

*Bank of New York Mellon Trust Co., N.A. v. Gebert*, 2014 WL 1883551 (S.D.N.Y. May 9, 2014).15

*Barnes Group, Inc. v. Midwest Motor Supply Co.,* 2008 WL 509193 (S.D. Ohio Feb. 22, 2008) ...15

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985)...........................19

*Benjamin v. Carusona*, 2010 WL 4448213 (S.D.N.Y. Nov. 5, 2010) ...............................14

*Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277 (2d Cir. 2011).................................................................................4

*Blauschild v. Tudor*, --F. Supp. 2d--, 2014 WL 3566517 (E.D.N.Y. July 21, 2014) .......................13

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212 (2d Cir. 2004) .........................................................................16

*Bondi v. Citigroup, Inc.*, 32 A.3d 1158 (N.J. App. Div. 2011), *lv. denied*, 45 A.3d 983 (N.J. 2012)..................................................................................25

*Branthover v. Goldenson*, 2011 WL 6179552 (S.D.N.Y. Dec. 12, 2011) .........................11

*Brossart v. Lynx Business Intelligence Consulting, Inc.*, 2008 WL 2461592 (D. Ariz. June 25, 2008)..................................................................................9

*China Nat'l Chartering Corp. v. Pactrans Air &Sea, Inc.*, 882 F. Supp. 2d 579 (S.D.N.Y. 2012)4

*Colliton v. Donnelly*, 399 F. App'x 619 (2d Cir. 2010) ....................................22

*Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369 (2d Cir. 1966) .........................9

*Concrete Pipe & Products Corp. v. Modern Building Materials, Inc.*, 213 A.D.2d 1023, 624 N.Y.S.2d 496 (N.Y. App. Div. 1995) ...............................................5

*Conte v. Cnty. of Nassau*, 2013 WL 3878738 (E.D.N.Y. July 26, 2013).........................17

*Cont'l Ins. Co. v. Securi Enters., Inc.,* 2010 WL 3702559 (E.D.N.Y. Aug. 16, 2010), *adopted* 2010 WL 3619704 (E.D.N.Y. Sept. 9, 2010) ................................................................9

*Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42 (2d Cir.1991) ...............................16

*Cosa Xentaur Corp. v. Bow*, 2014 WL 1331030 (E.D.N.Y. March 31, 2014) ...................13

*Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291 (3d Cir. 1994) ................8

*Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408 (2d Cir. 2005) ................................7

*Digital Lab Solutions, LLC v. Stickler*, 2007 WL 700821 (S.D.N.Y. March 7, 2007) .......9

*Direct Marketing Services, LLC v. Bluegreen Corp.*, 2005 WL 1594543

   (E.D. Tenn. July 6, 2005) ...............................................................................................18

*Eldred v. Comforce Corp.*, 2010 WL 812698 (N.D.N.Y. Mar. 2, 2010) ............................4

*European Cmty. v. RJR Nabisco, Inc.*, --F.3d--, 2014 WL 4085863 (2d Cir. Aug. 20, 2014) ........2

*Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317 (N.Y. 1980) .....................5

*Fedele v. Harris*, --F. Supp. 2d--, 2014 WL 1870840 (E.D.N.Y. May 9, 2014) ..............13

*Frato v. Swing Staging, Inc.*, 2011 WL 3625064 (D.N.J. Aug. 17, 2011) ........................11

*Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668 (2d Cir. 1994) ....................9

*French Transit, Ltd. v. Modern Coupon Sys., Inc.*, 858 F. Supp. 22 (S.D.N.Y. 1994) ..................8

*Galen Medical Associates, Inc. v. United States*, 74 Fed. Cl. 377 (Fed. Cl. 2006) ..........18

*Goldlawr, Inc. v. Heiman,* 369 U.S. 463 (1962) ...............................................................8

*Gross v. British Broad. Corp.*, 386 F.3d 224 (2d Cir. 2004) .............................................9

*Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353 (2d Cir.2005) ................................................6

*Harrison v. L.P. Rock Corp.*, 2000 WL 19257 (E.D. Pa. Jan. 7, 2000) ..............................8

*Haydu v. U.S. Fed. Gov't*, 2013 WL 665066 (N.D.N.Y. Jan. 29, 2013) *adopted by*, 2013 WL 66503 (N.D.N.Y. Feb. 22, 2013) ....................................................................................14

*Henrich v. Field*, 2006 WL 2620043 (W.D.N.Y. Sept. 13, 2006) ......................................12

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2013 WL 6838899 (S.D.N.Y. Dec. 27, 2013) .................................................................................................................21

*In re American International Group., Inc. ("AIG"), Consolidated Derivative Litig.*, 965 A.2d 763 (Del. Ch. 2009) ................................................................................................................20

*In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003) ........................................18

*In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 66 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 2895 (U.S. 2014) ................................................................................................................20

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880 (N.D. Ill. 2011)..16

*In re Flash Memory Antitrust Litigation*, 2010 WL 2465329 (N.D. Cal. June 10, 2010)................18

*In re Granite Partners, L.P.*, 194 B.R. 318 (Bankr. S.D.N.Y. 1996) ............................................20

*In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397 (S.D.N.Y. 1998) ....................................11

*In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703 (S.D.N.Y. 2006) ..............................................19

*In re Parmalat Sec. Litig.*, 659 F. Supp. 2d 504 (S.D.N.Y. 2009) .........................................24, 25

*Kerik v. Tacopina*, 2014 WL 1340038 (D.N.J. Apr. 3, 2014)......................................................11

*Kirschner v. KPMG LLP*, 15 N.Y.3d 446 (N.Y. 2010)................................................................20

*Knox v. Countrywide Bank*, --F. Supp. 2d--, 2014 WL 946635 (E.D.N.Y. Mar. 12, 2014)............21

*Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)........................................................7

*Loeb v. Bank of Am.*, 254 F. Supp. 2d 581 (E.D. Pa. 2003) ........................................................12

*Magwich, L.L.C. v. Pusser's Inc.*, 84 A.D.3d 529, 923 N.Y.S.2d 455 (N.Y. App. Div. 2011) .........5

*MB Financial Bank, N.A. v. Walker,* 741 F.Supp.2d 912 (N.D. Ill. Sept. 23, 2010)....................13

*Minnette v. Time Warner*, 977 F.2d 1023 (2d Cir. 1993) .............................................................8

*Moran Enters., Inc. v. Hurst*, 66 A.D.3d 972 (N.Y. App. Div. 2009) ..........................................17

*Moreno–Bravo v. Gonzales,* 463 F.3d 253 (2d Cir.2006).............................................................14

*N.Y. Mercantile Exch. v. Cent. Tours Int'l, Inc.*, 1997 WL 370600 (S.D.N.Y. July 1, 1997)...........13

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147 (2d Cir. 2003) ........................................................................................................20

*Olberding v. Illinois Cent. R.R.*, 346 U.S. 338 (1953) ................................................................7

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809 (E.D. Mich. 2000) ................................................14

*Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003)............................16, 18

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572 (2d Cir. 2011) ..............................25

*Parmalat Capital Fin. Ltd. v. Grant Thornton Int'l*, 756 F.3d 549 (7th Cir. 2014) ..........................25

*Paul v. Shinseki*, 2010 WL 3927077 (E.D.N.Y. Sept. 29, 2010) ........................................................15

*Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082 (2d Cir. 1997)........................................................21

*Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010).................................................3, 5

*Pennsylvania Gear Corp. v. Fulton*, 1999 WL 80260 (E.D. Pa. Jan. 26, 1999) .................................8

*Prof. Personnel Mgmt. Corp. v. Southwest Medical Assocs., Inc.*, 216 A.D.2d 958, 628 N.Y.S.2d 919 (N.Y. App. Div. 1995) ....................................................................................................................6

*Prospect Capital Corp. v. Bender*, 2009 WL 4907121 (S.D.N.Y. Dec. 21, 2009) ......................4, 15

*Rains v. Cascade Indus., Inc.*, 258 F. Supp. 974 (S.D.N.Y. 1966) ......................................................9

*Republic of Iraq v. ABB AG*, --F.3d--, 2014 WL 4637201 (2d Cir. Sept. 18, 2014) ........................20

*Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F. Supp. 731 (S.D.N.Y. 1996)..............................................................................................................................9, 13

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Services of Oregon, Inc.*, 09-CV-3855(JS)(WDW), 2014 WL 4374586 (E.D.N.Y. Aug. 29, 2014) ..................................2, 7, 10, 11

*Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980)..............................................................22

*Solow Bldg. Co. v. ATC Assocs.*, 175 F. Supp. 2d 465 (E.D.N.Y. 2001)............................................6

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014) ...................................4

*S.T. Grand, Inc. v. City of New York*, 32 N.Y.2d 300 (N.Y. 1973)....................................................22

*Travis v. United States*, 364 U.S. 631 (1961) ......................................................................................6

*Tri–County Metropolitan Transp. Dist. of Oregon v. Butler Block, LLC*, 2008 WL 2037306 (D. Or. May 7, 2008) .....................................................................................................................................3

*Troma Entertainment, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215 (2d Cir. 2013) ......................5

*United Computer Capital Corp. v. Secure Prods., L.P.*, 218 F. Supp. 2d 273 (N.D.N.Y. 2002) .....13

*UCAR Int'l Inc. v. Union Carbide Corp.*, 119 F. App'x 300 (2d Cir. 2004)................................20, 21

*United States v. Auernheimer*, 748 F.3d 525 (3d Cir. 2014) ..............................................................7

*United States v. Cabrales*, 524 U.S. 1 (1998) ...................................................................7

*United States ex rel. Rudick v. Laird,* 412 F.2d 16 (2d Cir. 1969) ....................................7

*Villanova v. Harbilas*, 2010 WL 1640187 (S.D.N.Y. April 13, 2010) .........................5, 11

*Warth v. Seldin,* 422 U.S. 490 (1975) ...............................................................................16

*Whitaker v. American Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) ................................5

## STATUTES

16 U.S.C. §§ 1965 ............................................................................................................4, 8

28 U.S.C. § 1391(a) .............................................................................................7, 9, 12, 13

28 U.S.C. § 1391(b) ..............................................................................................4, 8, 12

28 U.S.C. § 1406 (a) .........................................................................................8, 9, 14, 15

Fla. Stat. § 607.1421 ..........................................................................................................18

Fla. Stat. § 608.4481 ..........................................................................................................18

N.Y. C.P.L.R. § 301 .............................................................................................................4

N.Y. C.P.L.R. § 302 .............................................................................................................5

N.Y. Ltd. Liab. Co. L. § 206 ..............................................................................................17

N.Y. Ltd. Liab. Co. L. § 801(a) ..........................................................................................17

N.Y. Ltd. Liab. Co. L. § 802(a)(7) .....................................................................................17

N.Y. Ltd. Liab. Co. L. § 807 ..............................................................................................17

N.Y. Ltd. Liab. Co. L. § 808(a) ..........................................................................................17

N.Y. Ltd. Liab. Co. L. § 809 ..............................................................................................17

Or. Rev. Stat. §§ 63.001-63.990 ........................................................................................18

## RULES

Fed. R. Civ. P. 8 ..................................................................................................................1

Fed. R. Civ. P. 9(b) .............................................................................................................1

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 1

Fed. R. Civ. P. 12(b)(2) .......................................................................................... 1, 3, 7

Fed. R. Civ. P. 12(b)(3) .......................................................................................... 1, 6, 7

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 20

Fed. R. Civ. P. 17(b) ............................................................................................... 1, 16

**OTHER SOURCES**

14D Wright & Miller, *Federal Practice and Procedure Juris.* § 3827 (3d ed. 2005) .................. 14

## PRELIMINARY STATEMENT

Defendant Michael D. Reis respectfully submits this memorandum of law in support of his pre-Answer motion to dismiss Plaintiffs' Third Amended Complaint ("TAC") pursuant to Federal Rules of Civil Procedure 8(a)(2); 9(a)(2); 9(b); 12(b)(1), (2), (3) and (6); and 17(b).[1]

## STATEMENT OF PLAINTIFFS' ALLEGATIONS

Plaintiffs—two groups that unsuccessfully sought to obtain loans to fund their speculative real estate ventures in Florida—allege in the TAC that defendant Michael D. Reis ("Reis") and the other defendants engaged in a scheme "mastermind[ed]" by defendants Aida and Larry Esacove to fraudulently induce Plaintiffs to wire approximately $12 million dollars to defendant Tisdale & Nicholson, LLP, in California, in four separate transactions between August 31, 2006 and November 27, 2007 (*id.* ¶¶ 1, 4-5, 13-14, 24, 40, 89, 103, 121, 141, 259.)  Plaintiffs allegedly engaged EVMC Real Estate Consulting Services, Inc. ("EVMC"), "the hub of the conspiracy" in California (id. ¶ 15), to assist them with obtaining financing for proposed real estate developments, but EVMC did absolutely nothing to procure funding sources for Plaintiffs (*id.* ¶ 15.)  According to Plaintiffs, their failure to obtain loans—rather than being an extension of Eagle's ongoing fraud, or simply ill-fated developments during the "near collapse of the nation's . . . credit system" (*id.* ¶ 29)—was because EVMC was a "sham" corporation (*id.* ¶¶ 15, 18) that diverted the initial funds paid by plaintiffs to EVMC "into defendants' own pockets" (*id.* ¶¶ 1, 2, 24, 239.)

Plaintiffs further allege that the other defendants—including Reis—conspired with the Esacoves—and their "alter ego" EVMC—to defraud Plaintiffs, and made misrepresentations to Plaintiffs about various efforts to obtain financing, thereby giving EVMC a "veneer" of legitimacy

---

[1] Because the issues of jurisdiction and improper venue raised herein, the discovery stay should remain in full effect during the pendency of this motion.

(*id.* ¶ 17-21.)  Reis, who was employed by "Accordia of Oregon … a 'Wells Fargo Company'" (*id.* ¶¶ 2, 13 n.17, 40), allegedly "aided and abetted the Esacoves in their scheming" (*id.* ¶¶ 14, 17, 26, 29-49), and "interjected himself into the conversation between EVMC and *its* victims" (*id.* ¶¶ 31, 32, 88, 97) (emphasis added).

<u>PLAINTIFFS' AMENDED JURISDICTIONAL ALLEGATIONS</u>

Because Plaintiffs' subject matter jurisdiction (like venue in this jurisdiction and nationwide service of process) was based on their now-dismissed RICO claims, the Court granted Plaintiffs renewed motion to reconsider and allowed Plaintiffs to amend their jurisdictional allegations to establish subject matter over the remaining state common law claims based on diversity jurisdiction, *see generally European Cmty. v. RJR Nabisco, Inc.*, --F.3d--, 2014 WL 4085863, at *10 (2d Cir. Aug. 20, 2014) (observing "Federal courts are powerless to adjudicate a suit unless they have subject matter jurisdiction over the action"), and to submit another amended complaint (*see* Electronic Order, dated Aug. 7, 2014).  Those amendments are contained in the sections of the TAC concerning the "Parties" and "Jurisdiction and Venue."  (TAC ¶¶ 4-11.)  The Court found that it has diversity jurisdiction over this action, based on Plaintiffs' new allegations and their submissions in connection with their renewed motion for default (*see, e.g.*, D.E. 145), and, therefore, found that the viability of the state law claims was ripe for review.  *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 2014 WL 4374586, at *2, *3 (E.D.N.Y. Aug. 29, 2014).[2]  Accordingly, the Court went on to address the state law claims; significantly, for purposes of this motion, the Court found Plaintiffs' venue allegations were sufficient to survive, despite their failure to address that issue in their motion for reconsideration, but invited further briefing on the

issue, *see id*. at *11 n.9, and stated, without ruling, that, in light of the fact that neither Plaintiffs nor Reis briefed that issue, it would not *sua sponte* consider the issue of whether Plaintiffs sufficiently established personal jurisdiction over Reis under New York law, *see id*. at *9-10.

## ARGUMENT

Plaintiffs' TAC is jurisdictionally defective as to Reis, despite the jurisdictional amendments, and the claims against Reis should be dismissed because (1) this Court lacks personal jurisdiction over Reis and (2) venue is improper in this District.  Even if jurisdiction and/or venue were properly established, all, or virtually all, of Plaintiffs' claims against Reis, must be dismissed (3) because of their lack of authority to bring this action, or (4) based on the well-established doctrine of *in pari delicto*, which bars a plaintiff from recovering from his or her own wrongdoing.

## POINT I

### PLAINTIFFS FAILED TO CARRY THEIR BURDEN TO ESTABLISH A NON-RICO BASIS FOR PERSONAL JURISDICTION OVER REIS IN NEW YORK

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction exists over the defendant.  *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  Here, even assuming, *arguendo*, that Plaintiffs sufficiently stated any provision of New York State law as an independent basis for asserting personal jurisdiction in the TAC—which they did not do—their allegations fail to establish a sufficient grounds for the Court to find personal jurisdiction over Reis for purposes of their state

---

[2] Although the LLCs were administratively dissolved by the State of Florida (*see, infra,* Point III), that does not destroy its citizenship for diversity purposes.  *See, e.g., Tri–County Metropolitan Transp. Dist. of Oregon v. Butler Block, LLC,* 2008 WL 2037306, at *2-3 (D. Or. May 7, 2008).

common law claims under the respective New York statutes,[3] or under the established principles of due process.[4]

It is clear that there is no basis for general personal jurisdiction over Reis under N.Y. C.P.L.R. § 301.  An out-of-state defendant is present and 'doing business' in New York only if he or she is engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of 'presence' in this jurisdiction.  Mere solicitation of business is not enough, the party must engage in continuous, permanent, and substantial activity in New York.  *See, e.g., Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 223-26 & n.2 (2d Cir. 2014) (applying *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) (announcing sharp limitations on when a court can assert general personal jurisdiction)).

---

[3] Indeed, Plaintiffs essentially conceded that their jurisdiction over Reis was based exclusively on the RICO statute and derivative of personal jurisdiction in New York with respect to Wells Fargo.  (Doc. 81, at 23 (arguing "regardless of the nature and extent of Reis's contacts with New York, this Court has personal jurisdiction over Reis pursuant to 18 U.S.C. Section 1965(a) and (b) *because personal jurisdiction based on minimum contacts exists with respect to the Wells Fargo defendants.*") (emphasis added)).  Telligly, Plaintiffs asked the Court to grant them leave to amend their complaint to do what they failed to do in opposition to Reis's motion—"specifically identify" the alleged "fraudulent conduct made to SHMC representatives in this district."  (Doc. 81, at 24 n.5); *cf. Eldred v. Comforce Corp.*, 2010 WL 812698, at *11 (N.D.N.Y. Mar. 2, 2010) (observing that the plaintiffs' assertion in their opposition to the defendant's motion to dismiss—that "discovery is likely to establish that the court has personal jurisdiction"—was essentially an admission by the plaintiffs of the "inadequacy of relying on later discovery to reveal information that they are required to provide in order to survive dismissal when they rest their jurisdictional claim instead pursuant to 18 U.S.C. § 1965").

[4] As a threshold matter, any argument that Reis waived or forfeited his objection to Plaintiffs' failure to establish personal jurisdiction over him would be meritless.  Reis timely raised the defense of lack of personal jurisdiction in his initial Rule 12 motion, and contested the only basis for personal jurisdiction asserted by Plaintiffs in their complaint (Reis Mem. [Doc. 80] at 1, 20).  *See China Nat'l Chartering Corp. v. Pactrans Air &Sea, Inc.*, 882 F. Supp. 2d 579, 588 & nn.51-52, 591 (S.D.N.Y. 2012) (rejecting a variety of arguments that the defendant waived or forfeited its personal jurisdiction objection).  Any finding of "waiver" would be clearly contrary to the analysis in *China Nat'l Chartering Corp.* and the cases cited therein.  Indeed, rather than being presented with a situation indicative of waiver or forfeiture, the Court more appropriately had ample basis to grant Reis's motion on that ground, because of *Plaintiffs' failure* to raise *any* alternative grounds, or cite any New York statute or case law supporting a finding of personal jurisdiction in response to Reis's motion that was based on New York law; rather Plaintiffs simply cited to the RICO statute.  (Plaintiffs' Opp. Mem. [Doc. 81] at 23).  *Cf. Prospect Capital Corp. v. Bender*, 2009 WL 4907121, at *2 n.7 (S.D.N.Y. Dec. 21, 2009) (refusing to consider alternate ground of venue under RICO, despite citation to that provision in the amended complaint, where plaintiff, nevertheless, "based its entire argument as to venue on 28 U.S.C. § 1391(b)").  Finally, even assuming that was the Court's failure to further address the issue was somehow a ruling, it would be subject to reconsideration because of the dismissal of the RICO counts, the filing of the TAC, and as clearly erroneous.  *See Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 288-89 (2d Cir. 2011).

Moreover, there is no basis for personal jurisdiction over Reis based on New York long-arm jurisdiction under any subsection of N.Y. C.P.L.R. § 302(a). *First*, subsection (a)(2) is inapplicable because it requires "a defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999). Plaintiffs do not allege that Reis was present in New York—nor could they. *Second*, subsection (a)(3) is inapplicable because there is no "injury" in New York. "It is well-settled that 'residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction' under section 302(a)(3)." *Troma Entertainment, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (quoting *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (N.Y. 1980)). Moreover, "[t]he suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes," and that "lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business [t]here" are insufficient to support the exercise of jurisdiction over a defendant. *Id.* at 218 (quoting *Penguin Gr.*, 609 F.3d at 38); *see also Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001); *Magwich, L.L.C. v. Pusser's Inc.*, 84 A.D.3d 529, 532, 923 N.Y.S.2d 455, 458 (N.Y. App. Div. 2011) (determining "the injury was caused by misrepresentations … about the transfer and diversion of funds … in the BVI and locations other than New York"); *Villanova v. Harbilas*, 2010 WL 1640187, at *5 (S.D.N.Y. Apr. 13, 2010) (noting that even if there is an injury in New York, additional factors must be established). *Third*, subsection (a)(1) is inapplicable because Reis did not transact business within New York. *See, e.g.*, *Concrete Pipe & Products Corp. v. Modern Building Materials, Inc.*, 213 A.D.2d, 624 N.Y.S.2d 496 (N.Y. App. Div. 1995) (negotiation of lease agreement consummated via mail, telephone and

fax insufficient to confer long-arm jurisdiction over out-of-state corporation); *Prof. Personnel Mgmt. Corp. v. Southwest Medical Assocs., Inc.*, 216 A.D.2d 958, 628 N.Y.S.2d 919, 920 (N.Y. App. Div. 1995) ("Interstate negotiations by telephone, facsimile or mail are insufficient to impose personal jurisdiction in New York upon a non-resident defendant.")

*Lastly*, exercise of personal jurisdiction over Reis under the facts alleged by Plaintiffs would not comport with principles of due process.

POINT II

VENUE IS IMPROPER IN THE EASTERN DISTRICT OF NEW YORK

This action against Reis should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3). Venue is improper in the Eastern District of New York because all of the alleged events or omissions giving rise to Plaintiffs' claims against Reis occurred in Oregon—where he lives and works (TAC ¶ 6A).[5]

A.    Legal Standards

On a motion to dismiss a complaint under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper for each one of the claims asserted. *See Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011); *Solow Bldg. Co. v. ATC Assocs.,* 175 F. Supp. 2d 465, 469 (E.D.N.Y. 2001). The Supreme Court has instructed that "questions of venue are more than matters of mere procedure," *Travis v. United States*, 364 U.S. 631, 634 (1961), and must be narrowly construed, because they "raise deep issues of public policy." *United States v. Johnson*, 323 U.S. 273, 276 (1944); *see also Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 357 (2d Cir.2005) ("We are required to construe the venue statute

6

strictly.") (citing *Olberding v. Illinois Cent. R.R.*, 346 U.S. 338, 340 (1953) (stating that "[t]he

requirement of venue is specific and unambiguous; it is not one of those vague principles which,

in the interest of some overriding policy, is to be given a 'liberal' construction.")).[6]  Indeed, the

Third Circuit recently observed that proper venue was "so important to the founding generation that

it was listed as a grievance in the Declaration of Independence … [and] the Constitution of the

United States 'twice safeguards the defendant's venue right.'"  *United States v. Auernheimer*, 748

F.3d 525, 532 (3d Cir. 2014) (quoting *United States v. Cabrales*, 524 U.S. 1, 6 (1998)).

Where, as here, federal jurisdiction is founded solely on diversity of citizenship, s*ee Sands

Harbor*, 2014 WL 4374586, at *9 (finding, on reconsideration, that the Court "has diversity

jurisdiction"), the action may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the
> same State, (2) a judicial district in which a substantial part of the events or
> omissions giving rise to the claim occurred, or a substantial part of property that
> is the subject of the action is situated, or (3) a judicial district in which any
> defendant is subject to personal jurisdiction at the time the action commenced, if
> there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).[7]

Because "the purpose of statutorily specified venue is to protect the *defendant* against the

risk that a plaintiff will select an unfair or inconvenient place of trial," *Daniel v. Am. Bd. of

Emergency Med.,* 428 F.3d 408, 432 (2d Cir. 2005) (quoting *Leroy v. Great W. United Corp.,* 443

U.S. 173, 183-84 (1979) (emphasis in original)), it is the Plaintiffs' burden to demonstrate that a

---

[5] Oregon is also where defendant Wells Fargo Insurance Services of Oregon, Inc. is incorporated and has its principal place of business (TAC ¶ 6).

[6] For purposes of this Rule 12(b)(3) motion, non-conclusory factual allegations in the TAC are presumed true, similar to under Rule 12(b)(2).  *See, e.g., Gulf Ins. Co.,* 417 F.3d at 355.  Nevertheless, while "[t]he concepts of personal jurisdiction and venue are closely related," they are "distinct." *United States ex rel. Rudick v. Laird,* 412 F.2d 16, 20 (2d Cir. 1969).  Consequently, "[i]t would be error ... to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries."  *Gulf Ins. Co.,* 417 F.3d at 357.

"substantial part" of each of the claims occurred in the forum district.  *See, e.g.*, *French Transit, Ltd. v. Modern Coupon Sys., Inc.*, 858 F. Supp. 22, 25 (S.D.N.Y. 1994); *see also Harrison v. L.P. Rock Corp.*, 2000 WL 19257, at *3 (E.D. Pa. Jan. 7, 2000) (observing "[t]he statutory language favors the defendant, by requiring the events or omissions supporting the claim to be 'substantial.'") (citing *Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir. 1994) (noting that "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'")).  "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel,* 428 F.3d at 432–33.  The Second Circuit has "caution[ed] district courts to take seriously the adjective 'substantial.'" *Gulf Ins. Co.*, 417 F.3d at 357.  "[F]or venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question." *Id.* (emphasis in original).  "It would be error, for instance, to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." *Id.*

If venue is improper in the forum district for any or all of the claims, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district … in which it could have been brought."  28 U.S.C. § 1406(a).[8]  The decision to dismiss, transfer or, in certain circumstances, sever, is left to the sound discretion of the court. *See Minnette v. Time Warner*, 997

---

[7] Because the RICO counts were dismissed, Plaintiffs' citations in the TAC to 28 U.S.C. § 1391(b) and 16 U.S.C. §§ 1965(a), (b) and (d) are inapposite.

[8] Under 28 U.S.C. § 1406(a), "a court may transfer a case even without a finding of personal jurisdiction over the defendants." *Pennsylvania Gear Corp. v. Fulton*, 1999 WL 80260, at *3 (E.D. Pa. Jan. 26, 1999) (citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466 (1962)).

F.2d 1023, 1026 (2d Cir. 1993); *see also Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668, 671-72 (2d Cir. 1994) (holding district court properly dismissed plaintiff's claims for improper venue, where plaintiff failed to establish substantial part of events or omissions giving rise to claims which took place in New York, and did not abuse its discretion by declining to transfer action at plaintiff's request); *Rains v. Cascade Indus., Inc.*, 258 F. Supp. 974, 976-77 (S.D.N.Y. 1966) (severing action for one defendant, in the "interest of justice," to render venue proper against remaining defendants).

B.    Plaintiffs Fail to Establish Venue Under 28 U.S.C. § 1391(a)

Although Plaintiffs did not plead in the TAC, or subsequently argue, that any specific basis for venue under 28 U.S.C. § 1391(a) applies, subsection (a)(1) clearly is inapplicable because none of the defendants reside in this District, or in New York.  *See Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.,* 927 F. Supp. 731, 735 (S.D.N.Y. 1996).  Subsection (a)(3) also is inapplicable because venue lies for the claims against Reis in the District of Oregon.[9] It is undisputed that Oregon is where Reis lives, and that is where the alleged misrepresentations or omissions were made; thereby satisfying the "substantial" test under subsection (a)(2).  Thus, the determinative inquiry is whether a "substantial part of the events or omissions giving rise to the claim[s] [against Reis] occurred" in this district under subsection (a)(2).[10]  *See Albergo v.*

---

[9] Venue may also be proper in the Central District of California for most or all of the other defendants.  *Cf. Brossart v. Lynx Business Intelligence Consulting, Inc.*, 2008 WL 2461592 (D. Ariz. June 25, 2008); *see also Digital Lab Solutions, LLC v. Stickler*, 2007 WL 700821 (S.D.N.Y. March 7, 2007).

[10] Venue may lie in multiple districts, if a "*substantial*" part of the event or omissions occurred in each district. *See Gulf Ins. Co.*, 417 F.3d at 356; *Saferstein*, 927 F. Supp. at 736; *Cont'l Ins. Co. v. Securi Enters., Inc.*, 2010 WL 3702559, at *2 (E.D.N.Y. Aug. 16, 2010), *adopted* 2010 WL 3619704 (E.D.N.Y. Sept. 9, 2010).  A party, however, may consent, or waive its opposition, to an improper venue.  *See* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."); *Gross v. British Broad. Corp.*, 386 F.3d 224, 234 (2d Cir. 2004) (observing that "[v]enue is a personal privilege that is waivable at will"); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371-72 (2d Cir. 1966) ("Since the right to attack venue is personal to the parties and waivable at will, a district judge should not, in the absence of extraordinary circumstances, impose [her] choice of forum upon the parties by deciding on his own motion that there was a lack of proper venue.").

*Pearlman*, 2011 WL 102749, at \*3-4 (S.D.N.Y. Jan. 10, 2011) (dismissing for improper venue where amended complaint "was devoid of any facts indicating that any of the events giving rise to the claims occurred in New York").

Here too, Plaintiffs' allegations fail under that subsection. *First*, Plaintiffs' only argument in response to Reis's challenge to venue in this District—other than their reliance on the RICO statute—was their conclusory assertion that "[m]any of Reis's numerous fraudulent misrepresentations giving rise to plaintiffs' claims were made to SHMC representatives on Long Island" (Pls.' Opp. Mem. [Doc. 81] at 24).[11]  As this Court noted, although Plaintiffs' motion for reconsideration "addresse[d] the merits of their state law claims against Reis … [their] arguments … [did] not address Reis' assertions in his original motion to dismiss that this Court lacks personal jurisdiction … [and] "that venue is improper." *Sands Harbor*, 2014 WL 4374586, at \*9.  (*See* Pls.' Recons. Mem. [Doc. 118]; Pls' Recons. Reply [Doc. 127], Pls.' Recons. Letters [Docs. 145, 148].)  In light of the dismissal of the federal RICO claims, Plaintiffs' invocation of those unidentified communications, particularly when completely dissociated from any specific allegations in the complaint, are simply insufficient to carry their burden to establish a prima facie case of venue.

*Second*, review of the nature of the claims in the TAC shows that Plaintiffs have failed to demonstrate venue based on any "substantial" connection between those claims and this District.  There are absolutely no allegations in the TAC that Reis ever met face-to-face with any plaintiff or that he travelled to New York for any reason, let alone to meet with any plaintiff in Long Island concerning the subject matter of the claims against him.  Instead, Plaintiffs' only basis for Reis's contacts with New York is their allegations that Reis engaged in long-distance, electronic (and

---

[11] As with personal jurisdiction, Plaintiffs implicitly recognized the insufficiency of their venue allegations by requesting leave to further amend their venue allegations in the complaint (*see* Pls.' Opp. Mem. at 24 n.5).

mailed) communications with, or to, unspecified persons in Long Island, which emanated from his office in Oregon, and that one or more telephone call(s) or other communications contained misrepresentations or omissions that caused financial injury in New York. The nature of the claims for venue analysis, therefore, are simply ones of "representations directed toward Plaintiffs and omissions from Plaintiffs."[12]  *Sands Harbor*, 2014 WL 4374586, at *11.

When examining claims based on misrepresentation or omission in a motion to dismiss or transfer for improper venue, however, the alleged "'misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, *not where they are received*.'" *Branthover v. Goldenson*, 2011 WL 6179552, at *3 (S.D.N.Y. Dec. 12, 2011) (quoting *In re Nematron Corp. Secs. Litig*., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998)) (emphasis added).  Under that analysis, because Plaintiffs' claims allege acts or omissions that occurred in Oregon, and no other substantial part of Plaintiffs' claims against him take place in this District, venue is proper in the District of Oregon, but not in the Eastern District of New York.  *See Villanova*, 2010 WL 1640187, at *6 (dismissing for improper venue in diversity action where "the events or omissions that gave rise to plaintiffs' claims occurred in the Middle District of Pennsylvania, not the Southern District of New York"); *see also, e.g., Kerik v. Tacopina*, 2014 WL 1340038, at *4-5 (D.N.J. Apr. 3, 2014) (holding that misrepresentations made by the defendant over the phone or email occurred in New York because that was where the calls and emails originated; single visit to New Jersey not a substantial event for purposes of venue); *Frato v. Swing Staging, Inc*., 2011 WL 3625064, at *4 (D.N.J. Aug. 17, 2011) (rejecting argument that plaintiff's fraud and

---

[12] Significantly, the Court found that any misrepresentations that were promissory in nature do not state a claim in the first place (*Sands Harbor*, 2014 WL 4374586, at *12), and that Plaintiffs failed "to demonstrate a fiduciary relationship between themselves and Reis" (*id*. at *13).

misrepresentation claims "arose in New Jersey because [that is where] he relied on Defendant's alleged misrepresentations regarding [its] financial condition" where plaintiff could have properly filed the action in Eastern District of New York); *Loeb v. Bank of Am.,* 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003) (finding correspondence, telephone calls, and the "impact of economic harm" to be "woefully insufficient to establish venue in this district"). The rule that courts attribute misrepresentations or omissions to the locations from which they emanate is logical in light of the purpose of the venue statutes; a contrary finding based on, for example, the plaintiff's receipt of misrepresentations or omissions in telephone conversations "would lead to a rule where venue always existed where a plaintiff resides so long as there are any communications" into that district. *Cold Spring Harbor Lab.*, 762 F. Supp. 2d at 557. Such a rule would render the courts' pronouncements on strict interpretation of venue, and a focus on the defendant rather than the plaintiff, meaningless.

It is also well-established that venue cannot be based on a claim that the location of the harm was in the forum district, simply because that is where a plaintiff lives. *See, e.g., Henrich v. Field*, 2006 WL 2620043, at *2 (W.D.N.Y. Sept. 13, 2006) (rejecting claim of venue in Western District of New York under § 1391(a)(2), as alleged breach of fiduciary duty and omissions occurred in Delaware). The district court in *Henrich* found that plaintiff's "argument that he experienced part or all of the injury in New York … due to the transmission of letter to him in New York" failed to "constitute a substantial portion of the events or omissions giving rise to the totality of his claims and § 1391(a)(2) is inapplicable." *Id*. Indeed, "venue determinations based solely on the location of the harm is contrary to Congress's intent in drafting [the analogous] section 1391(b) and the Second Circuit's directive that the venue analysis should focus on the relevant

activities of the defendants." *Fedele v. Harris*, --F. Supp. 2d--, 2014 WL 1870840, at *8 (E.D.N.Y. May 9, 2014) (quoting *Cold Spring Harbor Lab.*, 762 F.Supp.2d at 558); *MB Financial Bank, N.A. v. Walker,* 741 F.Supp.2d 912, 918 (N.D. Ill. Sept. 23, 2010) ("Congress amended § 1391 specifically to remove the plaintiff's home from the venue equation.").  "If the situs of a plaintiff's economic injury were dispositive, §§ 1391(a)(1) and 1391(a)(3) would be superfluous;" a plaintiff then "could always sue in its home district because, after all, home is where the wallet is."  *MB Financial Bank, N.A.*, 741 F.Supp.2d at 918; *see also Astor Holdings, Inc. v. Roski,* 2002 WL 72936, at *9 (S.D.N.Y. Jan. 17, 2002) ("There is an obvious potential for unbounded venue if the courts were to find venue regardless of where the acts occurred, based solely on the existence of economic harm felt in the district where the plaintiff resides or is headquartered.").[13]  As one court in this District recently observed, an "argument that the tortious conduct of [a defendant] outside New York caused injury within New York is more akin to a minimum contacts test for purposes of personal jurisdiction."  *Blauschild v. Tudor*, --F. Supp. 2d--, 2014 WL 3566517, at *11 (E.D.N.Y. July 21, 2014) (finding venue improper).

C.    Because Venue is Improper, the Court Should Dismiss the Claims Against Reis. Alternatively, Should the Court Find that the Interests of Justice Warrant Transfer, the Action Should be Transferred to the District of Oregon

In sum, venue is improper in this District because no substantial part of the events or omissions giving rise to the claims against Reis occurred in New York.  To the extent that venue

---

[13] In *Astor Holdings*, Judge Lynch rejected the plaintiff's attempt to rely on *N.Y. Mercantile Exch. v. Cent. Tours Int'l, Inc.*, 1997 WL 370600 (S.D.N.Y. July 1, 1997), for the proposition that harm to the plaintiff is sufficient for venue. Indeed, there is a critical distinction between contract claims, where receipt of communications and harm may be pertinent, *see Gulf Ins. Co.*, 417 F.3d at 357, and tort claims. *See Saferstein*, 927 F. Supp. at 736 (negotiations and visit to New York sufficient for venue in breach of contract context, but insufficient for claims of misrepresentation, fraud, and breach of fiduciary duty); *cf. Cosa Xentaur Corp. v. Bow*, 2014 WL 1331030 (E.D.N.Y. March 31, 2014) (analyzing venue based on contract negotiations involving a visit to New York, emails and telephone calls).  In any event, even "[w]here a plaintiff's cause of action is based upon a contract, negotiation of the contractual terms by phone, fax or mail with the New York party is generally insufficient to support a finding of the transaction of business in New York." *United Computer Capital Corp. v. Secure Prods., L.P.*, 218 F. Supp. 2d 273, 278 (N.D.N.Y. 2002).

is proper as to other defendants (or has been waived by them), this Court is vested with the discretion to, among other things,

> (1) dismiss the action pursuant to 28 U.S.C. § 1406(a), (2) transfer the entire case to another district where venue is proper for all Defendants pursuant to 28 U.S.C. § 1406(a), or (3) sever the claims in the case, retain jurisdiction over the Defendant[s] for whom venue is proper, and transfer the other claims.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 813 (E.D. Mich. 2000); *see also Gonsalves-Carvalhal v. Aurora Bank, FSB*, 2014 WL 201502, at *8 (E.D.N.Y. Jan. 16, 2014) (citing Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3827 (3d ed. 2005) ("If venue is proper for some Defendants but improper for others, the district court has wide discretion. It may transfer the entire case to another forum that would be proper for all the Defendants as many courts have done. Alternatively, it may retain the case as to those Defendants who have been properly sued there and either transfer the severed portion of the case for those Defendants for whom venue is improper or dismiss the action as to those Defendants.")).

In this case, the interests of justice favor dismissal of the claims against Reis under the totality of the venue considerations. *See, e.g., Benjamin v. Carusona*, 2010 WL 4448213, at *8 (S.D.N.Y. Nov. 5, 2010) (granting one defendant's motion to dismiss); *Haydu v. U.S. Fed. Gov't*, 2013 WL 665066, at *21-22 (N.D.N.Y. Jan. 29, 2013) (dismissing where venue was improper in forum district, but venue was proper in another State, where most defendants resided), *adopted by*, 2013 WL 66503 (N.D.N.Y. Feb. 22, 2013). Indeed, dismissal, rather than transfer, is particularly appropriate, regardless of the availability of transfer options, when a plaintiff's claims likely would be "clearly doomed," *Daniel*, 428 F.3d at 436, or a "sure loser" even if transferred, *Gonzalez v. Hasty*, 651 F.3d 318, 324 (2d Cir. 2011) (quoting *Moreno–Bravo v.*

14

*Gonzales,* 463 F.3d 253, 263 (2d Cir.2006)), as they are in this case, for the reasons asserted below (*see, infra,* Points III & IV).

Alternatively, any remaining claims against Reis should be transferred to the District of Oregon, where venue is proper, either with the other defendants, *see, e.g., Gonsalves-Garvalhal*, 2014 WL 201502; *Bank of New York Mellon Trust Co., N.A. v. Gebert*, 2014 WL 1883551 (S.D.N.Y. May 9, 2014); *Prospect Capital Corp. v. Bender*, 2009 WL 4907121 (S.D.N.Y. Dec. 21, 2009); *Paul v. Shinseki*, 2010 WL 3927077 (E.D.N.Y. Sept. 29, 2010); *Brossart*, 2008 WL 2461592, or—if venue is improper as to some or all of those defendants—by severing Reis from the action, *see Barnes Group, Inc. v. Midwest Motor Supply Co.,* 2008 WL 509193, *4 (S.D. Ohio Feb. 22, 2008) (severing claims prior to partial transfer under § 1406(a))); *Abuhouran v. Nicklin*, 764 F. Supp. 2d 130, 132-33 (D.D.C. 2011) (same).

## POINT III

### THE LLC PLAINTIFFS LACK CAPACITY TO ASSERT THEIR DIVERSITY-BASED, COMMON LAW CLAIMS AGAINST REIS

As part of their effort to establish subject matter jurisdiction based on diversity, rather than a federal question—after their RICO claims were dismissed—Plaintiffs revealed for the first time the membership of Sands Harbor Marina LLC; Sands Harbor Marina Operating LLC; Pine Creek Ranch, LLC; and University 1248, LLC (the "LLC Plaintiffs"), all of which are organized under the laws of Florida, and their members' citizenship, in the affidavits in support of their renewed motion for default against the non-appearing defendants (D.E. 137, 139; *see also* TAC ¶¶ 4-5). Plaintiffs, however, failed to state in their affidavits, or in the TAC, that the State of Florida had administratively dissolved every single one of the LLC Plaintiffs (Exhibits A-D), *prior to the initiation of their action against Reis* in the SAC (D.E. 53), and that the LLC Plaintiffs remain

legally incapacitated, and without authority (and/or standing) to bring their state common law claims against Reis in this federal action.[14]   Accordingly, the LLC Plaintiffs should be dismissed from this action.[15]

The question of whether a dissolved (foreign) LLC has the authority to bring an action in federal court is determined under Federal Rule of Civil Procedure 17(b)(3).  *See, e.g., In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig*., 767 F. Supp. 2d 880, 892 (N.D. Ill. 2011) ("Rule 17(b)(3) provides that the law of the state where the Court is located guides the inquiry when it comes to limited liability companies.").  Because the TAC alleges only state common law causes of action, the portion of that subsection allowing a non-corporate association or partnership to sue "to enforce substantive a right under the United States Constitution or laws" is inapplicable to this case.  *See* Fed. R. Civ. P. 17(b)(3).  Simply put, if the State law in which the federal district court sits would not allow suit by the LLC Plaintiffs, they cannot bring their claims in federal court.[16]

The New York State courts would bar the dissolved, foreign LLC Plaintiffs' claims in this action.  Under New York law, foreign LLCs that are not authorized to do business in New York must take certain actions, including registering with the Department of State, and affirmatively plead their ability to sue in New York State court in order to initiate a suit; indeed, failure to do so can lead to an action against the LLC.  For example, the applicable New York statute states that "[a]

---

[14] On a motion to dismiss, the district court may look to public records, including court records, *see Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004), and consider documents of which the plaintiff had notice, even though those documents were not incorporated into the complaint by reference, *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991).

[15] Whether a party has standing to sue in federal court is a question of federal law.  *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003).  The party asserting jurisdiction has the burden of establishing it.  *Id.*  In addition, a plaintiff must comply with "prudential" limitations on standing, of which the salient one here is that a party "must 'assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.'"  *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 66 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 2895 (U.S. 2014) (quoting *Warth v. Seldin,* 422 U.S. 490, 499 (1975)).

[16] The applicable law depends on the resolution of the proper venue for this action (*see, supra*, Point II).

16

foreign limited liability company doing business in this state without having received a certificate of authority to do business in this state may not maintain any action, suit or special proceeding in any court of this state." N.Y. Ltd. Liab. Co. L. § 808(a); *see also id.* §§ 802(a)(7) (statement of continued existence in foreign jurisdiction), 807 (termination notification requirement), 809 (attorney general enforcement), 206 (publishing requirement); *cf. Conte v. Cnty. of Nassau*, 2013 WL 3878738, at n.36 (E.D.N.Y. July 26, 2013) (noting that "[u]nder New York law, '[a] dissolved corporation is prohibited from carrying on new business'") (quoting *Moran Enters., Inc. v. Hurst*, 66 A.D.3d 972, 975, 888 N.Y.S.2d 109 (N.Y. App. Div. 2009) (also stating that a dissolved corporation generally "does not enjoy the right to bring suit in the courts" of New York)). An entity search on the New York Department of State's website, however, indicates that none of the LLC Plaintiffs are authorized to do business in New York; nor have they filed any of the required documents necessary to comply with New York's relevant 'door closing' statute (Splittgerber Decl. ¶ 6).

Moreover, the result would be the same—the LLC Plaintiffs would lack capacity to sue in New York—even if a New York court applied the LLC law of Florida,[17] under choice of law principles, because of Florida's greater interest in enforcing its own legal requirements and regulations concerning a dissolved or terminated LLC organized under its laws. *See* N.Y. Ltd. Liab. Co. Law § 801(a) ("the laws of the jurisdiction under which a foreign limited liability company is formed govern its organization and internal affairs and the liability of its members and managers"). Under Florida law, once a corporation is administratively dissolved, it loses its capacity to sue except as specifically necessary to wind up and liquidate its business and affairs.

*See* Fla. Stat. § 608.4481 (administratively dissolved LLC "may not carry on any business except that necessary to wind up and liquidate its business and affairs"); *see also Direct Marketing Services, LLC v. Bluegreen Corp.*, 2005 WL 1594543, at *3-4 (E.D. Tenn. July 6, 2005) (holding under virtually identical LLC statute that "administratively dissolved limited liability company does not have the capacity to sue" other than as "necessary to wind up and liquidate its business affairs"); *cf. Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1307, 1310 (Fed. Cir. 2003) (applying Florida law; holding administratively dissolved Florida corporation could not retroactively have its inability to sue in federal court cured by Florida's corporate revival statute "after the inception of the lawsuit"); *Galen Medical Associates, Inc. v. United States*, 74 Fed. Cl. 377, 382-83 (Fed. Cl. 2006) (reinstated corporation that was administratively dissolved when it filed suit "did not have the capacity to commence" litigation and lacked federal standing).

Significantly, there is absolutely no proof that this suit is part of any formal "winding up" process in the approximately four years since the LLC Plaintiffs were dissolved for failure to comply with Florida law. *In re Flash Memory Antitrust Litigation*, 2010 WL 2465329 (N.D. Cal. June 10, 2010), is instructive. In that case the district court rejected any expansive reading of a dissolved Florida corporation's ability to sue outside of the winding up process to recover in a federal lawsuit, stating "[i]t is beyond cavil that pursuing a class action cannot be deemed part of [the entity's] effort to 'wind up and liquidate its business and affairs.'" *Id.* at *5 (citing Fla. Stat. § 607.1421(3)). Plaintiffs cannot now bootstrap their claims into that limited exception, as it is unlikely that Eagle, who was convicted of defrauding, among others, investors in his real estate LLCs (*see*, *infra*, Point IV), could even legally act in such a capacity.

_____

[17] Significantly, Oregon's LLC statute is virtually indistinguishable from Florida's. *See* Or. Rev. Stat. §§ 63.001-63.990; *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 380 (Bankr. D. Or. 2003) (stating "Oregon

POINT IV

EAGLE'S CLAIMS AGAINST REIS ARE BARRED BY THE DOCTRINE OF *IN PARI DELICTO*, IN LIGHT OF HIS FEDERAL CONVICTIONS ON MULTIPLE COUNTS OF BANK, WIRE AND MAIL FRAUD RELATED TO HIS SCHEME TO DEFRAUD LENDERS

Like Bernard Madoff, and numerous, less-well-known swindlers whose sham businesses came crashing down, Greg W. Eagle's fraud came to light as a result of the recent financial crisis and recession. Eagle too is now incarcerated (Exhibit I); serving a six-year sentence based on his filing of false affidavits in loan applications, misrepresentations to his investors and other fraud to prop up his speculative real estate ventures from approximately 2002 through 2009. Importantly for this case, Eagle's criminal prosecution and convictions show that his claims in this action are inseparable from his contemporaneous efforts to keep his foundering real estate businesses afloat, and his fraud from being exposed. Consequently, Eagle's claims—and those of the LLCs he managed—should be barred by the doctrine of *in pari delicto* to prevent him from shifting blame for his own fraudulent conduct.[18]

A.    *In Pari Delicto*

The doctrine of *in pari delicto* provides that "[i]n a case of equal or mutual fault ... the position of the [defending] party ... is the better one." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985). It is grounded on two premises: "first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Id*. at 306.

---

LLCs are governed by the provisions of Oregon Revised Statutes ("ORS") Chapter 63.").

[18] There can be no question that this defense is timely asserted in this motion. *See In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 & n.90 (S.D.N.Y. 2006) (citing cases).

To advance these goals, many courts apply the *in pari delicto* defense broadly and flexibly "to bar actions where plaintiffs simply have been involved generally in 'the same sort of wrongdoing' as defendants." *Id*. at 307.

The principle that one wrongdoer may not recover against another is well-established, and a particularly "strong" one, under New York law. *See In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 63 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2895 (2014) (quoting *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464 (N.Y. 2010) ("The doctrine of *in pari delict*o mandates that the courts will not intercede to resolve a dispute between two wrongdoers.")).  It "has been wrought in the inmost texture of [New York's] common law for at least two centuries" and "applies even in difficult cases and should not be 'weakened by exceptions.'" *Kirschner*, 15 N.Y.3d at 464.[19]

Application of the doctrine is appropriate on a motion pursuant to Rule 12(b)(6), where the basis for the defense is ascertainable from the complaint, *see, e.g.*, *Republic of Iraq v. ABB AG*, -- F.3d--, 2014 WL 4637201, at *1, *10 (2d Cir. Sept. 18, 2014); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 164 (2d Cir. 2003), or from other permissible sources, such as public or court records, on judicial notice, *see UCAR Int'l Inc. v. Union Carbide Corp.*, 119 F. App'x 300, 301 (2d Cir. 2004) (for purposes of *in pari delicto* defense court may consider "all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken"); *see also In re Granite Partners, L.P.*, 194 B.R. 318, 330-31 (Bankr. S.D.N.Y. 1996) (rejecting as "immaterial" argument that *in pari delicto* did not

---

[19] Indeed, the New York Court of Appeals rejected pleas by the trustees in *Kirschner* to "broaden the adverse interest exception or revise New York precedents relating to *in pari delicto* or imputation for reasons of public policy—specifically, as they put it, to recompense the innocent and make outside professionals … responsible for their [alleged] negligence and misconduct[.]"  15 N.Y.3d at 469.  Similarly, there is no basis for applying an adverse inference exception to Eagle's real estate LLCs.  *See Republic of Iraq*, 2014 WL 4637201, at *16 (citing *Kirschner*, 15 N.Y.3d at 466-68 (requiring 'total abandonment' for the exception under New York law)); *see also, e.g.*, *In re American International Group., Inc. ("AIG"), Consolidated Derivative Litig.*, 965 A.2d 763, 826-27 (Del. Ch. 2009).

apply because plaintiffs did not allege in their complaint fraud by corporation on whose behalf they sued; "It does not follow that if the defrauded party files the complaint, we must conclude that *in pari delicto* does not apply.").

Moreover, although the culpability of a plaintiff must be similar to that of a defendant to bar a civil suit, "'the law does not require [the parties'] wrongdoing to be of an identical nature for the *in pari delicto* defense to apply.'"  *Knox v. Countrywide Bank*, --F. Supp. 2d--, 2014 WL 946635, at *7 (E.D.N.Y. Mar. 12, 2014) (quoting *UCAR Int'l, Inc.,* 119 F. App'x at 302) (dismissing for *in pari delicto* where plaintiffs were "admitted wrongdoer[s]" who signed a mortgage application which they knew contained false financial information); *see also Peltz v. SHB Commodities, Inc*., 115 F.3d 1082, 1091 (2d Cir. 1997) ("although the alleged violation … in this case is of a different quality than [that] which Peltz participated, the lack of an identical nature does not destroy the [*in pari delicto*] defense").  Thus, the doctrine also applies with equal force, despite an absence of 'identity' of fraud between the parties, where the alleged fraud was preceded by or intertwined with the plaintiff's own criminal conduct.  *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig*., 2013 WL 6838899, at *6-7 (S.D.N.Y. Dec. 27, 2013) (*in pari delicto*, unlike collateral estoppel, does "require an 'identity of the issues between the criminal case and the instant case,'" and thus applied to bar claims by John Rigas, based on his convictions for bank fraud and false statements); *UCAR Int'l, Inc. v. Union Carbide Corp.*, 2004 WL 137073, at *12 (S.D.N.Y. Jan. 26, 2004) *aff'd*, 119 F. App'x 300 (2d Cir. 2004) (*in pari delicto* applied where plaintiff's criminal plea was for acts similar and contemporaneous to those for which it sought to recover); *see also Abright v. Shapiro*,

214 A.D.2d 496, 496-97 (N.Y. App. Div. 1995) (parties to a fraudulent or illegal transaction "may not invoke judicial aid to undo the consequences of their illegal acts").[20]

B.    Eagle's Federal Bank, Wire and Mail Fraud Convictions

In this case, a mere month after the Court dismissed the SAC, Eagle was charged by Information and pleaded guilty to four counts of bank fraud, and one count each of mail fraud and wire fraud.  (Exhibits E, F.)  His convictions were based upon his misrepresentations and false filings of affidavits in multiple loan applications on behalf of his real estate developments.  The crux of his bank fraud scheme was that,

> [f]rom in or about February 2002, through in or about June 2008 … EAGLE … did knowingly and intentionally execute, and attempt to execute, a scheme and artifice to defraud a financial institution, namely, Florida Community Bank and First National Bank of Pennsylvania … by means of materially false and fraudulent pretenses, representations and promises."

(Exhibit E, ¶ 14.)  Eagle pleaded guilty to that scheme and admitted to the factual predicates for each one of the counts against him; including his intent to defraud the respective financial institutions.  (Exhibit F, at 7, 27-35.)  Eagle also confirmed that a letter he sent to his investors was, as the prosecutor described, "basically to make them comfortable … a lulling type letter in furtherance of [his] scheme to defraud the investors."  (*Id*. at 34-35.)

Significantly, the criminal conduct to which Eagle pleaded guilty, both preceded and ran contemporaneously with his attempts to secure additional financing from the defendants in this case.  Moreover, as Eagle's sworn statements (including in this case), and public record in his criminal case make indisputable, his attempts to obtain financing from EVMC in this action were

---

[20] "Under New York law, because a criminal conviction is considered a valid final judgment for purposes of issue preclusion, it bars relitigation of all of the factual issues upon which that conviction was based." *Colliton v. Donnelly*, 399 F. App'x 619, 620 (2d Cir. 2010) (citing *Singleton v. City of New York*, 632 F.2d 185, 205 (2d Cir. 1980); *S.T. Grand, Inc. v. City of New York*, 32 N.Y.2d 300, 304–05 (N.Y. 1973)).

intended to keep his disintegrating real-estate enterprises afloat, and to keep his on-going fraudulent course of conduct from being discovered by investors or authorities. Thus, his dealings with EVMC were inextricable from the fraud for which he was convicted, as they were intended to forestall his mounting legal problems and avoid further failure of his real estate developments. Had Eagle's prior fraud been uncovered earlier, there would have been no opportunity for him to seek additional financing from the EVMC defendants, nor engage the services of the other defendants.

At sentencing, Eagle conceded that his attempts to obtain financing from EVMC was linked to the fraud to which he pleaded guilty, but, nevertheless, tried to rationalize his own fraud and shift blame. Eagle claimed to the sentencing court that his fraud, including a fraudulent mortgage, was in the interest of benefitting his investors, but the worsening "economy … ruined [him] …. [I]t simply "drained [him] with the worst market since my parents in the Great Depression." (Exhibit G, at 201-02.) Eagle also argued that he tried desperately to obtain financing from the defendants in this civil action to pay off his fraudulently obtained loans, but was himself unexpectedly "duped" in his attempt to stave off his creditors. (*Id.*)

The Assistant United States Attorney ("AUSA"), however, took issue with Eagle's sentencing-attempt to minimize his fraud. Regardless of Eagle's purported intention to 'make good' to his investors, Eagle submitted "numerous different [fraudulent] affidavits" to at least "two different banks[,]" and his scheme to defraud—*i.e.*, his "lying to the banks to get money"—took place "over a [lengthy] period of time." (*Id.* at 202-03) The AUSA pointed to the record evidence and further stated:

> [I]n times of economic downfall, often fraud gets discovered. … But you can't use the fact that the economy crashed as an excuse for your conduct, nor can Mr. Eagle use the fact that he got allegedly defrauded by another bank, *because the [fraud with the First National Bank of Pennsylvania] occurred in June and July*

23

> *of 2006. … Mr. Eagle himself filed an affidavit [in the E.D.N.Y. case], and he stated … that he didn't meet the principles of EVMC … until August of 2006.*[21] So I wouldn't want the Court to think that he was defrauded by the bank, or by EVMC, and then this caused him to start to do reckless things in our case to get the money, because, well, it clearly didn't happen in 2002, when he defrauded Florida Community Bank and submitted false documents there. [A]ccording to the facts that we have, the [fraudulent First National Bank] loan was provided in July of 2006, [before] he began his negotiations with the parties with whom he now has a lawsuit for the fraud.

(*Id*. at 203-04.)

Simply put, Eagle was operating a real estate empire that appeared to be thriving, but was essentially bankrupt. He was able to keep it above water temporarily by fraudulently obtaining ever-greater financing; which he tried to extend further, or extinguish, through the additional financing efforts at issue in this case. Eagle's repeated, fraudulent financing schemes are analogous to the ones employed by the executives of the Parmalat S.p.A. to similarly extend the shelf-life of that expired Italian dairy conglomerate. In that case, Parmalat similarly "used its fraudulently gained financing to keep the company afloat and expand[, but] [u]ltimately, the scheme became unsustainable." *In re Parmalat Sec. Litig*., 659 F. Supp. 2d 504, 510 (S.D.N.Y. 2009), *aff'd in part sub nom. Parmalat Capital Fin. Ltd. v. Bank of America Corp*., 412 F. App'x 325, 327-28 (2d Cir. 2011) (affirming that *in pari delicto* barred the claims against Bank of America). Eventually, "Parmalat experienced a liquidity crisis, and [its] ensuing collapse was rapid." *Id*.

Eagle's similar attempt to hold his would-be financers culpable should likewise be precluded under the doctrine of *in pari delicto*. *See In re Parmalat*, 383 F. Supp. 2d at 595 & n.42, 596 (*in pari delic*to barred fraud, negligent misrepresentation, unjust enrichment, and conspiracy

---

[21] *See* (D.E. 105 [Eagle Aff., dated Feb. 12, 2013] ¶ 4) ("In August 2006, I was introduced to EVMC. I had one parcel of land under contract and was negotiating to buy another."), ¶ 5 ("On September 15, 2006, University 1248 LLC entered into an amended contract" and "in December 29, 2006, my other company (which would later become Pine Creek Ranch LLC), entered into a contract to purchase another plot of land ….").

claims; "No one is permitted to profit by his own fraud, or to take advantage of his own wrong, or to found a claim on his own inequity, or to acquire any rights by his own crime.");[22] *see also In re Parmalat Secs. Litig.*, 659 F. Supp. 2d at 517 ("A court 'will not aid a fraudfeasor who invokes the court's jurisdiction' to relieve it of the consequences of its fraud."); *Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1164 (N.J. App. Div. 2011), *lv. denied*, 45 A.3d 983 (N.J. 2012) ("Judge Harris properly applied the *in pari delicto* affirmative defense invoked by Citi to defeat … [the] claims against Citi").

<u>CONCLUSION</u>

<u>FOR THE ABOVE-STATED REASONS, REIS'S MOTION TO DISMISS SHOULD BE GRANTED, TOGETHER WITH SUCH OTHER AND FURTHER RELIEF AS THIS COURT DEEMS JUST AND NECESSARY</u>

Dated:    October 3, 2014

Respectfully submitted,

BACHNER & ASSOCIATES, P.C.

BY:    */ s /  Scott J. Splittgerber*
          Scott J. Splittgerber (SS 8759)

39 Broadway, Suite 1610
New York, New York  10006
Tel:    (212) 344-7778
Fax:    (212) 344-7774
Email:  ss@bhlawfirm.com
*Attorneys for Defendant Michael D. Reis*

---

[22] The *Parmalat* court applied the law of North Carolina.  We assume for purposes of this motion that New York law applies.  Should venue be transferred, any transferee court would have to undertake in its own choice of law analysis. *See Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 n.8 (2d Cir. 2011); *see also Parmalat Capital Fin. Ltd. v. Grant Thornton Int'l*, 756 F.3d 549 (7th Cir. 2014) (noting that Jude Kaplan's, pre-transfer *in pari delcito* determination as to auditor defendants likely would persuade the Illinois courts, but instructing remand to state court for determination under Illinois law).