UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x
THE SANDS HARBOR MARINA CORP.,
SANDS HARBOR MARINA LLC, THE SANDS
HARBOR MARINA OPERATING CORP.,
SANDS HARBOR MARINA OPERATING LLC, GREG W.
EAGLE, PINE CREEK RANCH, LLC, and
UNIVERSITY 1248, LLC,

               Plaintiffs,                          No. 09 CV 3855 (JS)(WDW)

        -against-

WELLS FARGO INSURANCE SERVICES
OF OREGON, INC., WELLS FARGO BANK, N.A.
EVMC REAL ESTATE CONSULTANTS, INC.,
LARRY ESACOVE, THE ESTATE OF AIDA ESACOVE,
DAVID P. GUILOT, ANTHONY B. CHOPRA, TISDALE
& NICHOLSON, LLP, JEFFREY A. TISDALE, GUY C.
NICHOLSON and MICHAEL D. REIS,

              Defendants.
_____x

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT REIS'S SECOND MOTION TO DISMISS

                                  Roy A. Klein
                                  Attorney for Plaintiffs
                                  532 Broad Hollow Road
                                  Suite 144
                                  Melville, NY 11747
                                  631-777-1313

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................... ii

Introduction ...................................................................................... 1

Summary of Facts ............................................................................. 2

Summary of Relevant Proceedings .................................................. 5

ARGUMENT ...................................................................................... 8

REIS'S MOTION TO DISMISS
SHOULD BE DENIED IN ITS ENTIRETY ........................................ 8

I.    This Court has personal jurisdiction over Reis with respect to
      plaintiffs' state-court claims .................................................. 8

      A.  Reis forfeited any jurisdictional defense he may have had
          with respect to plaintiffs' state-court claims ................... 8

      B.  The Court has personal jurisdiction over Reis pursuant
          to CPLR 302(a)(1) .......................................................... 9

      C.  Alternatively, this Court has personal jurisdiction over
          Reis pursuant to CPLR 302(a)(3)(ii) ............................. 13

II.   Venue is proper in the Eastern District of New York ............. 14

      A.  Reis forfeited any venue defense he may have had with
          respect to plaintiffs' state-court claims ........................ 14

      B.  The Court has venue because a substantial part of the
          events or omissions giving rise to the claim occurred
          in the Eastern District of New York .............................. 15

III.  The LLC plaintiffs have standing to assert their claims
      against Reis ........................................................................... 19

IV.   The doctrine of *in pari delicto* does not bar Greg Eagle
      from asserting his claims against Reis .................................. 20

Conclusion ......................................................................................... 22

# TABLE OF AUTHORITIES

## *Cases*

*Astor Holdings, Inc., v. Roski,*
2002 WL 72936 (S.D.N.Y. Jan. 17, 2002)                                       17

*Blauschild v. Tudor,*
2014 WL 3566517 (E.D.N.Y. July 21, 2014)                                     17

*Bondi v. Citigroup, Inc.,*
32 A.3d 1158 (N.J. App. Div. 2011, *lv. denied,* 45 A.3d 983 (N.J. 2012)     21

*Branthover v. Goldenson*,
2011 6179552 (S.D.N.Y. Dec. 12. 2011)                                        17

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462, 472 n.14 (1985)                                                8,9

*Cartier v. Micha, Inc.,*
No. 06-CV-4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007)              15-16

*City of N.Y. v. Mickalis Pawn Shop, LLC,*                                   8
645 F.3d 114, 133 (2d Cir. 2011)

*Cold Spring Harbor Lab. v. Ropes & Gray LLP,*
762 F. Supp. 2d 543, 553 (E.D.N.Y. 2011)                                     15

*Concrete Pipe & Products Corp. v. Modern Building Materials, Inc.,*
213 A.D.2d, 624 N.Y.S.2d 496 (4th Dep't 1995)                    12

*Cygnet Homes, Inc., v. Kaleny Ltd. Of Fla.,*
681 So.2d 826 (Fla.Dist.Ct.App. 1996)                                        19

*Daniel v. Am. Bd. of Emergency Med.*,
428 F.3d 408, 432 (2d Cir. 2005)                                             15

*Fidele v. Harris,__*F. Supp.2d __ ,
2014 WL 1870840 (E.D.N.Y. May 9, 2014)                                       17

*Frato v. Swing Staging, Inc.,*
2011 WL 3625064 (D.N.J. Aug. 17, 2011)                                       17

*Grand River Enters. Six Nations, Ltd. v. Pryor,*
425 F.3d 158, 165 (2d Cir. 2005)                                             10

*Gulf Ins. Co. v. Glasbrenner*,
417 F.3d 353, 357 (2d Cir. 2005)                                    15-16

*Hamilton v. Atlas Turner, Inc.*,
197 F.3d 58, 61 (2d Cir. 1999), *cert. denied*, 530 U.S. 1244 (2000)    8

*Henrich v. Field*,
2006 WL 26200043 (W.D.N.Y. Sept. 13, 2006)                          17

*Hoffman v. Blaski*,
363 U.S. 335, 343 (1960)                                             8

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
2013 WL 6838899, at *6-7 (S.D.N.Y. Dec. 27, 2013)                   21

*In re Parmalat*,
383 F.Supp. 2d 587 (S.D.N.Y. 2005)                                  21

*Ingraham v. Carroll*,
90 N.Y.2d 592, 598 (1997)                                           14

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)                                                  8

*Kerik v. Tacopina*,
2014 WL 1340038 (D.N.J., Apr. 3, 2014)                              17

*Knox v. Countrywide Bank*, __ F.Supp. 2d __,
2014 WL 946635, at *7 (E.D.N.Y. Mar. 12, 2014)                      21

*LaMarca v. Pak-Mor Mfg. Co.*,
95 N.Y.2d 210, 713 N.Y.S.2d 304 (2000)                              13

*Mattel, Inc. v. Barbie-Club.com*,
310 F.3d 293, 307 (2d Cir. 2002)                                    8,9

*MB Financial Bank, N.A. v. Walker*,
741 F.Supp.2d 912 (N.D. Ill. Sept. 23, 2010)                      17-18

*N.Y. Mercantile Exch. v. Cent. Tours Int'l, Inc.*,
No. 96-CV-8988, 1997 WL 370600, at *4 (S.D.N.Y. July 1, 1997)       16

*Opticare Acquisition Corp. v. Castillo*,
25 A.D.3d 238, 806 N.Y.S.2d 84, 90 (2d Dep't 2005)                 11

*Paradise Creations, Inc., v. UV Sales, Inc.*,
315 F.3d 1304, 1307-1308 (Fed. Cir. 2003)                        19,20

*Prof'l Personnel Mgm't Corp. v. Southwest Medical Assocs., Inc.,*
216 A.D.2d 958, 628 N.Y.S.2d 919 (4th Dep't, 1995)                    12-13

*United Computer Capital Corp. v. Daidone*,
No. 02-CV-1431, 2005 WL 579565, at *4 (N.D.N.Y. Mar. 7, 2005)       16-17

*Villanova v. Harbilas*,
2010 WL 1640187 (S.D.N.Y. April 13, 2010)                              17

### **Statutes and Rules**

28 U.S.C. § 1391(b)(2)                                                  15

28 U.S.C. §1391(c)                                                     19

28 U.S.C.§ 1404                                                        17

E.D.N.Y Local Civ. R. 6.3                                              9

Fla. Stat. § 607.1405                                                  19

Fla. Stat. § 607.1421(3)                                               19

N.Y. CPLR 302(a)(1)                                                    10,13

N.Y. CPLR 302(a)(3)(ii)                                                13,14

### **Other Authorities**

Siegel, *New York Civil Practice* (Fifth Ed.), §86                    10

Plaintiffs, The Sands Harbor Marina Corp., Sands Harbor Marina LLC, The Sands Harbor Marina Operating Corp. and Sands Harbor Marina Operating LLC. (collectively "Sands Harbor"), and Greg W. Eagle, Pine Creek Ranch, LLC and University 1248, LLC (collectively, "Eagle"), submit this memorandum of law in opposition to the motion by defendant Michael D. Reis ("Reis") to dismiss plaintiffs' third amended complaint (the "TAC"[1]). This memorandum is in response to Reis's memorandum in support of his motion, dated October 3, 2014 [Docket No. 159] (the "Reis Br.").

## <u>Introduction</u>

Reis – who has been a defendant in this case since plaintiffs served him with their SAC over three years ago [Docket No. 71] – makes his second pre-answer motion to dismiss more than 19 months after the Court's February 19, 2013, ruling on his first such motion [Docket No. 108]. During the intervening time, he did not participate in the parties' various motions seeking reconsideration of the Court's February 2013 ruling. Nor did he participate in the motions following the Court's September 18, 2013, ruling [Docket No. 132].

It was not until the Court issued its August 29, 2014, order [Docket No. 149] adopting Magistrate Wall's Report and Recommendations [Docket No. 144] – which order finally cleared the way for the case to move ahead on its merits after three years of motion practice – that Reis suddenly re-appeared, moving to dismiss again on grounds that he could have asserted years earlier.

Reis's delay is itself sufficient to deny his motion in its entirety. As a result of his inaction, he has forfeited any jurisdictional and venue defenses he otherwise may have had (*see*

---

[1] Pursuant to the Court's August 7, 2014, Electronic Order, plaintiffs filed a Third Amended Complaint ("TAC") [Docket 147]. The paragraph numbers in the TAC coincide with those in the plaintiffs' Second Amended Complaint (SAC), except that the TAC provided greater detail regarding diversity-of-citizenship subject-matter jurisdiction.

I.A and II.A, *infra*). In addition, each of his four grounds for dismissal is without substantive legal merit (*see* I.B, II.B, III and IV, *infra*). Accordingly, Reis's motion to dismiss should be denied in its entirety.

After summarizing the facts and procedural history with respect to plaintiffs' claims against Reis, this memorandum will explain in greater detail why the Court should deny his motion.

## Summary of Facts

Reis played a central role in the elaborate and unlawful scheme that caused plaintiffs to suffer out-of-pocket losses of $44 million, as well as additional incidental damages and consequential damages for lost profits and loss of reputation (TAC, ¶1). The TAC alleges in evidentiary detail that Reis lied to the plaintiffs repeatedly and over an extended period of time in exchange for a share of the money he helped steal from the plaintiffs. He conspired with the other defendants to unlawfully enrich himself, Wells Fargo and their co-defendants by fraudulently convincing the plaintiffs that a sham financial entity was a legitimate company backed by the reputation, faith and credit of financial giant Wells Fargo.

Reis was the main point man for defendants' fraudulent scheme. Acting in his capacity as an officer of defendant Wells Fargo (which gave the scheme an imprimatur of supreme legitimacy), while also claiming to be a "member" and/or officer of the fraudulent enterprise EVMC (TAC, ¶¶38-39 and Exhibit C thereto), Reis used mail (sending some 17 letters on Wells Fargo letterhead) and wires (*e.g.,* telephones and email) at least forty separate times over a two-year period to fraudulently induce plaintiffs (and other victims) to pay nearly $12 million to defendant EVMC. These included many communications made to representatives of Sands

Harbor in Long Island[2].

     Based on Reis's repeated misrepresentations (including his knowing use of forged documents), the plaintiffs reasonably believed their payments to be fees and expenses that EVMC was incurring to obtain financing for plaintiffs' respective real estate development projects (TAC, ¶¶2, 29-49).

     The following is a small sample of the written representations Reis made to plaintiffs throughout the fraud scheme – all in his capacity as a Wells Fargo officer and all with the sole intent to defraud plaintiffs(SAC, ¶32):

     (a)    October 13, 2006: "we have submitted your project package to our London insurance partners on behalf of our client EVMC."

     (b)    October 17, 2006: "this letter is to inform you that we have submitted your project package to our London insurance partners on behalf of our client EVMC…the underwriting is complete and your project can be insured."

     (c)    October 20, 2006: "we are processing your package with our London based insurance company."

     (d)    October 25, 2006: "we have confirmed that the Sand *[sic]* Harbor project will be insured through our London insurer."

     (e)    December 19, 2006: "this letter is to confirm that we are finalizing the residual value insurance coverage on behalf of EVMC for the project named University 1248 LLC/Pine Creek LLC. The binder will be available for the anticipated closing date of 1/31/07."

     (f)    December 20, 2006: "We will not jeopardize our credibility with our London-based partners by changing the deal on them once again. This is a very complex structure that cannot be played with on a daily basis. I have informed our client EVMC that we WILL NOT work on the 'Eagle' file any further until we have been assured in writing that Mr. Eagle has fulfilled any and all terms of their agreement [meaning depositing "commitment fees" to Tisdale and Nicholson for the revised project amount]."

     (g)    December 20, 2006: "Our position is clear and we cannot deviate for one

---

[2]The TAC focused on Reis's written misrepresentations, but Reis also made many phone calls to representatives of Sands Harbor in Long Island, at times communicating with Michael Haley on a daily basis. Reis also communicated with Sands representatives in writing in "real time" through AOL Instant Messaging.  Should the Court decide to hold an evidentiary hearing with respect to Reis's jurisdictional defenses, Michael Haley of Sands Harbor would testify to such conversations.

client to put all others in jeopardy re the overall insurance structure."

       (h)    March 29, 2007: "We can now complete and finalize our underwriting for the insurance on your project which as you know is the final step in getting this piece of the transaction completed."

       (i)    On April 25, 2007: "I have been on this AM with our London insurance partners who are very happy with the additional project information I have been feeding them from [Sands Harbor] and Eagle over the last couple of weeks. However, they really require a proof of funds letter on bank letterhead to stay fully engaged."

       (j)    On May 17, 2007, Reis wrote a letter to Sands Harbor in Long Island on Wells Fargo letterhead representing that there were hundreds of millions of dollars in accounts blocked for the loan transaction. Reis also sent Sands a copy of a similar letter addressed to Eagle confirming the existence of blocked accounts for the Eagle financing (Ex. L to TAC). In fact, Reis frequently forwarded to Sands in Long Island copies of letters he sent to Eagle, to show Sands that the Eagle transaction was proceeding, thereby reassuring Sands that its transaction was legitimate. In this respect, misrepresentations that Reis made to Eagle in Florida also became misrepresentations that he made to Sands in Long Island.

       (k)    May 29, 2007: "As a result of these final critical steps being accomplished as Part of the closing process we have submitted all of the above to our insurer for final terms, conditions and commitments to prepare for policy issuance."

       (l)    November 9, 2007: "This is the 3rd time we have reopened this case and [Eagle is] still playing games. They are jeopardizing the London facility we have set up for the rest of the projects and EVMC."

       (m)    November 26, 2007: "We worked all weekend with the UK to re-underwrite [Eagle's] project as it pertains to EVMC's insurance program and we did not expect to continue these requests. We were told the Eagle Group was ready to commit and comply on Monday [by wiring the money to Tisdale and Nicholson] which is why we worked over the holiday weekend."

Although Reis repeatedly represented that defendants were performing significant work in connection with the sham loan transactions, he was simply lying; neither the other defendants nor he performed any such work (SAC, ¶¶33-34).

EVMC rewarded Reis handsomely for his role in the fraud scheme, paying him eight separate kickbacks and bribes totaling $600,000 of the monies he had succeeded in inducing plaintiffs to pay EVMC (5% of plaintiffs' total "fees" to EVMC), many of which payments

EVMC made to Reis within days of receiving monies from plaintiffs in response to Reis's fraudulent misrepresentations (*Id*.) [3].

Reis's second pre-answer motion to dismiss plaintiffs' action must be viewed against this factual background.

## Summary of Relevant Proceedings

Sands Harbor commenced this lawsuit in September 2009 [Docket No. 1], asserting common law claims against Wells Fargo based on diversity-of-citizenship jurisdiction. After discovery revealed a multi-party scheme to defraud, Sands Harbor filed an amended complaint in June 2011 [Docket No. 41], which: (1) added Greg Eagle and two LLCs as plaintiffs; (2) asserted common law claims against all the current defendants based on diversity jurisdiction; and (3) asserted RICO claims against all defendants. Two and one-half months later, the plaintiffs filed a second amended complaint (the "SAC") for the sole purpose of adding breach-of-contract claims against the EVMC Defendants.

Plaintiffs served their SAC on Reis on October 14, 2011 [Docket No. 71]. In January 2012, Reis filed a motion to dismiss on various grounds – including lack of personal jurisdiction and improper venue with respect to plaintiffs' state-court claims [Docket No. 80] – plaintiffs filed their opposition thereto [Docket No. 81], and Reis filed his reply [Docket No. 82].

By Memorandum and Order dated February 19, 2013 [Docket No. 108], the Court decided Reis's motion (as well as separate motions to dismiss that the other defendants had filed), by dismissing plaintiffs' RICO claims. In addition, the Court declined pendent jurisdiction over plaintiffs' state-law claims in Section VI of the decision.

---

[3] Reis then committed bankruptcy fraud by omitting this income from his bankruptcy petition (TAC, ¶44). And he committed tax fraud by failing to declare this income on his tax returns (TAC, ¶45).

5

Two weeks later, plaintiffs moved for reconsideration [Docket No. 117], arguing that the Court erred in declining pendent jurisdiction because, as pled in the SAC, the Court had subject matter jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1332 based on the parties' diversity of citizenship [Docket No. 118]. The T&N Defendants (Tisdale, Nicholson and their law firm) also moved for reconsideration [Docket No. 114], contending, *inter alia,* that the Court should have dismissed plaintiffs' state-law claims on their merits. And Wells Fargo filed papers in opposition to plaintiffs' motion [Docket No. 125].

But Reis neither moved for reconsideration of his motion to dismiss the state-law claims for lack of personal jurisdiction and improper venue nor filed any opposition to plaintiffs' motion for reconsideration.

By Memorandum and Order dated September 18, 2013 [Docket No. 132], the Court disposed of the motions for reconsideration by deferring decision in light of plaintiffs' then-pending (but stayed) motion before Magistrate Wall for a default judgment against the EVMC Defendants:

> Notably, however, while the parties have briefed the issue of whether the Court retains subject matter jurisdiction over the state law claims due to diversity jurisdiction, the retention of federal question jurisdiction due to the default of the EVMC Defendants has never been adequately addressed by the parties. At this stage, while the motion for default is still pending, the Court retains federal question jurisdiction. If Judge Wall ultimately finds that the EVMC Defendants are liable to Plaintiffs on Plaintiffs' RICO claims, the Court retains jurisdiction. If Judge Wall determines that the EVMC Defendants are not liable to Plaintiffs under RICO, it will be necessary to address whether Plaintiffs have adequately pled diversity jurisdiction, as the parties have briefed in their currently pending reconsideration motions.

The Court also vacated its prior order [Docket No. 98] referring plaintiffs' motion for default, and denied plaintiffs' motion for default, with leave to renew.

6

After plaintiffs renewed their motion for a default judgment [Docket Nos. 135-139], Magistrate Judge Wall issued his Report and Recommendations denying the motion [Docket No. 144]. Thereafter, in compliance with an electronic court order, plaintiffs filed a third amended complaint ("TAC") limited to expanding plaintiffs' allegations in support of diversity jurisdiction [Docket No. 147]. And both T&N [Docket Nos. 140 and 146] and plaintiffs [Docket No. 148] renewed their motions for reconsideration of the Court's February 19, 2013, Memorandum and Order [Docket No. 108]. But, again, Reis did nothing.

By order dated August 29, 2014 [Docket No. 149], the Court adopted Magistrate Judge Wall's Report and Recommendations in its entirety, but stated that plaintiffs were free to re-file a motion for default as to the state law claims against the EVMC Defendants, if appropriate. The order also granted plaintiffs' and the T&N Defendants' renewed motions for reconsideration.

On such reconsideration, the order denied T&N's motion to dismiss plaintiffs' unjust enrichment and negligent misrepresentation claims against them, as well as the fraud claims against Tisdale and T&N. However, the order dismissed plaintiffs' fraud claim against Nicholson with prejudice. The order also dismissed plaintiffs' negligence and breach of fiduciary duty claims against Reis with prejudice.

Reis's instant motion followed.

7

# ARGUMENT

## REIS'S MOTION TO DISMISS
## SHOULD BE DENIED IN ITS ENTIRETY

### I.    This Court has personal jurisdiction over Reis with respect to plaintiffs' state-court claims

#### A.  Reis forfeited any jurisdictional defense he may have had with respect to plaintiffs' state-court claims

"Personal jurisdiction, unlike subject-matter jurisdiction, can . . . be purposely waived *or inadvertently forfeited*." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (emphasis added); *accord Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."); *Hoffman v. Blaski,* 363 U.S. 335, 343 (1960). Though the two terms are often used interchangeably, "[t]he term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right," but "[w]here a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate." *Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58, 61 (2d Cir. 1999), *cert. denied*, 530 U.S. 1244 (2000).

In determining whether a defendant has forfeited any personal-jurisdiction objection, a court must "consider all of the relevant circumstances."  *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002) (internal quotation marks omitted).  "[A] variety of legal arrangements" (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985), quoting *Ins. Corp. of Ir.,* 456 U.S. at 703*)* "may . . . estop [a defendant] from raising the issue" (*Ins. Corp. of Ir.,* 456 U.S. at 704), as where "the actions of the defendant during the litigation amount to a legal submission to the jurisdiction of the court, *whether voluntary or not*." *Id.* (emphasis added).

8

Applying these standards to the instant case, Reis's actions (and lack thereof) since the Court issued its February 19, 2013, Memorandum and Order [Docket No. 108] estop him from pursuing any personal-jurisdiction defense with respect to plaintiffs' state-court claims against him and constitute a forfeiture of his right to assert such defense.

Specifically, although Reis's January 2012 motion to dismiss included the defenses of lack of personal jurisdiction and improper venue with respect to plaintiffs' state-court claims [Docket No. 80], the Court's February 2013 Memorandum and Order did not address those defenses. To preserve the jurisdictional defense, Reis should have moved for reconsideration, just as the T&N defendants did[4]. At the very least, Reis should have opposed plaintiffs' motion for reconsideration – which sought denial of defendants' motions to dismiss the state-law claims – just as Wells Fargo did.

But Reis did neither. In fact, he seemed to disappear from the case entirely, failing to participate at all in any of the multiple motions litigated during the 1 and ½ years following the Court's issuance of its February 2013 Memorandum and Order.

Based on "all of the relevant circumstances" (*Mattel, Inc., supra*) – as summarized above – Reis's inaction in the face of the Court's February 2013 decision in response to his motion to dismiss for lack of jurisdiction "amount[ed] to a legal submission to the jurisdiction of the Court" (*see Burger King, supra),* and thereby forfeited his right to assert a jurisdictional defense.

### B.  The Court has personal jurisdiction over Reis pursuant to CPLR 302(a)(1)

Even assuming *arguendo* that Reis has not forfeited his jurisdictional defense, the Court nevertheless should deny his motion seeking dismissal for lack of personal jurisdiction. Where – as in the instant case – the Court is exercising diversity-of-citizenship jurisdiction over state-law

---

[4]Pursuant to Local Civ. R. 6.3, a party wishing to file a motion for reconsideration must do so within fourteen days "after the entry of the Court's determination of the original motion."

claims, plaintiffs can assert personal jurisdiction under the laws of the forum state. *See Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 165 (2d Cir. 2005).

New York law provides a basis for asserting long-arm jurisdiction over Reis.

Specifically, CPLR 302(a)(1) provides in part that, "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: … transacts any business within the state." Long-arm investigations under this section can be tedious; the cases applying the statute are plentiful, with extensive factual variations. Siegel, *New York Civil Practice* (Fifth Ed.), §86.  Ultimately, determining whether a particular defendant's conduct in New York constitutes the requisite transaction of business for purposes of the provision requires the Court to make a *sui generis* inquiry. *Id.*

Here, plaintiffs' TAC alleges that Reis perpetrated his fraud through an ongoing pattern of written misrepresentations, many of which were communicated via mail and/or email to Sands Harbor personnel in Long Island.  *See, e.g.,* TAC ¶32(a)(c)(d)(j) and (k), together with the letters referenced therein (including, significantly Exhibit L). Reis's transmittal of such communications is sufficient to constitute his transaction of business in New York for purposes of CPLR 302(a)(1)[5].  Sands Harbor relied in New York upon the representations set forth in Reis's communications to Sands Harbor's detriment, among other ways, by forwarding millions of dollars to EVMC and making significant business decisions based on Sands' reasonable expectations that the financing transaction was legitimate and would close.

---

[5] As set forth at fn. 2, *supra,* over at least a 16-month period, Reis also made many phone calls to and engaged in regular instant-message communications with representatives of Sands Harbor whom Reis knew were in Long Island.  Should the Court decide to hold an evidentiary hearing with respect to Reis's jurisdictional defenses, Michael Haley of Sands Harbor would testify to such communications.

Although the case arose in a different factual context, the court's reasoning in *Opticare Acquisition Corp. v. Castillo,* 25 A.D.3d 238, 806 N.Y.S.2d 84, 90 (2d Dep't 2005), is instructive. The plaintiff there was a New York company that sued non-resident former employees for breach of their confidentiality agreements. Each of the defendants had been a branch manager for plaintiff outside of New York. None sold products in New York. None ever even stepped foot in the state. They were simply in contact with plaintiff in New York regarding various business matters. But the Court nevertheless affirmed Westchester County Supreme Court's finding of long-arm jurisdiction under the transacting business test.

The court held that:

> Even assuming none of the appellants ever entered New York to conduct business on Wise's [plaintiff's] behalf, it defies logic and common sense to conclude that they did not transact business here, especially when the 21st century technology undoubtedly available to go about their work, such as access via computer to data Wise maintained in New York, conferred upon them the benefit of employment with a New York company, while allowing them the option of living and physically working elsewhere.

Similarly, 21st-century technology such as email and text messaging enabled Reis to work with Sands Harbor in Long Island while physically remaining in Oregon or elsewhere.

The *Opticare* court also reasoned that defendants' conduct of business

> affected local commerce here [in New York]. Among other things, they changed Wise's economic position, bringing the company into contractual relations with customers, obligating it to ship products from New York, and creating accounts payable and receivable

(*Id.*). Similarly, Reis's conduct affected Sands Harbor's business in New York by inducing Sands Harbor to enter into and maintain a contractual relationship with EVMC and to send payments from Sands Harbor's New York bank account to T&N, which acted as EVMC's escrow agent.

Moreover, it is not just the volume of communications that Reis made into New York that satisfies the transaction-of-business test. The nature and quality of those communications are significant as well: They include the key misrepresentations on which the fraud was based. For example, Reis's May 17 letter, 2007, letter to Sands Harbor in Long Island on Wells Fargo letterhead (and the accompanying copy of his letter of the same date to Eagle) (TAC, Ex. L) falsely represented that there were hundreds of millions of dollars in accounts blocked for the loan transactions. These letters, standing alone, would be sufficient to support personal jurisdiction against Reis. The fact that they were part of ongoing verbal and written misrepresentations that Reis made to New York over a period of many months makes the case for long-arm jurisdiction overwhelming.

The two cases on which Reis relies to support his contention that he did not transact business in New York (Reis Br., at I) are distinguishable on their facts from the instant case because neither involved the kind of purposeful, ongoing communications in which Reis engaged here. In *Concrete Pipe & Products Corp. v. Modern Building Materials, Inc.,* 213 A.D.2d, 624 N.Y.S.2d 496 (4th Dep't 1995), the defendant Wisconsin company had merely leased equipment from the New York plaintiff. The Court dismissed the breach-of-contract case for lack of personal jurisdiction based on a long line of cases holding that an out-of-state defendant's purchase of goods from New York via mail or telephone did not constitute the transaction of business here. In contrast, Sands Harbor's claims against Reis are in no way predicated on Reis's purported single purchase of goods in New York.

In *Prof'l Personnel Mgm't Corp. v. Southwest Medical Assocs., Inc.,* 216 A.D.2d 958, 628 N.Y.S.2d 919 (4th Dep't, 1995), the Court held that defendant's "minimal contacts" with New York – consisting of interstate negotiations by telephone, facsimile or mail – were

insufficient to impose personal jurisdiction upon the non-resident defendant in plaintiff's breach-of-contract case.  Again, however, Sands Harbor is not alleging that Reis breached a contract that he had negotiated with Sands remotely; rather, Sands Harbor's claims are based on Sands' reliance in New York on multiple fraudulent misrepresentations that Reis sent to Sands' representatives in New York.

Since Reis transacted business in New York by his purposeful conduct here over a period of many months, this Court has personal jurisdiction over him, pursuant to CPLR 302(a)(1).

### C. Alternatively, this Court has personal jurisdiction over Reis pursuant to CPLR 302(a)(3)(ii)

CPLR 302(a)(3)(ii) provides that New York courts have long-arm jurisdiction over a non-domiciliary who commits tortious acts out of state that cause injury within the state if the non-domiciliary:

> Expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

In *LaMarca v. Pak-Mor Mfg. Co.,* 95 N.Y.2d 210, 713 N.Y.S.2d 304 (2000), the Court of Appeals set forth five requirements for exercising jurisdiction under CPLR 302(a)(3)(ii):

- Defendant committed a tortious act outside the state.

- The cause of action arises from that act.

- The act caused injury to person or property within the state.

- Defendant expected or should reasonably have expected the act to have consequences in the state.

- The defendant derived substantial revenue from interstate or international commerce.

Plaintiffs' complaint satisfies each of these requirements with respect to Reis.

Specifically, the TAC alleges that: (1) Reis made fraudulent (*i.e.,* tortious) misrepresentations from Oregon; (2) plaintiffs' claims against Reis arose from such

13

misrepresentations; and (3) Reis's conduct injured the Sands Harbor plaintiffs, which include some 40 LLC members who are New York domiciliaries (TAC ¶4).

Moreover, since it was Reis's intent to induce Sands Harbor – including its New York-based LLC members – to pay millions of dollars in "fees" for what Reis knew was a sham transaction, he knew or should have known that his wrongdoing would have consequences in the state. *See, e.g., Ingraham v. Carroll*, 90 N.Y.2d 592, 598 (1997), which observed that this "reasonable expectation" requirement is merely intended to ensure some link between the defendant and New York to make it reasonable to compel the defendant to come to New York to answer for tortious conduct committed elsewhere (in *Ingraham,* a Vermont doctor who neither practiced medicine in New York nor treated the decedent there nevertheless was held to have satisfied this requirement because he knew that the decedent was getting medical treatment in New York, based, in part, on the doctor's recommendation).

Finally, there is no question that Reis's employer, Wells Fargo, had customers in places throughout the United States, and that Reis presumably earned commissions from insurance products he sold to customers in states other than Oregon. At the very least, there is an issue of fact as to whether Reis's revenue from interstate commerce was "substantial" within the meaning of CPLR 302(a)(3)(ii), requiring discovery and, possibly, an evidentiary hearing before the Court could grant Reis's motion.

Since plaintiffs satisfy the requirements of CPLR 302(a)(3)(ii), this Court has personal jurisdiction over him.

## II.    Venue is proper in the Eastern District of New York

### A.    Reis forfeited any venue defense he may have had with respect to plaintiffs' state-court claims

Just as Reis's conduct constituted a forfeiture of any right he otherwise may have had to

14

assert a personal-jurisdiction defense, his actions also forfeited any right he otherwise may have had to challenge venue in the Eastern District (*see* I.A, *supra*). For this reason alone, the Court should deny his motion to dismiss for improper venue. But even assuming *arguendo* that the Court rules that Reis did not forfeit his venue defense, the Court nevertheless should deny his motion to dismiss for improper venue for the reasons set forth in the following section of this memorandum.

### B.  The Court has venue because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of New York

To determine whether venue is proper under 28 U.S.C. § 1391(b)(2), the Court must conduct a two-part analysis. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005); *Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 553 (E.D.N.Y. 2011). *First*, the Court must "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." *Daniel*, 428 F.3d at 432 (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). *Second*, the Court must "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether significant events or omissions material to [those] claim[s] . . . have occurred in the district in question." *Id*.

'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Cold Spring Harbor Lab.*, 762 F.Supp.2d at 553 (quoting *Daniel*, 428 F.3d at 432–33).

Finally, in conducting its two-part analysis, the Court must accept as true the facts alleged in the plaintiffs' complaint and draw all reasonable inferences therefrom in plaintiffs' favor. *Cartier v. Micha, Inc.,* No. 06-CV-4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007).

And, "[a]bsent a formal hearing on the motion, a plaintiff need only make a *prima facie* showing of venue to defeat the motion." *Id.* (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)).

Applying this analysis (as well as plaintiffs' relatively minimal burden) to the instant case, the facts alleged in plaintiffs' SAC are sufficient to defeat Reis's venue motion.

Specifically, and as the Court already has noted in its August 29, 2014, Memorandum and Order [Docket No. 144], plaintiffs' TAC alleges claims for fraud, negligent misrepresentation, negligence, breach of fiduciary duty and unjust enrichment against Reis, which focus primarily on Reis's alleged affirmative misrepresentations to (and material omissions from) plaintiffs. As summarized at I.B, *supra,* a large number of those misrepresentations were directed towards Sands Harbor representatives on Long Island (TAC ¶ 4), where Sands' relied on them to its detriment. Reis's communications into New York include the key misrepresentations on which the fraud was based. *See, e.g.,* Reis's May 17 letter, 2007, letter to Sands Harbor in Long Island on Wells Fargo letterhead (and the accompanying copy of his letter of the same date to Eagle) (TAC, Ex. L), which falsely represented that there were hundreds of millions of dollars in accounts blocked for the loan transactions.

Such communications toward persons in the Eastern District are sufficient for venue purposes. *See United Computer Capital Corp. v. Daidone*, No. 02-CV-1431, 2005 WL 579565, at *4 (N.D.N.Y. Mar. 7, 2005) ("[V]irtually all of the events or omissions alleged ***have a connection with UCCC [plaintiffs] in this district***. Plaintiffs have met their burden of demonstrating that a substantial part of the events or omissions giving rise to the claim occurred in this district . . . .") (emphasis added); *N.Y. Mercantile Exch. v. Cent. Tours Int'l, Inc.*, No. 96-CV-8988, 1997 WL 370600, at *4 (S.D.N.Y. July 1, 1997) (finding that venue was proper

16

because "many of the fraudulent acts alleged either occurred in *or have a substantial relationship to this venue*") (emphasis added).

The cases on which Reis relies to support his contention that venue in the Eastern District is improper (Reis Br., pp. 11-13) do not compel dismissal.  To the contrary, Reis's case law is inapplicable.

Neither *Branthover v. Goldenson*, 2011 6179552 (S.D.N.Y. Dec. 12. 2011), nor *Frato v. Swing Staging, Inc.*, 2011 WL 3625064 (D.N.J. Aug. 17, 2011), involved a motion to dismiss for improper venue.  Rather, they both addressed motions to transfer venue where venue in the transferor court was concededly proper.  The issue in both cases was simply which of the two proper venues better served the interests of justice under the multi-pronged test set forth in 28 U.S.C.§ 1404.  The decisions therefore have no relevance to the instant case.

Each of Reis's other cases is distinguishable on its facts.  *In Villanova v. Harbilas*, 2010 WL 1640187 (S.D.N.Y. April 13, 2010), plaintiff did not contend that any event took place in the Southern District.  In *Kerik v. Tacopina*, 2014 WL 1340038 (D.N.J., Apr. 3, 2014), the few contacts with the forum state had only a "tangential connection" to the parties' dispute (*see also Henrich v. Field,* 2006 WL 26200043 (W.D.N.Y. Sept. 13, 2006)).  In *Blauschild v. Tudor,* 2014 WL 3566517 (E.D.N.Y. July 21, 2014), plaintiff's residency was the case's only connection with the Eastern District.  And in *Astor Holdings, Inc., v. Roski,* 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002), the situs of the harm was the only alleged connection with the forum state (*see also Fidele v. Harris,*__F. Supp.2d __ , 2014 WL 1870840 (E.D.N.Y. May 9, 2014), which nevertheless acknowledged that location of the injury was one factor that the Court could consider in determining whether a substantial part of the events occurred in the forum; *MB Financial Bank,*

17

*N.A. v. Walker,* 741 F.Supp.2d 912 (N.D. Ill. Sept. 23, 2010), merely holding that location of the injury was not dispositive of venue in the absence of other relevant connections).

As Reis's cases demonstrate, venue – like long-arm jurisdiction – is a fact-intensive issue that requires courts to make decisions on a case-by-case basis.  And Reis's cases are inapposite from the instant case, where venue us based on the many critical written and verbal misrepresentations that Reis made to Sands in the Eastern District, on which Sands relied in the Eastern District to its detriment by making business decisions in the Eastern District that caused it to suffer damages here, including making payments from the Eastern District to EVMC.

In addition, a decision in Reis's favor could cause further delay and violate the time-honored policy of judicial economy. Reis contends that venue for the claims against him lies only in the District of Oregon (Reis Br., p. 9), and that venue may be proper in the Central District of California "for most or all of the other defendants" (Reis Br., fn. 9). In Reis's view, this lawsuit arising from defendants' coordinated fraud scheme could wind up being litigated piecemeal, with separate actions brought against Wells Fargo here, against T&N in California and against Reis in Oregon. In addition to the time and expense of proceeding in such a fractured manner, separate actions could lead to inconsistent results, causing confusion and even more delay.

It bears emphasis in this connection that Wells Fargo has asserted crossclaims against Reis in its answer to plaintiffs' TAC [Docket 172], which Reis has moved to dismiss [Docket 177-178], thereby providing further possible delay of the ultimate resolution of the dispute should the Court dismiss Reis on venue grounds.

To avoid such consequences, the Court should hold that – given the nature, length and extent of Reis's communications and interactions with Sands Harbor on Long Island – a

substantial part of Reis's acts and omissions occurred in the Eastern District, such that the District constitutes a proper venue for the lawsuit against all defendants.

Finally, if – as Reis contends – venue over him is proper only in Oregon while venue over T&N may be proper only in California, there would be no district in which the action could be brought against all defendants. In such circumstances, the Eastern District would have venue over the action pursuant to 28 U.S.C. §1391(c) because "any defendant [Wells Fargo]" was subject to personal jurisdiction in the Eastern District of New York when the action commenced and "there is no district in which the action otherwise may brought."

### III.  The LLC plaintiffs have standing to assert their claims against Reis

Contrary to Reis's argument, the fact that the LLC plaintiffs may have been administratively dissolved in Florida before they commenced the instant case does not divest the LLCs of standing to pursue this action.

Under Florida law, "[a] corporation administratively dissolved continues its corporate existence but may not carry on any business ***except that necessary to wind up and liquidate its business and affairs under s. 607.1405*** and notify claimants under s. 607.1406." Fla. Stat. § 607.1421(3) (emphasis added); *Paradise Creations, Inc. v. UV Sales, Inc.,* 315 F.3d 1304, 1307–1308 (Fed.Cir.2003) (noting that a dissolved corporation's capacity to sue is limited to matters "necessary to wind up and liquidate its business and affairs.") (citing *Cygnet Homes, Inc. v. Kaleny Ltd. of Fla.,* 681 So.2d 826 (Fla.Dist.Ct.App.1996)). Liquidation and winding up corporate affairs consist of: (a) ***collecting the corporation's assets***; (b) disposing of properties that were not otherwise distributed to shareholders; (c) discharging liabilities; (d) distributing remaining property among shareholders according to their interests; ***and (e) other acts necessary to wind up and liquidate its business and affairs***.  *See* Fla. Stat. § 607.1405.

19

Here, the administratively-dissolved LLC plaintiffs have standing because the instant lawsuit constitutes business necessary to collect LLC assets and wind up the LLCs' affairs.

Specifically, the TAC alleges that plaintiffs made payments and incurred costs and expenses in reliance on Reis's fraudulent misrepresentations. In suing to recover such payments, costs and expenses, the LLCs are seeking to collect their assets, among other reasons, so they can repay their 50 separate members, who are listed at ¶4 of the SAC. Thus, it is entirely appropriate under the applicable Florida statute and case law for the LLC plaintiffs to pursue this lawsuit, even though they have been administratively dissolved. *Cf. Paradise Creations, Inc. v. UV Sales, Inc., supra,* where the Court dismissed plaintiff's patent infringement action on standing grounds because the plaintiff did not enter into the contract under which plaintiff claimed patent rights until *after* plaintiff had been administratively dissolved. In contrast, the LLC plaintiffs in the instant case were still active entities when they lost the assets they are seeking to recover in this lawsuit.

Since the LLCs brought this case to recover assets they lost as a result of defendants' fraudulent scheme, the suit constitutes business necessary for the LLCs to wind up their affairs in compliance with the applicable Florida statute, such that the LLCs have standing to sue, notwithstanding their status as administratively dissolved entities[6].

### IV.    The doctrine of *in pari delicto* does not bar Greg Eagle from asserting his claims against Reis

Reis's *in pari delicto* argument is unavailing because his argument misconstrues the doctrine. The very cases on which Reis relies (Reis Br. At IV) demonstrate why *in pari delecto* does not apply here.

Specifically, the doctrine will bar a civil plaintiff's claims when the plaintiff is as or more

---

[6] It also bears emphasis that the  LLC plaintiffs are related to other corporate and individual plaintiffs who remain active.

culpable than the defendant *in the conduct that forms the basis of plaintiff's complaint. Knox v. Countrywide Bank*, __ F.Supp. 2d __, 2014 WL 946635, at *7 (E.D.N.Y. Mar. 12, 2014) (*in pari delecto* barred plaintiff who engaged in wrongdoing by admittedly signing mortgage documents that he knew contained false information from pursuing fraud claims against the defendant who prepared and issued such mortgage documents). *See also In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,* 2013 WL 6838899, at *6-7 (S.D.N.Y. Dec. 27, 2013) (*in pari delecto* applies only where there is an "identity of issues" between the plaintiff's wrongdoing and the conduct of defendant that is the subject matter of the action).

Given this case law, the doctrine of *in pari delecto* does not apply here. Unlike the plaintiff in *Knox, supra,* Greg Eagle's admitted wrongdoing (essentially submitting false loan-application documents to banks in transactions having nothing to do with any EVMC financing) does not relate to the conduct forming the basis of plaintiffs' SAC (defendants' scheme to defraud plaintiffs in an entirely different transaction). Stated simply, there is no "identity of issues" – as *Adelphia, supra,* requires – between Greg Eagle's wrongdoing and the conduct of Reis and the other defendants in the instant case.

For this reason, Reis's reliance on *In re Parmalat,* 383 F.Supp. 2d 587 (S.D.N.Y. 2005), is misplaced. In *Parmalat*, the court ruled that *in pari delecto* barred plaintiff's claims because the complaint of plaintiff Bondi – who, as bankruptcy trustee, was standing in the shoes of Parmalat – alleged that Parmalat "engaged in a massive fraud and that BoA [defendant Bank of America] assisted in some respects." *Id.* at 596; *see also Bondi v. Citigroup, Inc.,* 32 A.3d 1158 (N.J. App. Div. 2011, *lv. denied,* 45 A.3d 983 (N.J. 2012)), which is to the same effect. In sharp contrast, Greg Eagle never alleged – either in the TAC or elsewhere – that defendants in any way assisted him in committing any wrongdoing. To the contrary, Eagle's wrongdoing was separate

21

from and unrelated to defendants' fraud scheme.

## CONCLUSION

For all the foregoing reasons, Reis's motion to dismiss plaintiffs' should be denied in its

entirety.

Dated:  Melville, New York
       November 12, 2014           Respectfully submitted,
                                *s/Roy A. Klein*
                                Roy A. Klein (RAK-9850)
                                Attorney for Plaintiffs
                                532 Broad Hollow Road #144
                                Melville, NY 11747
                                631-777-1313