UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THE SANDS HARBOR MARINA CORP.,
SANDS HARBOR MARINA LLC,
THE SANDS HARBOR MARINA
OPERATING CORP., SANDS MARINA
OPERATING LLC., GREG W. EAGLE,
PINE CREEK RANCH, LLC,
and UNIVERSITY 1248, LLC,

                   Plaintiffs,

-against-

WELLS FARGO INSURANCE SERVICES OF
OREGON, INC., WELLS FARGO BANK, N.A.,
EVMC REAL ESTATE CONSULTANTS, INC.,
LARRY ESACOVE, THE ESTATE OF
AIDA ESACOVE, DAVID P. GUILOT,
ANTHONY B. CHOPRA,
TISDALE & NICHOLSON, LLP,
JEFFERY A. TISDALE, GUY C. NICHOLSON
and MICHAEL D. REIS,

                   Defendants.

Civil Action No.:
CV-2:09-cv-03855 (JS) (SIL)

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT WELLS FARGO INSURANCE SERVICES OF OREGON, INC.'S
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

 

GOLDBERG SEGALLA, LLP
Peter J. Biging
Jennifer H. Feldscher
*Attorneys for Defendant*
*Wells Fargo Insurance Services of Oregon, Inc.*
600 Lexington Avenue
Suite 900
New York, NY 10022-6000
Tel. (646) 292-8700

3407935

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................................. 1

Statement of Plaintiffs' Allegations ............................................................................................. 1

Argument ..................................................................................................................................... 3

POINT I – THE THIRD AMENDED COMPLAINT FAILS TO
STATE A CLAIM FOR NEGLIGENCE AS AGAINST WFIS ................................................. 3

A. The Negligence Claim as against WFIS must be Dismissed
   Based Upon Law of the Case .............................................................................................. 3

B. Even if not Dismissed based upon the Law of the Case,
   Plaintiffs Fail to State a Negligence Claim as Against WFIS ............................................ 5

POINT II – THE LLC PLAINTIFFS LACK THE CAPACITY
TO SUE IN NEW YORK ............................................................................................................ 6

POINT III – SOME OF ALL OF THE PLAINTIFFS LACK
STANDING AND/OR ARE NOT THE REAL PARTY(IES) IN
INTEREST ................................................................................................................................... 8

POINT IV – EAGLE'S CLAIMS MUST BE DISMISSED
PURSUANT TO THE DOCTRINE OF *IN PARI DELICTO* ................................................. 11

POINT V – WITH REGARD TO PLAINTIFFS' FRAUD AND
NEGLIGENT MISREPRESENTATION CLAIMS AS AGAINST
WFIS, PLAINTIFFS' CLAIM FOR DAMAGES BASED UPON
LOST PROFITS MUST BE DISMISSED ................................................................................ 12

CONCLUSION .......................................................................................................................... 14

## PRELIMINARY STATEMENT

This memorandum of law, together with the accompanying Declaration of Peter J. Biging, dated January 16, 2015 (the "Biging Dec."), and the exhibits attached thereto, is submitted in support of Defendant Wells Fargo Insurance Services of Oregon, Inc.'s (hereinafter "Defendant" or "WFIS") motion pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings based upon Plaintiffs' failure to state a claim for negligence, Plaintiffs' lack of capacity to sue, Plaintiffs' lack of standing, and the doctrine of *in pari delicto*. In the alternative, Plaintiffs' claim for damages for lost profits must be dismissed.

## STATEMENT OF PLAINTIFFS' ALLEGATIONS[1]

Plaintiffs, The Sands Harbor Marina Corp., Sands Harbor Marina LLC, The Sands Harbor Marina Operating Corp., Sands Marina Operating LLC. (hereinafter, collectively the "Sands Harbor Plaintiffs"), and Greg W. Eagle, Pine Creek Ranch, LLC, and University 1248, LLC's (hereinafter, collectively the "Eagle Plaintiffs") are in the business of real estate acquisition and development. See Third Amended Complaint ("TAC"), ¶¶ 4–5. Defendant WFIS is an insurance company engaged in insurance brokerage and risk management services. See TAC, ¶ 6.

The Sands Harbor Plaintiffs and the Eagle Plaintiffs are two groups of parties that unsuccessfully sought to obtain loans to fund their speculative real estate ventures in Florida. They allege in the TAC that defendants Tisdale & Nicholson, LLP ("T&N"), Michael D. Reis ("Reis") and the other defendants engaged in a scheme "mastermind[ed]" by defendants Aida and Larry Esacove (via their "alter ego" EVMC) to fraudulently induce Plaintiffs to wire approximately $9 million dollars to defendant T&N on August 31, 2006 and November 27, 2007 (TAC, ¶¶ 1, 4-5, 13-14, 24, 40, 89, 103, 121, 141, 259). Plaintiffs allegedly engaged EVMC Real Estate Consulting Services, Inc. ("EVMC"),

---

[1] A copy of the Third Amended Complaint is attached to the Biging Dec, as Exhibit "A".

1

"the hub of the conspiracy" (TAC ¶ 15), to assist them with obtaining financing for proposed real estate developments, but EVMC did nothing to procure funding sources for Plaintiffs (TAC ¶ 15.). According to Plaintiffs, their failure to obtain loans—rather than being an extension of Eagle's ongoing fraud, or their own failure to discover that "[t]he Esacoves were prolific international and domestic con artists for over 20 years . . ." (TAC ¶ 25) or that "EVMC never closed a loan" (TAC ¶ 15), or simply their misfortune in having become financially over-extended during the "near collapse of the nation's . . . credit system" (TAC ¶ 29)—was because EVMC was a "sham" corporation (TAC ¶¶ 15, 18) that diverted the initial funds paid by Plaintiffs to EVMC "into defendants' own pockets." (TAC ¶¶ 1, 2, 24, 239).

Reis, who was employed by "Acordia of Oregon . . . a 'Wells Fargo Company'" (TAC ¶¶ 2, 13 n.17, 40),[2] allegedly played a critical role in the "conspiracy." See TAC, ¶¶ 29, 31, 35. Plaintiffs allege that Reis sold his access to WFIS letterhead to EVMC and the Esacoves in exchange for $600,000.00 in illicit "under-the-table" kickbacks and bribes. See TAC, ¶ 29. In addition, it is alleged that Reis received commissions on approximately $280,956.28 in premiums that EVMC paid to WFIS in connection with various Client Services (consulting) Agreements and insurance policies that Reis allegedly required *EVMC* to purchase from WFIS as a condition of his involvement. See TAC, ¶ 29.[3] WFIS's alleged participation in the fraudulent transactions is based solely upon Reis' alleged misrepresentations made to Plaintiffs regarding various financial or other information that was allegedly sent to Plaintiffs by Reis using WFIS letterhead and/or his WFIS email account. See TAC, ¶¶ 17, 29,

---

[2] Despite Plaintiffs' allegations that the Wells Fargo name was a critical component of EVMC's scheme, Acordia of Oregon did not actually became "Wells Fargo Insurance Services of Oregon, Inc." until in or about February of 2007.

[3] In other words, despite the approximately $9 million Plaintiffs allegedly paid to EVMC as a result of EVMC's fraudulent scheme, Plaintiffs do not allege that they paid *any* monies directly to WFIS. And the $280,956.28 *EVMC* paid to WFIS was made pursuant to a client services/consulting agreement and in connection with the purchase of insurance coverage for EVMC.

2

31, 43, 87–93, 98–100.

The Sands Harbor and Eagle Plaintiffs are seeking to recover in this action approximately $44 million in alleged out-of-pocket losses, as well as unspecified incidental damages, consequential damages for lost profits and loss of reputation, and punitive damages. See TAC, ¶ 1. In this regard, however, it is noted that Greg Eagle has pled guilty to obtaining monies apparently used to pursue the loan proceeds at issue herein via fraud – for which he has been sentenced to 6 years of prison. See Biging Dec., Exhibits F–I. In light of this, Defendant Reis has moved to dismiss the claims asserted against him by the Eagle Plaintiffs based upon the doctrine of *in pari delicto*. See Docket Nos. 158 and 159. This motion has been fully briefed (with Plaintiffs' Opposition filed at Docket No. 179, and Reis' Reply at Docket No. 185), and is presently before the Court.

## ARGUMENT

## POINT I

### THE THIRD AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENCE AS AGAINST WFIS

**A.    The Negligence Claim as against WFIS must be Dismissed Based Upon Law of the Case**

The negligence claim should be dismissed as against WFIS for the simple reason that this issue has already been litigated and decided in this case in the Court's August 29, 2014 Memorandum & Order. See Biging Dec., Exhibit "B".

Where issues in a case have previously been resolved, "[c]ourts apply the law of the case doctrine[, because] their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." Aramony v. United Way of Am., 254 F.3d 403, 410 (2d Cir. N.Y. 2001); Kingdom 5-KR-41, Ltd. v. Star Cruises PLC, 2005 U.S. Dist. LEXIS 15981 (S.D.N.Y. Aug. 8, 2005). The reason for this is that "where litigants have once battled for the court's decision,

3

they should neither be required, nor without good reason permitted, to battle for it again." In re Goldman Sachs Group, Inc. Sec. Litig., 2014 U.S. Dist. LEXIS 85683, at *12 (S.D.N.Y. June 23, 2014) (citing Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P., 322 F.3d 147, 167 (2d Cir. 2003)). "Accordingly, decisions should 'not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" Id.

In its August 29, 2014 Memorandum & Order, the Court made the following determination with respect to the common law negligence claim made against Reis:

> As to Plaintiffs' negligence claim against Reis, however, the Court finds that it is duplicative of their negligent misrepresentation claims against him. The same allegations form the basis of their negligence claim as their negligent misrepresentation claim. Accordingly, dismissal of this claim is appropriate and Plaintiffs' negligence claim against Reis is dismissed with prejudice . . . .

Biging Dec., Exhibit "B", p. 32–34. In reaching this determination, the Court correctly cited controlling New York case law standing for the proposition that a negligence claim based upon the same allegations and injuries as a negligent misrepresentation claim, alleging no negligence separate and beyond the alleged misrepresentations, must be dismissed as duplicative. See Biging Dec., Exhibit "B", p. 32–34 (citing Paladini v. Capossela, Cohen, LLC, 2012 U.S. Dist. LEXIS 116071, at *16–21 (S.D.N.Y. Aug. 15, 2012) (dismissing claims as duplicative where claims including negligence and negligent misrepresentation were based upon the same allegations and injuries), aff'd, 515 Fed. Appx. 63 (2d Cir. N.Y. 2013); Donald Dean & Sons, Inc., v. Xonitek Sys. Corp., 656 F. Supp. 2d 314, 323 n.12 (N.D.N.Y. 2009) ("Although the Second Cause of Action is captioned as a 'negligence and negligent misrepresentation' claim, there are no allegations of negligence beyond those asserting that [defendants] 'negligently misrepresented' certain facts . . . ."); King County v. IKB Deutsche Industriebank AG, 863 F. Supp. 2d 288, 301 (S.D.N.Y. 2012) (rejecting argument that negligence claim

4

and negligent misrepresentation claims were duplicative because they were based on different conduct)).

Given that the August 29, 2014 Memorandum & Order dismissed with prejudice the claim for negligence against Reis as a matter of law, the same should apply as to WFIS. The only involvement and connection WFIS has to this action is through its association with its former employee Reis. Moreover, the negligence claim against WFIS is identical in every particular to the negligence claim asserted against Reis, which as the Court noted in its prior Decision & Order, bases the alleged negligence claim entirely upon Reis' alleged negligent misrepresentations with regard to the financing that never ended up coming through. See TAC, ¶¶ 416–29, 452–65, 565–78, 601–14. Consequently, with the dismissal of the negligence claim as to Reis, the issue has now already been resolved, and the doctrine of the law of the case mandates the same dismissal as to WFIS.

### B. Even if not Dismissed based upon the Law of the Case, Plaintiffs Fail to State a Negligence Claim as Against WFIS

In any event, Plaintiffs' negligence claim should also be dismissed pursuant to the economic loss doctrine. While Plaintiffs purport to assert a negligence claim for the damages alleged, Plaintiffs do not contend that personal injury or property damage occurred as a result of WFIS' alleged negligence. Instead, Plaintiffs claim that they have lost money because they did not receive anticipated financing from EVMC. Thus, the injuries Plaintiffs claim are purely economic and pecuniary in nature. The claim is that they were damaged by EVMC's failure to perform as promised. That would be fatal to their negligence claim as against WFIS even if it were not duplicative of their negligent misrepresentation claim.

Quite simply, "New York law holds that a negligence action seeking recovery for economic loss will not lie." County of Suffolk v. Long Island Lighting Co., 728 F.2d 52, 62 (2d Cir. N.Y. 1984); see also Travelers Cas. & Sur. Co. v. Dormitory Auth., 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010) ("New

5

York's economic loss doctrine is a jurisprudential principle that a plaintiff cannot recover in tort for purely economic losses caused by the defendant's negligence."). The economic loss rule allows recovery in negligence for economic damage *only in personal injury or property damage cases*. 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc., 96 N.Y.2d 280, 291–92 (N.Y. 2001). The reason is that "New York courts have attempted to keep 'contract law from drown[ing] in a sea of tort' by erecting various 'dikes,' which serve to bar actions in tort when an action in contract is available. One such dike is the economic loss rule. Viewing the purpose of the law of contract to be 'the [facilitation] of voluntary economic exchange,' New York courts restrict plaintiffs who have 'suffered economic loss, but not personal or property injury, to an action for the benefits of their bargains.'" Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 220 (S.D.N.Y. 2007); accord King County v. IKB Deutsche Industriebank AG, 863 F. Supp. 2d 288 (S.D.N.Y. 2012).[4]

Accordingly, Plaintiffs' negligence claim against WFIS fails as barred by the economic loss rule, regardless of whether it is also dismissible as duplicative of Plaintiffs' negligent misrepresentation claim.

## POINT II

## THE LLC PLAINTIFFS LACK THE CAPACITY TO SUE IN NEW YORK

Plaintiffs' TAC is brought, in part, by four LLC Plaintiffs—Sands Harbor Marina LLC; Sands Harbor Marina Operating LLC; Pine Creek Ranch, LLC; and University 1248, LLC (the "LLC

---

[4] The fact that the plaintiff may not have the ability to sue the same defendant for breach of contract is immaterial. The rule applies even when the contract that gave rise to the plaintiff's expectation is with someone else other than the defendant sought to be held liable in tort. Travelers Cas. & Sur. Co., 734 F. Supp. 2d at 379 ("Where, as here, [plaintiff] is essentially bringing suit against [a non-contracting defendant] because [the contracts did not meet expectation], the economic loss doctrine requires that [plaintiff] seek its remedy through a breach of contract action against its counterparty [to the contract], not against parties with whom [plaintiff] did not contract"); see Cherry v. Emigrant Bank, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) (dismissing plaintiff's negligent misrepresentation claim as barred by the economic loss rule while dismissing plaintiff's breach of contract claims on separate grounds); see also Suffolk County, 728 F.2d at 62–63 (affirming the dismissal of appellant's claim for negligence as being barred by the economic loss rule, while affirming the dismissal of appellant's claim for breach of contract for lack of contractual privity).

Plaintiffs"). (TAC ¶¶ 4-5). However, the State of Florida has administratively dissolved every single one of these LLC Plaintiffs. See Biging Aff., Exhibit "C" (the Eagle LLCs were dissolved on or about 9/26/08 and the Sands Harbor LLCs were dissolved on or about 9/24/2010). None of the LLC Plaintiffs have received the requisite certificate of authority to do business in NY state. Therefore, pursuant to NY law, the LLC Plaintiffs are legally incapacitated and without authority and/or standing to litigate the present action.

The question of whether a dissolved (foreign) LLC has the authority to bring an action in federal court is determined under Federal Rule of Civil Procedure 17(b)(3). Pursuant to Rule 17(b)(3), the Court is to look to the law of the State in which the action is pending to determine this question. See In re: Dairy Farmers of Am., Inc., 767 F. Supp. 2d 880, 892 (N.D. Ill. 2011) ("Rule 17(b)(3) provides that the law of the state where the Court is located guides the inquiry when it comes to limited liability companies"). Looking at New York law on this issue, it is clear that a dissolved corporation has no right to pursue new business of any kind, including brining suit against others in the courts of New York. See Conte v. County of Nassau, 2013 U.S. Dist. LEXIS 105207, at n.36 (E.D.N.Y. July 26, 2013) (noting that "[u]nder New York law, '[a] dissolved corporation is prohibited from carrying on new business'") (quoting Moran Enters., Inc. v. Hurst, 66 A.D.3d 972, 975 (N.Y. App. Div. 2d Dep't 2009) (also stating that a dissolved corporation generally "does not enjoy the right to bring suit in the courts" of New York)). Indeed, under New York law, foreign LLCs that are not authorized to do business in New York must take certain actions, including registering with the Department of State, and affirmatively plead their ability to sue in New York State court to initiate a suit. Specifically, the applicable New York statute states that "[a] foreign limited liability company doing business in this state without having received a certificate of authority to do business in this state may not maintain any action, suit or special proceeding in any court of this state." NY CLS LLC § 808(a); see also id. §§

802(a)(7) (statement of continued existence in foreign jurisdiction), 807 (termination notification requirement), 809 (attorney general enforcement), 206 (publishing requirement). Moreover, an entity search on the New York Department of State's website indicates that none of the LLC Plaintiffs have received a certificate of authority to do business in this state, and thus, may not maintain any action here. See Biging Aff, ¶ 6.

Therefore, neither the Sands Harbor nor the Eagle LLC Plaintiffs possess the capacity to bring the suit they have purported to bring herein, and any claims asserted on their behalf must be dismissed.

## POINT III

### SOME OR ALL OF THE PLAINTIFFS LACK STANDING AND/OR ARE NOT THE REAL PARTY(IES) IN INTEREST

Aside from the LLC Plaintiffs lacking the legal capacity to sue, Plaintiffs' TAC should be dismissed as to the LLC Plaintiffs and all of the other Plaintiffs because Plaintiffs fail to properly plead they have standing to sue on the claims asserted herein. In fact, in looking through Plaintiffs' 187–page TAC it is impossible to determine from Plaintiffs' allegations whether any of the Sands Harbor or Eagle Plaintiffs are the real parties in interest in this case, or if so, which one(s).

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975); Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC), 721 F.3d 54, 66 (2d Cir. N.Y. 2013). To ensure that this "bedrock" case-or-controversy requirement is met, courts require that plaintiffs establish their "standing" as "the proper part[ies] to bring" suit. Raines v. Byrd, 521 U.S. 811, 818 (1997).

To have standing, a plaintiff must: (1) allege personal injury (2) fairly traceable to the defendant's allegedly unlawful conduct and (3) likely to be redressed by the requested relief. Picard, 721 F.3d at 66; W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106–7 (2d

Cir. N.Y. 2008); Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1091 (2d Cir. Conn. 1995). In other words, "[a] plaintiff must always have suffered a 'distinct and palpable injury to himself.'" Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979) (quoting Warth, 422 U.S. at 501)). "The injury must be 'concrete in nature and particularized to [the plaintiff].'" Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1091–92 (2d Cir. Conn. 1995) (quoting United States Catholic Conf. v. Abortion Rights Mobilization Inc., 885 F.2d 1020, 1023–1024 (2d Cir. N.Y. 1989)). In addition, the injury must not be "abstract," "conjectural," or "hypothetical." Id. (citing L.A. v. Lyons, 461 U.S. 95, 101–2 (U.S. 1983)).

As a general rule, the "injury-in-fact" requirement means that a plaintiff must have personally suffered an injury. W. R. Huff Asset Mgmt. Co., LLC, 549 F.3d at 106–7; see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1 (1992) ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) ("Art[icle] III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . . ."); Warth, 422 U.S. at 499 ("Article III . . . judicial power exists only to redress or otherwise to protect against injury to the complaining party . . . ."); Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166 (1972) (stating that a party may invoke the court's authority only to "seek redress for injury done to him . . . not [to] seek redress for injuries done to others").

In the present case, Plaintiffs' TAC is deficient because nowhere in the 187 pages of allegations do the Sands Harbor Plaintiffs or the Eagle Plaintiffs actually plead an injury-in-fact that is specific to any particular Plaintiff. Therefore, it is impossible to determine from the TAC which, if any, of the Plaintiffs have standing or are the real parties in interest. For example, one can see from public records

9

that Pine Creek Ranch, LLC was formed on or about April 20, 2006. See Biging Aff, Ex. "D". One can also see from Plaintiffs' own Court submissions that $16 Million was allegedly paid to 5200 LLC as a down payment for purchase of the property in issue with respect to the Eagle Plaintiffs' claims on or about September 20, 2005. See Biging Dec., Exhibit "E", Declaration of Greg Eagle, Exhibit "A". Clearly, Pine Creek Ranch could not have incurred this alleged $16 million in damages, since the company had not even been formed at that point in time (nor had University 1248 LLC been formed at that point).

While Plaintiffs attempt to dodge their pleading obligations in this regard by generally referencing all of the Plaintiffs as the alleged injured parties, Plaintiffs' use of group pleading is wholly insufficient to state a cause of action. See Targum v. Citrin Cooperman & Co., LLC, 2013 U.S. Dist. LEXIS 164585, at *5 n.20 (S.D.N.Y. Nov. 19, 2013) ("'[G]roup pleading' is impermissible under . . . the notice pleading requirements of Rule 8 . . . ."); Tyrone Holmes & Samuel's Temple Church of God in Christ, Inc. v. Harris, 2013 U.S. Dist. LEXIS 44194, at *8 (S.D.N.Y. Feb. 28, 2013) ("[T]he most glaring defect, under the relevant procedural rules, was Plaintiffs' pervasive 'group pleading' . . . with respect to . . . the injuries sustained by 'plaintiffs.'") (adopted in relevant part by Holmes v. Harris, 2013 U.S. Dist. LEXIS 41731 (S.D.N.Y. Mar. 25, 2013)); accord Roth v. Atex Products, Inc., 226 N.Y.S.2d 199, 201 (Sup. Ct., Nassau Co. 1962) (finding "infirmities in the complaint" where it "attempt[ed] to plead in a single cause of action facts upon which the three plaintiffs demand [damages]. The alleged wrongful acts are alleged by the pleading to have been done by the defendants collectively against the plaintiffs collectively. Nowhere does the complaint distinguish the acts by which the several plaintiffs conceive they have been separately damaged."). "Because 'standing is not dispensed in gross,' each plaintiff must establish the necessary elements with respect to each claim it asserts on its own behalf . . . ." Mental Disability Law Clinic v. Hogan, 2008 U.S. Dist. LEXIS 70684, at *21 (E.D.N.Y. Aug. 26,

2008) (citing Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996)); Monaco v. Stone, 2002 WL 32984617, at *60 (E.D.N.Y. Dec. 20, 2002).

Here, Plaintiffs fail to properly plead the standing of any individual Plaintiff. As a consequence, Plaintiffs' TAC is defective in this regard, and must be dismissed on this ground.

## POINT IV

### EAGLE'S CLAIMS MUST BE DISMISSED PURSUANT TO THE DOCTRINE OF *IN PARI DELICTO*

To the extent the Court finds that Eagle alone, or the Eagle Plaintiffs collectively, are barred from pursuing their claims against Reis herein based on the doctrine of *in pari delicto*, such ruling should apply to defeat their claims against WFIS as well. As noted in Reis' moving papers, Greg W. Eagle engaged in repeated financial fraud, which acts as a bar to the claims asserted in this action. Without repeating at length the arguments made in Reis' motion papers on this point, WFIS adopts and joins in same. See Reis Memo of Law in Support at 19–25; Docket No. 159; see also Biging Dec., Exs. F-I."[5]

---

[5] As explained in Reis' Memorandum of Law, the principle that one wrongdoer may not recover against another is well-established, and a particularly "strong" one, under New York law. See Picard, 721 F.3d at 63 (quoting Kirschner v. KPMG LLP, 15 N.Y.3d 446, 464 (N.Y. 2010) ("The doctrine of in pari delicto mandates that the courts will not intercede to resolve a dispute between two wrongdoers")). It "has been wrought in the inmost texture of [New York's] common law for at least two centuries" and "applies even in difficult cases and should not be 'weakened by exceptions.'" Kirschner, 15 N.Y.3d at 464 (citing McConnell v. Commonwealth Pictures Corp., 7 N.Y.2d 465, 470 (1960)). It should clearly apply here, because Eagle pled guilty to fraud in obtaining the funds used to pursue the financing at issue here, and should not be permitted to relieve himself of the consequences of his own fraud. See Bondi v. Bank of Am. Corp. (In re Parmalat Sec. Litig.), 383 F. Supp. 2d 587,595, n.42 (S.D.N.Y. 2005) (holding in pari delicto barred fraud, negligent misrepresentation, unjust enrichment, and conspiracy claims, because "[n]o one is permitted to profit by his own fraud, or to take advantage of his own wrong, or to found a claim on his own inequity, or to acquire any rights by his own crime"); see also Bondi v. Bank of Am. Corp. (In re Parmalat Sec. Litig.), 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) ("A court 'will not aid a fraudfeasor who invokes the court's jurisdiction' to relieve it of the consequences of its fraud."). Reis also correctly notes that application of the doctrine is appropriate on a motion pursuant to Rule 12(b)(6), where the basis for the defense is ascertainable from the complaint or from other permissible sources, such as public or court records, on judicial notice. See UCAR Int'l Inc. v. Union Carbide Corp., 119 Fed. Appx. 300, 301 (2d Cir. 2004) (for purposes of in pari delicto defense, "[A] court may consider 'all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken.'") (quoting Hirsh, 72 F.3d at 1092)).

Moreover, WFIS notes that Plaintiffs' opposition to the arguments raised by Reis has already been rejected by the Second Circuit and numerous other courts. Specifically, Plaintiffs argue that there must be a strict "identity of issues" between the wrongdoing of plaintiffs and defendants for *in pari delicto* to apply. See Plaintiffs Opposition Memorandum of Law (Dkt. No. 179) at pp. 20–21. This argument has been rejected and is contrary to the broad application of *in pari delicto* to claims between wrongdoers. See UCAR Int'l Inc., 119 Fed. Appx. at 302) ("In fact, the law does not require defendants' and [plaintiff's] wrongdoing to be of an identical nature for the *in pari delicto* defense to apply."); Peltz v. SHB Commodities, Inc., 115 F.3d 1082, 1091 (2d Cir. 1997) ("[W]e now recognize a broader notion of mutuality of fault . . . . [T]he lack of an identical nature does not destroy the defense."); accord Nisselson v. Lernout, 568 F. Supp. 2d 137, 143 (D. Mass. 2008) ("[A]ccording to the [plaintiff] Trustee, because [the entity for which he is acting] was not complicit in the specific wrong underlying the claim . . . the in pari delicto defense is inapplicable. This argument not only lacks persuasive force, but also has been squarely rejected by courts."); OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.), 389 B.R. 357, 371–72 (D. Del. 2008) ("The Court concludes that [plaintiff trust's] attempt to separate the 'wrongs' committed by [plaintiff and defendant] is unsupported by relevant case law. [T]his 'hypertechnical interpretation of the *in pari delicto* doctrine is outdated' as 'it is not necessary that [the] wrongdoing of plaintiff and defendant be clearly mutual, simultaneous, and relatively equal.'") (quoting Peltz, 115 F.3d at 1090)).

## POINT V

### WITH REGARD TO PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS AS AGAINST WFIS, PLAINTIFFS' CLAIM FOR DAMAGES BASED UPON LOST PROFITS MUST BE DISMISSED

Lastly, even though the case has not moved beyond the pleading stage, it is appropriate to limit Plaintiffs' damages to legally cognizable damages. See Hecht v. Andover Assoc. Mgt. Corp., 114

A.D.3d 638 (N.Y. App. Div. 2d Dep't 2014) ("[D]amages may properly be limited on a motion to dismiss."). Since Plaintiffs' are seeking damages for lost profits, which are not legally cognizable in this case, such damages claims should be dismissed.

Under New York law, the measure of damages for a fraud cause of action is "indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out of pocket' rule." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (N.Y. 1996) (quoting Reno v. Bull, 226 N.Y. 546, 553 (N.Y. 1919)). "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." Id. (citing Cayuga Harvester v. Allis-Chalmers Corp., 95 A.D.2d 5 (N.Y. App. Div. 4th Dep't 1983)). Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud. Barrett v. Huff, 6 A.D.3d 1164, 1167 (N.Y. App. Div. 4th Dep't 2004); Kaddo v. King Serv., 250 A.D.2d 948, 949–50 (N.Y. App. Div. 3d Dep't 1998). Further, "the loss of an alternative contractual bargain . . . cannot serve as a basis for fraud or misrepresentation damages because the loss of the bargain was undeterminable and speculative." Ritani, LLC v. Aghjayan, 970 F. Supp. 2d 232, 251 (S.D.N.Y. 2013); see also Rather v. CBS Corp., 68 A.D.3d 49, 59–60 (N.Y. App. Div. 1st Dep't 2009) (dismissing as speculative fraud claim seeking to recover damages for lost opportunity and future earnings); Alpert v. Shea Gould Climenko & Casey, 160 A.D.2d 67, 72 (N.Y. App. Div. 1st Dep't 1990) (stating that "[i]t is also well settled that the victim of fraud may not recover the benefit of an alternative agreement overlooked in favor of the fraudulent one").

Similarly, a plaintiff claiming negligent misrepresentation may seek only "out-of-pocket" damages, amounting to "the actual pecuniary loss sustained as a direct result of the wrong," rather than the "profits which would have been realized in the absence" of the misrepresentation. Solin v. Domino, 501 Fed. Appx. 19 (2d Cir. N.Y. 2012) (quoting Lama Holding Co., 88 N.Y.2d at 421–22)); Creative

13

Waste Mgmt., Inc. v. Capitol Environmental Servs., Inc., 495 F. Supp. 2d 353, 361 (S.D.N.Y. 2007) (affirming that "only out-of-pocket losses were recoverable on a claim for negligent misrepresentation").

In any event, even if lost profits were permitted in fraud or misrepresentation cases, the Eagle Plaintiffs could not recover lost profits in the present case because "it is universally accepted that no one shall be permitted to profit from his own fraud, or to take advantage of his own wrong, or to found a claim upon his own iniquity, or to acquire property by his own crime." Pereira v. Aetna Cas. & Sur. Co. (In re Payroll Express Corp.), 216 B.R. 344, 360 (S.D.N.Y. 1997); Riggs v. Palmer, 115 N.Y. 506, 511(1889); see also United States v. Dreier, 952 F. Supp. 2d 582, 589–90 (S.D.N.Y. 2013) (noting the "the well-settled rule that no one shall be permitted to profit by his own fraud"). Since this Court can take judicial notice of Eagle's fraudulent conduct (without which the Eagle transaction in this case could not have gone forward) (see Biging Aff. Exs F-I), the Eagle Plaintiffs must be prohibited from recovering any claimed lost profits whether or not they would have otherwise been recoverable.

## CONCLUSION

For the foregoing reasons, Plaintiffs' TAC should be dismissed in its entirety as against WFIS, or alternatively, the Court should limit the parties, claims, and damages in accordance with the above.

Dated: New York, New York
January 16, 2015

                                                  Respectfully submitted,

                                                  **GOLDBERG SEGALLA, LLP**
                                                  *Attorneys for Defendant Wells Fargo*

By: _____
                                                  Peter J. Biging, Esq. (PB9913)
                                                  Jennifer Feldscher, Esq. (JF0603)
                                                  600 Lexington Avenue, Suite 900
                                                  New York, New York 10022
                                                  Tel: 646-292-8700

TO:

Roy A. Klein, Esq.
*Attorneys for Plaintiffs*
532 Broad Hollow Road #144
Melville, NY 11747
(631) 777-1313

Gregory J. Radomisli
Martin, Clearwater & Bell
*Attorneys for Defendant Tisdale & Nicholson,*
*Jeffrey A. Tisdale and Guy C. Nicholson*
220 East 42nd Street
New York, New York 10028
(212) 916-0923

Bachner & Associates, P.C.
*Attorneys for Defendant Michael D. Reis*
39 Broadway
Suite 1610
New York, New York 10006
(212) 344-7887

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 16, 2015, true and accurate copies of the MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WELLS FARGO INSURANCE SERVICES OF OREGON, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS, were served via the court's ECF system on:

Roy A. Klein, Esq.
*Attorneys for Plaintiffs*
532 Broad Hollow Road #144
Melville, NY 11747
(631) 777-1313
E-mail: rklein@loorak.com

Gregory J. Radomisli
Martin, Clearwater & Bell
220 East 42nd Street
New York, New York 10028
(212) 916-0923
E-mail: radomg@mcblaw.com
*Attorneys for Defendant Tisdale & Nicholson,*
*Jeffrey A. Tisdale and Guy C. Nicholson*

Michael F. Bachner
Howard S. Weiner
Scott Splittberger
Bachner & Associates, P.C.
39 Broadway, Suite 1610
New York, New York 10006
(212) 344-7887
E-mail: mb@bhlawfirm.com
E-mail: howard.weiner@gmail.com
E-mail: ss@bhlawfirm.com
*Attorneys for Defendant Michael D. Reis*

                                                        Peter J. Biging