UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE SANDS HARBOR MARINA CORP.,
SANDS HARBOR MARINA LLC,
THE SANDS HARBOR MARINA
OPERATING CORP., SANDS MARINA
OPERATING LLC., GREG W. EAGLE,
PINE CREEK RANCH, LLC,
and UNIVERSITY 1248, LLC,

                               Plaintiffs,

           -against-

WELLS FARGO INSURANCE SERVICES OF
OREGON, INC., WELLS FARGO BANK, N.A.,
EVMC REAL ESTATE CONSULTANTS, INC.,
LARRY ESACOVE, THE ESTATE OF
AIDA ESACOVE, DAVID P. GUILOT,
ANTHONY B. CHOPRA,
TISDALE & NICHOLSON, LLP,
JEFFERY A. TISDALE, GUY C. NICHOLSON
and MICHAEL D. REIS,

                           Defendants.

Civil Action No.:
09 CV 03855 (JS) (SIL)

**MEMORANDUM OF LAW
IN SUPPORT OF THE MOTION TO DISMISS
BY DEFENDANTS TISDALE & NICHOLSON, LLP
JEFFREY A. TISDALE and
GUY C. NICHOLSON**

Of Counsel:  Gregory J. Radomisli (GJR 2670)

2462534.1

## <u>TABLE OF CONTENTS</u>

Preliminary Statement............................................................................................1

Statement of Plaintiffs' Allegations.......................................................................1

Argument .................................................................................................................3

POINT I – THE LLC PLAINTIFFS LACK THE
CAPACITY TO SUE..................................................................................................3

POINT II-- GREG W. EAGLE'S CLAIMS SHOULD BE DISMISSED
BECAUSE HE HAS NOT INCURRED ANY INJURIES
AND THEREFORE DOES NOT HAVE STANDING……………………………………….6

POINT III – SOME OF ALL OF THE PLAINTIFFS LACK
STANDING AND/OR ARE NOT THE REAL
PARTY(IES) IN INTEREST........................................................................................8

POINT IV – EAGLE'S CLAIMS MUST BE DISMISSED
PURSUANT TO THE DOCTRINE OF *IN PARI DELICTO* ...................................9

POINT V – WITH REGARD TO PLAINTIFFS' FRAUD
AND NEGLIGENT MISREPRESENTATION CLAIMS,
PLAINTIFFS' CLAIM FOR DAMAGES BASED UPON
LOST PROFITS MUST BE DISMISSED ..............................................................11

CONCLUSION...........................................................................................................13

The Sands Harbor Plaintiffs and the Eagle Plaintiffs are two groups of parties that unsuccessfully sought to obtain loans to fund their speculative real estate ventures in Florida. They allege in the TAC that defendants T&N, Michael D. Reis ("Reis") and the other defendants engaged in a scheme "mastermind[ed]" by defendants Aida and Larry Esacove (via their "alter ego" defendant EVMC Real Estate Consultants, Inc.) ("EVMC") to fraudulently induce Plaintiffs to wire approximately $9 million dollars to defendant T&N on August 31, 2006 and November 27, 2007 (TAC, ¶¶ 1, 4-5, 13-14, 24, 40, 89, 103, 121, 141, 259).    The T&N defendants were named in this lawsuit solely as a result of their representation of ("EVMC") in conjunction with various real estate transactions involving the plaintiffs.

Plaintiffs allegedly engaged EVMC, "the hub of the conspiracy" (TAC ¶ 15), to assist them with obtaining financing for proposed real estate developments, but EVMC allegedly did nothing to procure funding sources for Plaintiffs (TAC ¶ 15).    According to Plaintiffs, their failure to obtain loans— rather than being an extension of Eagle's ongoing fraud, or their own failure to discover that "[t]he Esacoves were prolific international and domestic con artists for over 20 years . . ." (TAC ¶ 25), or that "EVMC never closed a loan" (TAC ¶ 15), or simply their misfortune in having become financially over-extended themselves during the "near collapse of the nation's . . . credit system" (TAC ¶ 29)— was because EVMC was a "sham" corporation (TAC ¶¶ 15, 18) that diverted the initial funds paid by Plaintiffs to EVMC "into defendants' own pockets." (TAC ¶¶ 1, 2, 24, 239).

Reis allegedly played a critical role in the "conspiracy."  See TAC, ¶¶ 29, 31, 35. Plaintiffs allege that Reis sold his access to WFIS letterhead to EVMC and the Esacoves in exchange for $600,000.00 in illicit "under-the-table" kickbacks and bribes.  See TAC, ¶ 29.

2462534.1

2

In addition, it is alleged that Reis received commissions on approximately $280,956.28 in premiums that EVMC paid to WFIS in connection with various Client Services (consulting) Agreements and insurance policies that Reis allegedly required *EVMC* to purchase from WFIS as a condition of his involvement. See TAC, ¶ 29.[2]  WFIS's alleged participation in the fraudulent transactions is based solely upon Reis' alleged misrepresentations made to Plaintiffs regarding various financial or other information that was allegedly sent to Plaintiffs by Reis using WFIS letterhead and/or his WFIS email account. See TAC, ¶ ¶ 17, 29, 31, 43, 87–93, 98–100.

The Sands Harbor and Eagle Plaintiffs are seeking to recover in this action approximately $44 million in alleged out-of-pocket losses, as well as unspecified incidental damages, consequential damages for lost profits and loss of reputation, and punitive damages. See TAC, ¶ 1.  In this regard, however, it is noted that Greg Eagle has pled guilty to obtaining monies apparently used to pursue the loan proceeds at issue herein via fraud – for which he has been sentenced, *inter alia,* to serve 6 years in federal prison.  See Biging Dec., Exhibits F–I.  In light of this, Defendant Reis has moved to dismiss the claims asserted against him by the Eagle Plaintiffs based upon the doctrine of *in pari delicto*.  See Docket Nos. 158 and 159. This motion has been fully briefed (with Plaintiffs' Opposition filed at Docket No. 179, and Reis' Reply at Docket No. 185), and is presently before the Court.

## ARGUMENT

---

[2] In other words, despite the approximately $9 million Plaintiffs allegedly paid to EVMC as a result of EVMC's supposedly fraudulent scheme, Plaintiffs do not allege that they paid *any* monies directly to WFIS or to T&N for T&N's benefit (rather, the monies sent to the T&N client trust account were payments to EVMC).  And the $280,956.28 *EVMC* paid to WFIS was made pursuant to a client services/consulting agreement and in connection with the purchase of insurance coverage for EVMC.

2462534.1

**POINT I**

**THE LLC PLAINTIFFS LACK THE CAPACITY TO SUE**

Plaintiffs' TAC is brought, in part, by four LLC Plaintiffs—Sands Harbor Marina LLC; Sands Harbor Marina Operating LLC; Pine Creek Ranch, LLC; and University 1248, LLC (the "LLC Plaintiffs").    (TAC ¶¶ 4-5).    However, the State of Florida has administratively dissolved every single one of these LLC Plaintiffs.  See Biging Aff., Exhibit "C" (the Eagle LLCs were dissolved on or about 9/26/08 and the Sands Harbor LLCs were dissolved on or about 9/24/2010), *prior to the initiation of this lawsuit against the T&N defendants.*[3]  None of the LLC Plaintiffs have received the requisite certificate of authority to do business in NY state.  Therefore, pursuant to New York law, the LLC Plaintiffs do not have legal capacity to sue, and are without authority and/or standing to litigate the present action.

The question of whether a dissolved (foreign) LLC has the authority to bring an action in federal court is determined under Federal Rule of Civil Procedure 17(b)(3).  Pursuant to Rule 17(b)(3), the Court is to look to the law of the State in which the action is pending to determine this question.  See In re: Dairy Farmers of Am., Inc., 767 F. Supp. 2d 880, 892 (N.D. Ill. 2011) ("Rule 17(b)(3) provides that the law of the state where the Court is located guides the inquiry when it comes to limited liability companies").  Because the TAC alleges only state common law causes of action, the portion of that subsection allowing a non-corporate association or partnership to sue "to enforce a substantive right under the United

---

[3] On a motion to dismiss, the district court may look to public records, including court records, see Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Reesorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004), and consider documents of which the plaintiff had notice, even though those documents were not incorporated in the complaint by reference. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).

2462534.1

4

States Constitution or laws" is inapplicable to this case.  Simply put, if the State law in which the federal district court sits would not allow suit by the LLC Plaintiffs, they cannot bring their claims in federal court.

Looking at New York law on this issue, it is clear that a dissolved corporation has no right to pursue new business of any kind, including brining suit against others in the courts of New York.  See Conte v. County of Nassau, 2013 U.S. Dist. LEXIS 105207, at n.36 (E.D.N.Y. July 26, 2013) (noting that "[u]nder New York law, '[a] dissolved corporation is prohibited from carrying on new business'") (quoting Moran Enters., Inc. v. Hurst, 66 A.D.3d 972, 975 (N.Y. App. Div. 2d Dep't 2009) (also stating that a dissolved corporation generally "does not enjoy the right to bring suit in the courts" of New York)).

*Furthermore, and irrespective of whether an LLC still exists, or has been dissolved, or whether the business pursued is new or old business,* under New York law, foreign LLCs that are not authorized to do business in New York must take certain actions, including registering with the Department of State, and affirmatively plead their ability to sue in New York State court to initiate a lawsuit.  The controlling  New York statute states that "[a] foreign limited liability company doing business in this state without having received a certificate of authority to do business in this state may not maintain any action, suit or special proceeding in any court of this state."  NY CLS LLC § 808(a); see also id. §§ 802(a)(7) (statement of continued existence in foreign jurisdiction), 807 (termination notification requirement), 809 (attorney general enforcement), 206 (publishing requirement).  Moreover, an entity search on the New York Department of State's website shows that none of the LLC Plaintiffs have received a certificate of authority to do business in this state, and therefore, may not maintain this action.  See Biging Aff, ¶ 6.

Accordingly, neither the Sands Harbor nor the Eagle LLC Plaintiffs possess the capacity to bring the suit they have purported to bring herein, and any claims asserted on their behalf must be dismissed.

## POINT II

### GREG W. EAGLE'S CLAIMS SHOULD BE DISMISSED BECAUSE HE HAS NOT INCURRED ANY INJURIES AND THEREFORE DOES NOT HAVE STANDING

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975); Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC), 721 F.3d 54, 66 (2d Cir. N.Y. 2013). To ensure that this "bedrock" case-or-controversy requirement is met, courts require that plaintiffs establish their "standing" as "the proper part[ies] to bring" suit. Raines v. Byrd, 521 U.S. 811, 818 (1997).

To have standing, a plaintiff must: (1) allege personal injury (2) fairly traceable to the defendant's allegedly unlawful conduct and (3) likely to be redressed by the requested relief. Picard, 721 F.3d at 66; W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106–7 (2d Cir. N.Y. 2008); Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1091 (2d Cir. Conn. 1995). In other words, "[a] plaintiff must always have suffered a 'distinct and palpable injury to himself.'" Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979) (quoting Warth, 422 U.S. at 501)). "The injury must be 'concrete in nature and particularized to [the plaintiff].'" Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1091–92 (2d Cir. Conn. 1995) (quoting United States Catholic Conf. v. Abortion Rights Mobilization Inc., 885 F.2d 1020, 1023–1024 (2d Cir. N.Y. 1989)). In addition, the injury  must not be

"abstract," "conjectural," or "hypothetical." Id. (citing L.A. v. Lyons, 461 U.S. 95, 101–2 (U.S. 1983)).

As a general rule, the "injury-in-fact" requirement means that a plaintiff must have personally suffered an injury. W. R. Huff Asset Mgmt. Co., LLC, 549 F.3d at 106–7; see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1 (1992) ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) ("Art[icle] III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . . ."); Warth, 422 U.S. at 499 ("Article III . . . judicial power exists only to redress or otherwise to protect against injury to the complaining party . . . ."); Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166 (1972) (stating that a party may invoke the court's authority only to "seek redress for injury done to him . . . not [to] seek redress for injuries done to others").

In its initial Interrogatories, T&N asked "Did Eagle wire any money into the T&N client trust account from his own personal account (as distinct from acting as a representative of Pine Creek or University 1248)?" and plaintiff answered *"No."* (Exhibit J attached to the Declaration of Gregory J. Radomisli; Response to Interrogatory No. 2). Similarly, when asked to identify the sources of the funds, if any, Eagle wired to the T&N client trust account in furtherance of the Pine Creek and University 1248 Projects, Eagle responded: "The funds originated from Greg W. Eagle PA in the amount of $1,500,000, Bolanos Truxton in the amount of $500,000, and Henderson, Franklin, Starnes & Holt PA in the amount of $6,375,000" (Exhibit J). Greg W. Eagle PA, Bolanos Truxton and Henderson, Franklin,

Starnes & Holt PA *are not even plaintiffs in this action*.  To close the circle, Eagle further admitted he was never planning to personally borrower one dime from EVMC or anyone else – the only borrowers were to have been Pine Creek Ranch LLC and University 1248 LLC (Exhibit K attached to the Declaration of Gregory J. Radomisli; Response to Interrogatory No. 21).

Given Eagle's admissions that he did not wire funds into the T&N Client Trust Account and was never to have been a "borrower" of the subject loan, he cannot have personally have been damaged as a result of an aborted loan that supposedly had been promised to someone else.  For these additional reasons, Eagle's claims should be dismissed.[4]


## POINT III

### SOME OR ALL OF THE PLAINTIFFS LACK STANDING AND/OR ARE NOT THE REAL PARTY(IES) IN INTEREST

Plaintiffs do not actually plead an injury-in-fact that is specific to any particular Plaintiff (which is not surprising, given Eagle's responses to T&N's Interrogatories (Exhibit J)).  Therefore, it is impossible to determine from the TAC which, if any, of the Plaintiffs have standing or are the real parties in interest.  For example, one can see from public records that Pine Creek Ranch, LLC was formed on or about April 20, 2006.  See Biging Aff, Ex. "D".  One can also see from Plaintiffs' own Court submissions that $16 Million was allegedly paid to 5200 LLC as a down payment for purchase of the property in issue with respect to the Eagle Plaintiffs' claims on or about September 20, 2005.  See Biging Dec., Exhibit "E",

---

[4] It also appears that neither Pine Creek Ranch, LLC nor University 1248, LLC incurred any injuries, and therefore their claims should be dismissed for this reason as well as for lack of capacity to sue.

2462534.1

8

Declaration of Greg Eagle, Exhibit "A".   Clearly, Pine Creek Ranch could not have incurred this alleged $16 million in damages, since the company had not even been formed at that point in time (nor had University 1248 LLC been formed at that point).

While Plaintiffs attempt to dodge their pleading obligations in this regard by generally referencing all of the Plaintiffs as the alleged injured parties, Plaintiffs' use of group pleading is wholly insufficient to state a cause of action.  See Targum v. Citrin Cooperman & Co., LLC, 2013 U.S. Dist. LEXIS 164585, at *5 n.20 (S.D.N.Y. Nov. 19, 2013) ("'[G]roup pleading' is impermissible under . . . the notice pleading requirements of Rule 8 . . . ."); Tyrone Holmes & Samuel's Temple Church of God in Christ, Inc. v. Harris, 2013 U.S. Dist. LEXIS 44194, at *8 (S.D.N.Y. Feb. 28, 2013) ("[T]he most glaring defect, under the relevant procedural rules, was Plaintiffs' pervasive 'group pleading' . . . with respect to . . . the injuries sustained by 'plaintiffs.'") (adopted in relevant part by Holmes v. Harris, 2013 U.S. Dist. LEXIS 41731 (S.D.N.Y. Mar. 25, 2013)); accord Roth v. Atex Products, Inc., 226 N.Y.S.2d 199, 201 (Sup. Ct., Nassau Co. 1962) (finding "infirmities in the complaint" where it "attempt[ed] to plead in a single cause of action facts upon which the three plaintiffs demand [damages].  The alleged wrongful acts are alleged by the pleading to have been done by the defendants collectively against the plaintiffs collectively.   Nowhere does the complaint distinguish the acts by which the several plaintiffs conceive they have been separately damaged.").  "Because 'standing is not dispensed in gross,' each plaintiff must establish the necessary elements with respect to each claim it asserts on its own behalf . . . ." Mental Disability Law Clinic v. Hogan, 2008 U.S. Dist. LEXIS 70684, at *21 (E.D.N.Y. Aug. 26, 2008) (citing Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996));  Monaco v. Stone, 2002 WL 32984617, at *60 (E.D.N.Y. Dec. 20, 2002).

2462534.1

Here, Plaintiffs fail to properly plead the standing of any individual Plaintiff. As a consequence, Plaintiffs' TAC is defective in this regard, and must be dismissed on this ground.

## POINT IV

### EAGLE'S CLAIMS MUST BE DISMISSED PURSUANT TO THE DOCTRINE OF *IN PARI DELICTO*

To the extent the Court finds that Eagle alone, or the Eagle Plaintiffs collectively, are barred from pursuing their claims against Reis herein based on the doctrine of *in pari delicto*, such ruling should apply to defeat their claims against T&N as well.[5] As noted in Reis' moving papers, Greg W. Eagle engaged in repeated financial fraud, which acts as a bar to the claims asserted in this action. Without repeating at length the arguments made in Reis' motion papers on this point, T&N adopts and joins in same. See Reis Memo of Law in Support at 19–25; Docket No. 159; see also Biging Dec., Exs. F-I."[6]

---

[5] The T&N defendants deny any wrongdoing, and to that extent, the doctrine of *in pari delicto* would be immaterial. However, on a 12(c) motion, the Court must accepts all allegations in the complaint as true. See e.g. Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2011). For the purposes of this motion only, and accepting the allegations in plaintiffs' TAC as true for argument sake, the T&N defendants maintain that the doctrine of *in pari delicto* operates as a complete bar to the instant lawsuit.

[6] As explained in Reis' Memorandum of Law, the principle that one wrongdoer may not recover against another is well-established, and a particularly "strong" one, under New York law. See Picard, 721 F.3d at 63 (quoting Kirschner v. KPMG LLP, 15 N.Y.3d 446, 464 (N.Y. 2010) ("The doctrine of in pari delicto mandates that the courts will not intercede to resolve a dispute between two wrongdoers")). It "has been wrought in the inmost texture of [New York's] common law for at least two centuries" and "applies even in difficult cases and should not be 'weakened by exceptions.'" Kirschner, 15 N.Y.3d at 464 (citing McConnell v. Commonwealth Pictures Corp., 7 N.Y.2d 465, 470 (1960)). It should clearly apply here, because Eagle pled guilty to fraud in obtaining the funds used to pursue the financing at issue here, and should not be permitted to relieve himself of the consequences of his own fraud. See Bondi v. Bank of Am. Corp. (In re Parmalat Sec. Litig.), 383 F. Supp. 2d 587,595, n.42 (S.D.N.Y. 2005) (holding in pari delicto barred fraud, negligent misrepresentation, unjust enrichment, and conspiracy claims, because "[n]o one is permitted to profit by his own fraud, or to take advantage of his own wrong, or to found a claim on his own inequity, or to acquire any rights by his own crime"); see also Bondi v. Bank of Am. Corp. (In re Parmalat Sec. Litig.), 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) ("A court 'will not aid a tortfeasor who invokes the court's jurisdiction' to relieve it of the consequences of its fraud."). Reis also correctly notes that application of the doctrine is appropriate on a motion pursuant to Rule 12(b)(6), where the basis for the defense is ascertainable from the complaint or from other permissible (footnote continued)

2462534.1

Moreover, T&N notes that Plaintiffs' opposition to the arguments raised by Reis has already been rejected by the Second Circuit and numerous other courts. Specifically, Plaintiffs argue that there must be a strict "identity of issues" between the wrongdoing of plaintiffs and defendants for *in pari delicto* to apply. See Plaintiffs Opposition Memorandum of Law (Dkt. No. 179) at pp. 20–21. This argument has been rejected and is contrary to the broad application of *in pari delicto* to claims between wrongdoers. See UCAR Int'l Inc., 119 Fed. Appx. at 302) ("In fact, the law does not require defendants' and [plaintiff's] wrongdoing to be of an identical nature for the *in pari delicto* defense to apply."); Peltz v. SHB Commodities, Inc., 115 F.3d 1082, 1091 (2d Cir. 1997) ("[W]e now recognize a broader notion of mutuality of fault . . . . [T]he lack of an identical nature does not destroy the defense."); accord Nisselson v. Lernout, 568 F. Supp. 2d 137, 143 (D. Mass. 2008) ("[A]ccording to the [plaintiff] *Trustee*, because [the entity for which he is acting] was not complicit in the specific wrong underlying the claim . . . the *in pari delicto* defense is inapplicable. This argument not only lacks persuasive force, but also has been squarely rejected by courts."); OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.), 389 B.R. 357, 371–72 (D. Del. 2008) ("The Court concludes that [plaintiff trust's] attempt to separate the 'wrongs' committed by [plaintiff and defendant] is unsupported by relevant case law. [T]his 'hypertechnical interpretation of the *in pari delicto* doctrine is outdated' as 'it is not necessary that [the] wrongdoing of plaintiff and defendant be clearly mutual, simultaneous, and relatively equal.'") (quoting Peltz, 115 F.3d at 1090)).

---

sources, such as public or court records, on judicial notice. See UCAR Int'l Inc. v. Union Carbide Corp., 119 Fed. Appx. 300, 301 (2d Cir. 2004) (for purposes of in pari delicto defense, "[A] court may consider 'all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken.'") (quoting Hirsh, 72 F.3d at 1092).

2462534.1

11

## POINT V

### WITH REGARD TO PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS, PLAINTIFFS' CLAIM FOR DAMAGES BASED UPON LOST PROFITS MUST BE DISMISSED

Lastly, even though the case has not moved beyond the pleading stage, it is appropriate to limit Plaintiffs' damages to legally cognizable damages. See Hecht v. Andover Assoc. Mgt. Corp., 114 A.D.3d 638 (N.Y. App. Div. 2d Dep't 2014) ("[D]amages may properly be limited on a motion to dismiss."). Because Plaintiffs' are seeking damages for lost profits, which are not legally cognizable in this case, such damages claims should be dismissed.

Under New York law, the measure of damages for a fraud cause of action is "indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out of pocket' rule." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (N.Y. 1996) (quoting Reno v. Bull, 226 N.Y. 546, 553 (N.Y. 1919)). "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." Id. (citing Cayuga Harvester v. Allis-Chalmers Corp., 95 A.D.2d 5 (N.Y. App. Div. 4th Dep't 1983)). Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud. Barrett v. Huff, 6 A.D.3d 1164, 1167 (N.Y. App. Div. 4th Dep't 2004); Kaddo v. King Serv., 250 A.D.2d 948, 949–50 (N.Y. App. Div. 3d Dep't 1998). Further, "the loss of an alternative contractual bargain . . . cannot serve as a basis for fraud or misrepresentation damages because the loss of the bargain was undeterminable and speculative." Ritani, LLC v. Aghjayan, 970 F. Supp. 2d 232, 251 (S.D.N.Y. 2013); see also Rather v. CBS Corp., 68 A.D.3d 49, 59–60 (N.Y. App. Div. 1st Dep't 2009) (dismissing as speculative fraud claim

2462534.1

12

seeking to recover damages for lost opportunity and future earnings); Alpert v. Shea Gould Climenko & Casey, 160 A.D.2d 67, 72 (N.Y. App. Div. 1st Dep't 1990) (stating that "[i]t is also well settled that the victim of fraud may not recover the benefit of an alternative agreement overlooked in favor of the fraudulent one").

Similarly, a plaintiff claiming negligent misrepresentation may seek only "out-of-pocket" damages, amounting to "the actual pecuniary loss sustained as a direct result of the wrong," rather than the "profits which would have been realized in the absence" of the misrepresentation. Solin v. Domino, 501 Fed. Appx. 19 (2d Cir. N.Y. 2012) (quoting Lama Holding Co., 88 N.Y.2d at 421–22)); Creative Waste Mgmt., Inc. v. Capitol Environmental Servs., Inc., 495 F. Supp. 2d 353, 361 (S.D.N.Y. 2007) (affirming that "only out-of-pocket losses were recoverable on a claim for negligent misrepresentation").

In any event, even if lost profits were permitted in fraud or misrepresentation cases, the Eagle Plaintiffs could not recover lost profits in the present case because "it is universally accepted that no one shall be permitted to profit from his own fraud, or to take advantage of his own wrong, or to found a claim upon his own iniquity, or to acquire property by his own crime." Pereira v. Aetna Cas. & Sur. Co. (In re Payroll Express Corp.), 216 B.R. 344, 360 (S.D.N.Y. 1997); Riggs v. Palmer, 115 N.Y. 506, 511(1889); see also United States v. Dreier, 952 F. Supp. 2d 582, 589–90 (S.D.N.Y. 2013)  (noting the "the well-settled rule that no one shall be permitted to profit by his own fraud").  Because this Court can take judicial notice of Eagle's fraudulent conduct (without which the Eagle transaction in this case could not have gone forward) (see Biging Aff. Exs F-I), the Eagle Plaintiffs must be prohibited from recovering any claimed lost profits whether or not they would have otherwise been recoverable.

2462534.1

13

## **CONCLUSION**

For these reasons, it is respectfully requested that this Court grant defendants' motion in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
       January 28, 2015

Respectfully submitted,

MARTIN CLEARWATER & BELL LLP

By: _____
Gregory J. Radomisli (GJR 2670)
Attorneys for Defendants
TISDALE & NICHOLSON, LLP, JEFFREY
A. TISDALE and GUY C. NICHOLSON
220 East 42nd Street
New York, NY 10017
(212) 697-3122

2462534.1

14