UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
THE SANDS HARBOR MARINA CORP.,
SANDS HARBOR MARINA LLC, THE SANDS
HARBOR MARINA OPERATING CORP.,
SANDS MARINA OPERATING LLC,
GREG W. EAGLE, PINE CREEK RANCH,
LLC, and UNIVERSITY 1248, LLC,

                         Plaintiffs,          MEMORANDUM & ORDER
                                              09-CV-3855(JS)(AYS)

            -against-

WELLS FARGO INSURANCE SERVICES OF
OREGON, INC., WELLS FARGO BANK,
N.A., EVMC REAL ESTATE CONSULTANTS,
INC., LARRY ESACOVE, THE ESTATE OF
AIDA ESACOVE, DAVID P. GUILOT,
ANTHONY B. CHOPRA, TISDALE &
NICHOLSON, LLP, JEFFREY A. TISDALE,
GUY C. NICHOLSON, and MICHAEL D.
REIS,

                         Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:          Roy A. Klein, Esq.
                         Law Offices of Roy A. Klein
                         532 Broad Hollow Road, Suite 144
                         Melville, NY 11747

For the Wells Fargo
Defendants:              Jason Ederer, Esq.
                         Jennifer H. Feldscher, Esq.
                         Peter J. Biging, Esq.
                         Goldberg Segalla LLP
                         780 Third Avenue, Suite 3100
                         New York, NY 1001

                         Jura C. Zibas, Esq.
                         Wilson Elser
                         150 East 42nd Street, 21st Floor
                         New York, NY 10017

                         Sanem Ozdural, Esq.
                         Lewis, Brisbois, Bisgaard & Smith, LLP

```
                                    77 Water Street, Suite 2100
                                    New York, NY 10005

For the T&N Defendants:    Gregory John Radomisli, Esq.
                                    Martin, Clearwater & Bell
                                    220 East 42nd Street
                                    New York, NY 10028


For Defendant Reis:        Michael D. Reis, pro se
                                    3017 E. Nisbet Rd.
                                    Phoenix, AZ 85032

For Defendants EVMC,
Larry Esacove, the
Estate of Aida Esacove,
David P. Guilot,
Anthony B. Chopra:        No appearances.
```

SEYBERT, District Judge:

Pending before the Court are five motions filed by Defendants for judgment on the pleadings and to dismiss the Third Amended Complaint ("TAC").  (Docket Entries 157, 177, 182, 189, 196).  For the reasons that follow, these motions are GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

Plaintiffs Sands Harbor Marina Corp., Sands Harbor Marina LLC, The Sands Harbor Marina Operating Corp., Sands Marina Operating LLC (collectively "Sands Harbor"); and Greg W. Eagle ("Eagle"), Pine Creek Ranch, LLC, and University 1248, LLC's

---

[1] The following facts are taken from Plaintiffs' TAC and are presumed to be true for the purposes of this Memorandum and Order.  (See TAC, Docket Entry 147.)

(collectively "the Eagle Plaintiffs" and together with Sands Harbor, "Plaintiffs") commenced this action on September 4, 2009 against Defendants Tisdale and Nicholson, LLP ("Tisdale & Nicholson"); Jeffrey A. Tisdale, Esq. ("Tisdale"); Guy C. Nicholson, Esq. ("Nicholson" and collectively the "T&N Defendants"); Michael D. Reis ("Reis"), Wells Fargo Insurance Services of Oregon, Inc. ("WFIS"); Wells Fargo Bank, N.A. ("WFB" and together with WFIS, "Wells Fargo"); EVMC Real Estate Consultants, Inc. ("EVMC"); Larry Esacove; the estate of Aida Esacove; David P. Guilot ("Guilot"); and Anthony B. Chopra ("Chopra" and collectively "Defendants").

Plaintiffs are companies and individuals engaged in the business of property acquisition. (TAC ¶¶ 4-10.) All of the Sands Harbor Plaintiffs are corporations and limited liability companies organized under the law of the State of Florida, except Sands Harbor Marina Corp., which is organized under the laws of the State of New York. The Sands Harbor Plaintiffs have their principle places of business in New York. (TAC ¶ 3.) Eagle is a businessman domiciled in Florida, while Pine Creek Ranch, LLC and University 1248, LLC are limited liability companies organized under the laws of the State of Florida. (TAC ¶ 5.) Plaintiffs claim that Defendants stole than $44 million from them through a fraudulent scheme. (TAC ¶ 1.)

At some point before August 2006, Defendants created EVMC, a shell corporation that held itself out as a legitimate financing company.  (TAC ¶¶ 13, 18.)  Defendants then composed false documentation misrepresenting EVMC's ability to fund development projects.  (TAC ¶¶ 18-23.)  Plaintiffs assert that they were led to believe that EVMC could provide them with acquisition and construction financing to develop land in Florida. (TAC ¶ 1.)  Based on this false premise, Plaintiffs were induced to make payments to the law firm of Tisdale & Nicholson, believing that the payments were necessary to pay expenses EVMC was incurring to obtain the requested financing.  (TAC ¶ 2.)  Yet EVMC did nothing to obtain the promised financing--Defendants simply divided Plaintiffs' money among themselves.  (TAC ¶ 2.)

Each Defendant played a unique role in the scheme. Plaintiffs allege that Larry and Aida Esacove were the "masterminds" behind the fraud and received approximately $8.3 million from the scheme.  (TAC ¶ 24.)  Mrs. Esacove, in particular, directed distribution of the scheme proceeds and instructed the co-Defendants regarding the scheme's general operations.  (See, e.g., TAC ¶¶ 43(c), 68, 70, 73-74, 76.)

Defendant Reis was Vice President of WFIS and received approximately $600,000 for his role in the conspiracy.  (TAC ¶ 29.) Reis sold his access to Wells Fargo letterhead and, more specifically, created false and misleading documentation,

including "proof-of-funds" letters on Wells Fargo letterhead, which purported to show EVMC accounts blocked for Plaintiffs' transactions. (TAC ¶ 31.) The impression that Wells Fargo could vouch for EVMC's financial soundness created the illusion that EVMC was a legitimate business. (TAC ¶ 31.) At various points, Reis also represented that the transactions were moving toward closing by informing Plaintiffs that he was working on an insurance structure with London-based Wells Fargo partners. (TAC ¶¶ 32-33.) In addition to Reis, Wells Fargo employee Kathy Maloney emailed fraudulent proof-of-funds letters to Plaintiffs. (TAC ¶ 31.)

The T&N Defendants allegedly contributed to the scheme by laundering money through their firm's attorney trust account. The T&N Defendants received funds into their attorney trust account, and the attorneys then distributed the funds to the co-conspirators, or paid the Esacove's personal expenses. (TAC ¶¶ 60, 78.) The T&N Defendants also used their reputations to bolster the legitimacy of the conspiracy. (TAC ¶ 69.)

The first of four allegedly fraudulent transactions detailed in the TAC took place in August 2006. (TAC ¶ 86.) Plaintiffs allege that the Wells Fargo Defendants, the T&N Defendants, and the Esacoves convinced the Eagle Plaintiffs to wire $1,500,000 to EVMC for acquisition and construction financing. (TAC ¶ 89.) As part of this transaction, Reis provided the Eagle Plaintiffs with documentation, sent by U.S. mail and

email, indicating that Wells Fargo supported the deal. (TAC ¶ 87.)
On August 31, 2006, the Eagle Plaintiffs wired $1,500,000 to EVMC
to apply for a $150,000,000 acquisition and construction loan.
(TAC ¶ 89.) Twenty-two days after the $1,500,000 transfer, the
T&N Defendants dispersed $624,598.81 of the amount to the
conspirators. (TAC ¶ 94.)

A second transaction also took place in August 2006.
This time, however, Sands Harbor was the victim. Reis sent Sands
Harbor literature, by U.S. mail and email, representing that Wells
Fargo had a relationship with EVMC and that EVMC could provide
large-scale financing. (TAC ¶¶ 97-101.) Reis participated in a
conference call on September 25, 2006 with Aida Esacove and David
Guilot in an effort to convince Sands Harbor to wire money to
Tisdale & Nicholson. (TAC ¶ 101.) Specifically, Reis reassured
Sands Harbor that, after their money was wired, he would send
letters confirming that Wells Fargo was in the process of
finalizing the loan application. (TAC ¶ 101.) Reis also advised
Sands Harbor that Wells Fargo had a corporate "Client Services
Agreement" with EVMC under which Wells Fargo provided consulting
services to EVMC's funding transactions. (TAC ¶ 102.) On October
10, 2006, Sands Harbor wired $1,000,221 to Tisdale & Nicholson.
(TAC ¶ 103.) Once again, the T&N Defendants disbursed the funds
amongst the conspirators. (TAC ¶ 104.) At various times, Reis
assured Sands Harbor that the transaction was moving along

smoothly.  (TAC ¶¶ 107-112.)  However, Sands Harbor never received financing from EVMC.  (TAC ¶ 116.)

The third transaction took place during November and December 2006.  The conspirators sought an additional $500,000 from the Eagle Plaintiffs and, after receiving assurances from Reis, the Eagle Plaintiffs wired Tisdale & Nicholson the additional monies.  (TAC ¶¶ 117, 121, 124, 126, 133, 141.)  Subsequently, in or about March 2007, EVMC and Wells Fargo provided Plaintiffs and other victims with false assurances of performance.  (TAC ¶ 148.)  For example, on March 29, 2007, Reis knowingly created and delivered false proof-of-funds letters to Plaintiffs.  (TAC ¶¶ 158, 164.)

Defendants then conducted one more transaction with Eagle, in which Defendants asked to be paid an additional $6,375,000 from the Eagle Plaintiffs.  On September 6, 2007, Reis emailed the Eagle Plaintiffs and advised that he had recently discovered the Eagle Plaintiffs needed development funds in addition to acquisition funds.  (TAC ¶ 219.)  On November 27, 2007, the Eagle Plaintiffs, relying on various representations made by Reis, wired $6,375,000 to Tisdale & Nicholson.  (TAC ¶ 259.)  Shortly after that final transaction, Reis left Wells Fargo.  (TAC ¶ 40.)

Plaintiffs brought this action alleging (1) that Defendants violated the Racketeer Influenced and Corrupt Act of

1970 ("RICO"), as codified by 18 U.S.C. § 1961 et seq., (2) seeking declaratory relief under the federal Declaratory Judgment Act of 1946, as codified by 28 U.S.C. §§ 2201-2202, and (3) seeking relief under the common law theories of fraud, negligent misrepresentation, negligence, restitution, unjust enrichment, breach of fiduciary duty, and breach of contract. (Am. Compl. ¶¶ 328-731.) On February 19, 2013, the Court issued an Order dismissing Plaintiff's RICO claims against Wells Fargo, the T&N Defendants, and Michael D. Reis. See Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc., No. 09-CV-3855, 2013 WL 5295713, at *1 (E.D.N.Y. Sept. 18, 2013). Following a round of motions in 2014, the Court dismissed several more claims, including (1) Plaintiffs' fraud claim against Nicholson and (2) Plaintiffs' negligence and breach of fiduciary duty claims against Reis. Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc., No. 09-CV-3855, 2014 WL 4374586, at *14 (E.D.N.Y. Aug. 29, 2014). Plaintiffs filed the TAC in August 2014.

Pending before the Court are several motions filed by the T&N Defendants, the Wells Fargo Defendants, and Reis (collectively the "Moving Defendants"). Specifically, the following motions are before the Court: (1) Reis's motion to dismiss the TAC (Docket Entry 157); (2) Reis's motion to Dismiss the Wells Fargo Defendants' cross-claims for indemnification and contribution (Docket Entry 177); (3) Wells Fargo's motion to file

8

and serve amended cross-claims (Docket Entry 182); (4) the Wells Fargo Defendants' motion for judgment on the pleadings (Docket Entry 189); and (5) the T&N Defendants' motion for judgment on the pleadings (Docket Entry 196). The Moving Defendants principally argue that: (1) the Court does not have jurisdiction over Reis; (2) the LLC Plaintiffs lack the capacity to sue because they were dissolved; (3) Eagle's claims should be barred under the doctrine of in pari delicto; (4) Plaintiff's claim for lost-profits should be dismissed; and (5) that Wells Fargo's cross-claims for indemnification and contribution were not properly pleaded. (See Reis's Br., Docket Entry 159, at i; Reis's Cross-Claim Br., Docket Entry 178, at i; the T&N Defs.' Br., Docket Entry 198, at 12.)

DISCUSSION

The Court will first discuss legal standards applicable to the Moving Defendants' motions before turning to each parties' arguments.

## I.   Legal Standard

### A.   Rule 12(b)(6) and 12(c)

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 12 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).

<u>First</u>, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678, 12 S. Ct. 1949; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679, 12 S. Ct. at 1950. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>; accord <u>Harris</u>, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2d Cir. 1998) (citation omitted). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 773 (2d Cir, 1991).

The standard for evaluating a motion for judgment on the pleadings, pursuant to Rule 12(c), is the same as the standard for

a motion to dismiss under Rule 12(b).  See Karedes v. Ackerley Grp., Inc., 423 F.3d 107, 113 (2d Cir. 2005).

B.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other material beyond the pleading to resolve jurisdictional questions.  See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008).  The Court must accept as true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of the plaintiff because subject matter jurisdiction must be shown affirmatively.  See id.; Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1998); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.  Morrision, 547 F.3d at 170.

II.  Reis's Motion to Dismiss the TAC

Reis moves to dismiss the TAC primarily on jurisdictional grounds.  (See Reis Br. at 3.)  Reis argued in his first motion to dismiss, filed in January 2012, that the Court lacked personal jurisdiction of over him.  (Reis's Jan. 2012 Br.,

Docket Entry 80-1, at 19.) However, the Court did not address that point in its February 2013 Order. Instead, the Court dismissed Plaintiffs' RICO claims against Reis and others, and declined supplemental jurisdiction over Plaintiffs state law claims. (Feb. 2013 Order, Docket Entry 108, at 42.) Although the Court later reconsidered its prior decision and allowed Plaintiffs' state law claims to proceed, the Court never addressed Reis's personal jurisdiction argument contained within his original motion to dismiss. Sands Harbor, 2014 WL 4374586, at *9. The Court noted in its 2014 August Order that the issue had never been properly briefed and declined to sua sponte address the point. Id. at *10. Two months after the Court issued its August 2014 Order reinstating Plaintiffs' state law claims, Reis filed the pending motion seeking to dismiss for lack of personal jurisdiction, again contending that the Court lacks personal jurisdiction over him.

A.   Plaintiffs' Waiver Argument

As an initial matter, Plaintiffs argue that Reis waived his personal jurisdiction argument by not moving for reconsideration after the Court initially failed to address the personal jurisdiction argument in Reis's first motion to dismiss. (Pls.' Opp. Br., Docket Entry 179, at 8.)

There are two ways a litigant can waive the right to assert the defense of lack of personal jurisdiction. First, the

defense may be waived if it is not raised in the defendant's initial Rule 12 motion, or "include[d] . . . in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." FED. R. CIV. P. 12(h)(1)(B)(ii). Second, even if the requirements of Rule 12(h)(1) are satisfied, a personal jurisdiction defense can also be forfeited because of a "delay in challenging personal jurisdiction by motion to dismiss." Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 60 (2d Cir. 1999) (quoting Datskow v. Teledyne, Inc., 899 F.2d 1298, 1303 (2d Cir. 1990)). In Hamilton, for example, the Second Circuit found that a Canadian defendant waived his right to challenge personal jurisdiction by not moving to dismiss on that basis during four years of pretrial proceedings. Id. at 61–62. But see Biro v. Conde Nast, No. 11-CV-4442, 2014 WL 4851901, at *6–7 (S.D.N.Y. Sept. 30, 2014) aff'd, No. 14-CV-3815, 2015 WL 8202599 (2d Cir. Dec. 8, 2015) (finding no delay when defendant filed a motion to dismiss eleven months after filing her Answer, during which time, the parties were engaging in jurisdictional discovery); In re Helicopter Crash Near Wendle Creek, British Columbia, 485 F. Supp. 2d 47, 51–52 (D. Conn. 2007) (rejecting the argument that a defendant waived its challenge to personal jurisdiction when it pleaded the defense in its answer, but waited four months to file a motion to dismiss).

Plaintiffs claim that Reis forfeited his personal jurisdiction defense due to delay. In light of the somewhat

irregular procedural history of this case, however, the Court disagrees. There is no dispute that Reis properly raised the personal jurisdiction defense in his initial motion to dismiss under Rule 12. Moreover, Reis cannot be penalized for failing to move for reconsideration of the Court's February 2013 Order because, following that decision, Reis had every reason to believe that this case had been completely dismissed against him. After the Court reinstated Plaintiffs' state law claims, however, Reis filed a renewed motion to dismiss on personal jurisdiction grounds within two months. Reis therefore did not forfeit his personal jurisdiction argument and the Court must consider it.

B. The Court has Long Arm Jurisdiction Over Reis

Whether the Court actually has personal jurisdiction over Reis is a separate question. "Personal jurisdiction over a non-resident defendant in a federal diversity action is determined by the law of the forum state"--in this case, New York's long arm statute. Emerald Asset Advisors, LLC v. Schaffer, 895 F. Supp. 2d 418, 429 (E.D.N.Y. 2012). On a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has [personal] jurisdiction over the Defendant." Miller Inv. Trust v. Xiangchi Chen, 967 F. Supp. 2d 686, 690 (S.D.N.Y. 2013) (quoting Metro Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) (alteration in original)). "Where a court has chosen not to conduct a full-blown evidentiary

14

hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (internal quotation marks and citation omitted). Plaintiffs contend that this Court has personal jurisdiction of Reis under CPLR 302(a)(3), because Reis committed a tort outside of New York that caused injury in New York.

Under section 302(a)(3) of New York's long arm statute, a non-domiciliary can be subject to personal jurisdiction within the state if he "commits a tortious act without the state causing injury to person or property within the state." N.Y. CPLR § 302(a)(3). To make out a prima facie case that a defendant is subject to jurisdiction, the plaintiff's allegations must satisfy five elements: (1) the defendant committed a tortious act outside the State; (2) the cause of action arises from that act; (3) the act caused injury to a person or property within the State; (4) the defendant expected or should reasonably have expected the act to have consequences in the State; and (5) the defendant derived substantial revenue from interstate or international commerce. LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214, 735 N.E.2d 883, 886, 713 N.Y.S.2d 304 (N.Y. 2000). Reis does not contest that the first, second, fourth, and fifth elements of the test are satisfied. The only dispute concerns the third element--whether Reis's actions caused Plaintiffs injury within New York. (See

15

Reis's Reply Br., Docket Entry 185, at 3-4.)

"To determine whether a tortious act caused injury in New York, courts apply the situs-of-the-injury test, which asks where the original event which caused the injury occurred." Miller, 967 F. Supp. 2d at 695 (internal quotation marks and citation omitted). In a case involving fraud, "the critical question is [ ] where the first effect of the tort was located that ultimately produced the final economic injury." Bank Brussels, 171 F.3d at 792. In Bank Brussels, for example, the Second Circuit found that the situs of the injury to the Belgian bank was in New York, where the bank first felt economic injury. In that case, the bank sued a Puerto-Rican law firm for fraud, claiming that the firm omitted key information from an opinion letter the bank relied upon in issuing a line of credit to a company. Although the alleged omissions were made by the law firm in Puerto-Rico, the court found that the situs of the injury was in New York because the bank's act of disbursing funds to the company in New York was the "original event" that caused the bank economic harm. Id. at 793. Other cases within the Second Circuit have interpreted the situs-of-the-injury test similarly in cases involving fraud. See, e.g., Miller, 967 F. Supp. 2d at 696 (finding that the situs of the injury was outside of New York because the complaint did not allege that the plaintiffs relied upon any representations made in New York); Hargrave v. Oki

16

Nursery, Inc., 636 F.2d 897, 899-900 (2d Cir. 1980) (holding that misrepresentations directed at a New York buyer about the quality of grape vines located in California placed the situs of the injury in New York.) According to the TAC, Reis made misrepresentations in letters and emails sent to New York. In addition, he participated in at least one phone call with the New York-based Sands Harbor Plaintiffs during which he sought to fraudulently induce them to wire money to Defendants. Moreover, Reis and his co-conspirators were successful in convincing Sands Harbor to wire them over one-million dollars. Thus, the situs of the injury inflicted upon Sands Harbor was in New York because Sands Harbor's financial loss occurred there. Long arm jurisdiction over Reis shall thus be upheld under CPLR 302(a)(3) on that basis.[2]

C.   Venue

Reis also moves to dismiss under Rule 12(b)(3) for improper venue or, in the alternative, to transfer venue to the United States District Court for the Central District of Oregon. (Reis's Br. at 6.) Reis made the same argument in his original motion to dismiss. (Reis's Jan. 2012 Br. at 20.) But unlike the

---

[2] Plaintiffs also argue that the Court has personal jurisdiction over Reis under CPLR 302(a)(1) because Reis was "doing business" in New York. (Pl.'s Opp. Br. at 10-13.) Since the Court finds that it has personal jurisdiction over Reis under CPLR 302(a)(3), however, the Court need not analyze whether Reis was "doing business" in New York.

question of personal jurisdiction over Reis, which the Court did not address in its prior orders, the Court already ruled on the question of proper venue. See <u>Sands Harbor</u>, 2014 WL 4374586, at *11. In its August 2014 Order, the Court explained that "communications [directed] toward persons in the District [could] be enough" to properly place venue here. <u>Id.</u> And in light of Reis's alleged interactions with persons on Long Island, the Court found that venue was proper in this district. <u>Id.</u> Thus, the issue of proper venue was already decided in the Court's August 2014 Order and need not be discussed further.

III. <u>The LLC Plaintiffs Have the Capacity to Sue for the Limited Purpose of Winding Up their Affairs</u>

The Moving Defendants argue that Plaintiffs lack the capacity to pursue this lawsuit because the State of Florida administratively dissolved all of the LLC Plaintiffs in this case. (Reis's Br. at 15-16.[3]) There is no dispute that the LLC Plaintiffs have been administratively dissolved. Plaintiffs claim, however, that they can still prosecute this action because, an administratively dissolved limited liability company may continue its corporate existence to the extent necessary to "wind up and liquidate its business and affairs." (Pls.' Opp. Br. at 19.) Moreover, Plaintiffs assert that the various limited liability

_____

[3] (<u>See</u> <u>also</u> Wells Fargo's Br., Docket Entry 191, at 6-8; The T&N Defs.' Br. at 8-10.)

companies involved in this action were forced to dissolve because of Defendants' fraudulent acts. (Pls.' Opp. Br. to Wells Fargo, Docket Entry 208, at 12-15.)

Federal Rule of Civil Procedure 17 governs litigants' capacity to sue in Federal Court. Section 17(b) sets forth a choice of law rule. Under Section 17(b)(2), a corporation's capacity is determined "by the law under which it was organized," while under Section 17(b)(3)--a catch all provision--the Court must look to the "state where the court is located" to determine all other parties' capacity to bring suit. FED. R. CIV. P. 17. Because the LCC Plaintiffs are limited liability companies, not corporations, the catch-all provision is controlling and the Court must rely upon New York law to decide whether the LLC Plaintiffs have capacity to sue. See Merry Gentleman, LLC v. George & Leona Prods., Inc., No. 13-CV-2690, 2014 WL 3810998, at *2 (N.D. Ill. Aug. 1, 2014) (collecting cases); HWI Partners, LLC v. Choate, Hall & Stewart LLP, No. CV 13-CV-0918, 2013 WL 6493118, at *3 (D. Del. Dec. 11, 2013); First Am. Mort., Inc. v. First Home Builders of Fla., No. 10-CV-0824, 2011 WL 4963924, at *12-13 (D. Colo. Oct. 14, 2011); Malibu Media, LLC v. Steiner, 307 F.R.D. 470, 473 (S.D. Ohio 2015). But see Formcrete, Co. v. NuRock Constr., LLC, No. 07-CV-0290, 2007 WL 2746812, at *2 (E.D. Tex. Sept. 19, 2007). In New York, "the persons winding up the limited liability company's affairs may, in the name of and for and on behalf of the limited

19

liability company, prosecute and defend suits, whether civil, criminal or administrative." N.Y. LLC LAW § 703. Since this action accrued before the LLC Plaintiffs were dissolved, it is feasible that this lawsuit was brought by the LLC Plaintiffs in an effort to wind up their affairs after they were fatally injured by Defendants' fraudulent acts. Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1307-08 (Fed. Cir. 2003) (holding that the plaintiff had the capacity to sue to wind up a corporation's affairs); cf. Houraney v. Burton & Assoc., P.C., No. 08-CV-2688, 2011 WL 710269, at *1 (E.D.N.Y. Feb. 22, 2011) (finding that an individual prosecuting a malpractice action in the name of a dissolved LLC did not have standing to sue). The Court is troubled, however, that Plaintiffs did not submit any evidence, in the form of an affidavit or otherwise, in support of their argument that Plaintiffs filed this action in connection with efforts to wind up the LLC Plaintiffs. Should evidence surface to the contrary during discovery, the LLC's standing in this case may be re-examined on a motion for summary judgment.

Reis also argues that the LLC Plaintiffs are barred from prosecuting this action under N.Y. LLC Law § 808(a), which requires a "foreign limited liability company doing business in [New York]" to obtain a certificate of authority before "maintain[ing] any action, suit or special proceeding in any [New York] court." N.Y.

LLC Law § 808(a).[4]  However, that statute is inapplicable, assuming the LLC Plaintiffs filed suit solely for the purpose for winding up their businesses.  By definition, a limited liability company that is dissolved and winding up its operations cannot be classified as "doing business" within the meaning of N.Y. LLC Law § 808.  See Moran Enterprises, Inc. v. Hurst, 66 A.D.3d 972, 975, 888 N.Y.S.2d 109, 112 (2d Dep't 2009) ("Upon dissolution, the corporation's legal existence terminates . . . [and a] dissolved corporation is prohibited from carrying on new business . . . and does not enjoy the right to bring suit in the courts of this state, except in the limited respects specifically permitted by statute") (citations omitted).

Finally, Wells Fargo and the T&N Defendants both argue that Plaintiffs impermissibly employed "group pleading," in the TAC--lumping multiple Plaintiffs together for pleading purposes. (T&N Defs.' Br. at 9; Wells Fargo's Br. at 10.)  Wells Fargo and the T&N Defendants both claim that Plaintiffs' group pleading practice implicates Plaintiffs' standing, and seeks to have the Complaint wholly dismissed on that basis.  Although the TAC does employ group pleading, Plaintiffs' allegations reference specific communications and representations made by the individual Defendants, which can be investigated and probed in discovery.

---

[4] (Reis's Br. at 17.)

Although the Court does not sanction the practice of group pleading, which diminishes the specificity of Plaintiffs' allegations, it would be improper to dismiss the entire case on standing grounds when, as here, there are sufficient facts listed in the TAC to put Defendants on notice of the wrongs they allegedly committed.

Therefore, the Moving Defendants motions to dismiss and for judgment on the pleadings are DENIED WITHOUT PREJUDICE to the extent they seek to dismiss the LLC Plaintiffs' claims on lack of capacity and standing grounds.

IV.  <u>The Doctrine of In Pari Delico Does not Bar Eagle's Claims</u>

The Moving Defendants argue that Eagle should be dismissed as a plaintiff in this case under the doctrine of <u>in pari delicto</u> because he was engaged in an unrelated fraud scheme around the same time he was defrauded by Defendants. (Reis's Br. at 19.[5])  Beginning in 2002, Eagle submitted a number of false documents to a bank in order to obtain financing for his real estate business.  (G. Eagle Plea Tr., Docket Entry 158-6, 27:3-35:11.)  For his actions, Eagle was charged with bank fraud, wire fraud, and mail fraud.  He subsequently pleaded guilty to those charges on March 14, 2013.  (G. Eagle Plea Tr. at 1-2.)  Plaintiffs

---

[5] (<u>See</u> <u>also</u> Wells Fargo's Br. at 11; T&N Defs.' Br. at 10.)

argue that because the parties' wrongs were unrelated, the doctrine of in pari delicto does not apply. (Pls.' Opp. Br. at 21-22.)

The doctrine of "[i]n pari delicto prevents a party from suing others for a wrong in which the party itself participated." Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 412 F. App'x 325, 327 (2d Cir. 2011). For the doctrine to apply, the plaintiff must be just as culpable, or more culpable than the defendant in the conduct forming the basis for the complaint. UCAR Int'l, Inc. v. Union Carbide Corp., 119 F. App'x 300, 301-02 (2d Cir. 2004). Though the wrongs perpetrated by the parties must be similar, they need not be identical. Knox v. Countrywide Bank, 4 F. Supp. 3d 499, 510 (E.D.N.Y. 2014). However, the in pari delico doctrine "requires that the plaintiff be 'an active, voluntary participant in the unlawful activity that is the subject of the suit.'" Brandaid Mktg. Corp. v. Biss, 462 F.3d 216, 218 (2d Cir. 2006) (quoting Pinter v. Dahl, 486 U.S. 622, 636, 108 S. Ct. 2063, 2073, 100 L. Ed. 2d 658 (1988). In other words, "[p]laintiffs who are truly in pari delicto are those who have themselves violated the law in cooperation with the defendant." Pinter, 486 U.S. at 636, 108 S. Ct. at 2073 (internal quotation marks and citation omitted). In UCAR, for example, a company sued his former controlling shareholders for looting the company of millions of dollars through payments made as part of a corporate transaction. UCAR Int'l, Inc. v. Union Carbide Corp., No. 00-CV-1338, 2004 WL 137073, at

*2-3 (S.D.N.Y. Jan. 26, 2004) aff'd, 119 F. App'x 300 (2d Cir. 2004).  Before the transaction was consummated, however, the company engaged in a criminal price-fixing conspiracy that inflated the company's earnings.  In deciding that the doctrine of in pari delicto barred the company's claim against it shareholders, the court explained that the only reason the payments to controlling shareholders were wrongful was because of the price-fixing scheme, which all the parties were aware of.  Id. at *10. Although the wrong which the controlling shareholders were accused of committing was different than the criminal conduct which the company engaged in, the court found that the conduct was "sufficiently similar" for the doctrine to apply.  Id. at *11; see also Knox, 4 F. Supp. 3d at 510 (finding a couple that knowingly signed fraudulent loan documents were precluded from bringing a fraud claim against the bank that gave them the loan).

        Although Eagle and Defendants each committed similar wrongs involving fraud here, Eagle was not a participant in Defendants unlawful activity that is the subject of this action. There is no indication that Eagle and Defendants cooperated in any culpable conduct, or that Defendants were even aware of Eagle's fraudulent acts.  Although Eagle's eagerness to keep his real estate businesses solvent as a result of his bad acts may have made him an easy target for Defendants, that does not make him somehow complicit in Defendants conduct.  Since Eagle was not

engaged in Defendants' Scheme, the in parti delicto doctrine does not bar Eagle from participating as a Plaintiff in this action.

## V. Reis's Motion to Dismiss Wells Faro's Counterclaims for Indemnity and Contribution

Reis also moves to dismiss Wells Fargo's cross-claim against him for indemnity and contribution, arguing that the claim does not meet the liberal pleading requirements of Federal Rule of Civil Procedure 8. (Reis's Cross-Claim Br. at 6.) To assert a claim under Federal Rule of Civil Procedure 8(a)(2), party must commit to paper, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The pleading standards may be "lessened somewhat for third-party claims, which may be read in conjunction with the original pleadings." Arkwright Mut. Ins. Co. v. Bojoirve, Inc., No. 93-CV-3068, 1996 WL 361535, at *2 (S.D.N.Y. June 27, 1996). However, third-parties seeking indemnification or contribution must still set forth "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. For example, the Court found in Capitol Records, Inc. v. City Hall Records, Inc., No. 07-CV-6488, 2008 WL 2811481, at *5-6 (S.D.N.Y. July 18, 2008) that a party sufficiently stated a claim in their third-party complaint when they alleged that they "entered into or assumed oral and/or written contracts . . . requiring Third-Party Defendants to indemnify [them and] to hold them

harmless." Id. Conversely, in Gabriel Capital, L.P. v. Natwest Fin., Inc., 137 F. Supp. 2d 251, 269-70 (S.D.N.Y. 2000) the court found that a party failed to properly plead a third-party claim when it asserted that, if it were found to be liable, it was entitled to "indemnification and/or contribution", without setting forth any additional facts. See also Askanase v. Fatjo, 148 F.R.D. 570, 574 (S.D. Tex. 1993) (finding that a cross claim that merely state[ed] in conclusory fashion that a party was "entitled to indemnity and/or contribution" fell short of meeting the notice requirements of Rule 8).

Applying these standards, Wells Fargo's counterclaims against Reis fall short of what Rule 8 requires. Wells Fargo asserts the following cross-claim against Reis:

> The negligence and/or culpable conduct of Defendant Michael D. Reis contributed in whole or in part to Plaintiffs' injuries . . . .
>
> If Plaintiffs have sustained any injuries and/or damages as alleged in the [C]omplaint by reason of fault other than its own . . . upon the theory of apportionment of responsibility and indemnification and/or contribution, the Defendant Michael D. Reis will be liable over to and required to indemnify . . . Wells Fargo for all or part of said judgment.

(Wells Fargo's Answer, Docket Entry 156, at 115.) Although Wells Fargo's cross-claim does reference the Complaint, it does not contain a single independent fact indicating why Reis is obligated to indemnify Wells Fargo in the event Wells Fargo is ultimately

found liable to Plaintiff. Although a cross-claim provides as much detail as the allegations within the Complaint, it must provide more than boilerplate language to give adequate notice under Rule 8. Therefore, Reis's motion to dismiss Wells Fargo's cross-claim is GRANTED.

A. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), "leave to amend shall be freely granted when justice so requires." "Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on solid ground.'" Oliver Sch., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991) (quoting Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990). Wells Fargo suggests that it has viable cross-claims against Reis for either indemnity or contribution because Reis was acting as Wells Fargo's agent during the time he was soliciting money from the Plaintiffs. (Wells Fargo's Opp. Br., Docket Entry 184, at 10-13.) In response, Reis argues that Wells Fargo should not be allowed to amends its cross-claims because its indemnification allegation should be brought as a separate lawsuit in Oregon. (Reis's Cross-Claim Reply Br., Docket Entry 187, at 7.) Given that Wells Fargo's cross-claim arises from the very same facts that are the subject of Plaintiffs' claims, judicial economy would be better served by allowing Wells Fargo to amend its cross-claim, rather than splitting up this

dispute between forums.  See Morse/Diesel, Inc. v. Fid. & Deposit

Co. of Md., 715 F. Supp. 578, 583 (S.D.N.Y. 1989) (explaining that

the "Court will not needlessly bifurcate and complicate matters by

forcing plaintiff to go after a guarantor in a separate lawsuit").

Therefore, Wells Fargo is GRANTED LEAVE TO AMEND its cross-claim

for indemnity and contribution asserted against Reis.

VI.  Defendants' Argument Regarding Damages for Lost Profits is
     not Ripe for Review

        Both Wells Fargo and the T&N Defendants argue that

Plaintiffs should be precluded from recovering damages for lost

profits in this action under their fraud or negligent

representation theories of relief.  (Wells Fargo's Br. at 12-14;

T&N Defendants' Br. at 12-13.)  Plaintiffs do not dispute that

lost profits are not recoverable based upon either a fraud or

negligent representation theory.  But Plaintiffs nevertheless

argue that they sustained other consequential damages, including

payments made to vendors and "damages . . . sustained as a result

of passing up other business opportunities," which they assert are

recoverable.  (Pls.' Opp. Br. to Wells Fargo at 20.)  Given

Plaintiffs' vague assertions and the unfortunately early stage of

this litigation, it would be inappropriate for the Court to rule

on the validity of Plaintiff's damages theory at this juncture.

VII. <u>Plaintiff's Negligence Claim Against Wells Fargo is Duplicative of its Negligent Misrepresentation Claim</u>

Plaintiffs' have asserted both a common law negligence claim and a negligent misrepresentation claim against Wells Fargo. Wells Fargo argues that Plaintiffs' common law negligence claim is duplicative and should be dismissed. (Wells Fargo's Br. at 3-5.) Duplicative claims shall be dismissed when they are based on identical conduct and seek the same relief. See <u>Paladini v. Capossela, Cohen, LLC</u>, No. 11-CV-2252, 2012 WL 3834655, at *6 (S.D.N.Y. Aug. 15, 2012) (dismissing claims as duplicative where claims including negligence and negligent misrepresentation were based upon the same allegations and injuries), <u>aff'd</u>, 515 F. App'x 63 (2d Cir. 2013); <u>Donald Dean & Sons, Inc., v. Xonitek Sys. Corp.</u>, 656 F. Supp. 2d 314, 323 n.12 (N.D.N.Y. 2009) ("Although the Second Cause of Action is captioned as a negligence and negligent misrepresentation claim, there are no allegations of negligence beyond those asserting that [defendants] negligently misrepresented certain facts . . . .") (internal quotation marks omitted); <u>see also</u> <u>King Cnty., Wash. v. IKB Deutsche Industriebank AG</u>, 863 F. Supp. 2d 288, 301 (S.D.N.Y. 2012), <u>rev'd</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u>, 2012 WL 11896326 (rejecting argument that negligence claim and negligent misrepresentation claims were duplicative because they were based on different conduct). In its August 2014 Order, the Court dismissed Plaintiffs' common law

negligence claim against Reis as duplicative of its negligent misrepresentation claim. See Sands Harbor, 2014 WL 4374586, at *14. Wells Fargo argues that the negligence allegations made against it are no different. Plaintiffs assert, in opposition, that their common law negligence claim against Wells Fargo is broader in scope than its negligent misrepresentation allegation because it encompasses the allegations that Wells Fargo negligently hired and negligently supervised Reis. (Pls.' Opp. Br. to Wells Fargo at 8.) The TAC contains the allegation that Wells Fargo was negligent because it "fail[ed] to exercise reasonable due diligence in advising Sands Harbor that EVMC's closing on the financing was both certain and imminent." (TAC ¶ 418.) Even if read liberally, Plaintiffs' negligence claim does encompass a negligent hiring or negligent supervision claim against Wells Fargo. (See TAC ¶¶ 408-22.) Moreover, Plaintiffs' negligent misrepresentation claim against Wells Fargo is nearly identical to its common law negligence claim. Plaintiffs' negligent misrepresentation allegation seeks to hold Wells Fargo for "making representations to Sands Harbor to the effect that closing on the financing was both certain an imminent." (TAC ¶ 410.) Since the two claims are nearly identical, Plaintiff's common law negligence claim against Wells Fargo is DISMISSED WITH PREJUDICE as duplicative. Plaintiffs were already allowed four

opportunities to amend their Complaint, and will not be given a fifth opportunity.

<u>CONCLUSION</u>

For the Foregoing Reasons, Defendants' motions are GRANTED IN PART and DENIED IN PART.  Specifically, Reis's motion to dismiss (Docket Entry 157) and the T&N Defendants' motion for judgment on the pleadings are both (Docket Entry 196) are DENIED.  Reis's motion to dismiss Wells Fargo's cross-claim for indemnification and contribution is GRANTED, however, Wells Fargo's motion to amend (Docket Entry 182) is also GRANTED.  Wells FARGO may file and serve amended cross-claims within thirty (30) days of the date of this Memorandum & Order.  Wells Fargo's motion for judgment on the pleadings (Docket Entry 189) is GRANTED IN PART and DENIED IN PART.  Specifically, Wells Fargo's motion is GRANTED to the limited extent that Plaintiffs common law negligence claims against Wells Fargo are DISMISSED WITH PREJUDICE, but otherwise DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED:      January __13__, 2016
            Central Islip, New York

31