UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE SANDS HARBOR MARINA CORP.,
SANDS HARBOR MARINA LLC, THE SANDS
HARBOR MARINA OPERATING CORP.,
SANDS HARBOR MARINA OPERATING LLC,   Index No.: 09 CV 3855
GREG W. EAGLE, PINE CREEK RANCH, LLC,
And UNIVERSITY 1248, LLC

      Plaintiffs

  v.

WELLS FARGO INSURANCE SERVICES OF
OREGON, INC., WELLS FARGO BANK, N.A.,
EVMC REAL ESTATE CONSULTANTS, INC.,
LARRY ESACOVE, THE ESTATE OF AIDA
ESACOVE, DAVID P. GUILOT, ANTHONY
B. CHOPRA, TISDALE & NICHOLSON, LLP,
JEFFREY A. TISDALE, GUY C. NICHOLSON
and MICHAEL D. REIS,

      Defendants
_____/

**NON-PARTY DOGALI LAW GROUP'S
MOTION FOR AWARD OF EXPENSES PURSUANT TO RULE 45**

Non-party Dogali Law Group, P.A. ("DLG"), formerly known as Forizs & Dogali, P.A., through undersigned counsel and pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Rules of this Court and applicable law, moves the Court for an Order assessing expenses arising from subpoena compliance in favor of DLG and against Defendant Wells Fargo Insurance Services of Oregon, Inc. In support of the motion, non-party DLG provides the following arguments and authorities.

**I.**    **FACTUAL BACKGROUND**

From late 2007 through mid-2009, DLG was counsel to Defendant EVMC, and

performed services in relation to eight separate files or matters, seven of which were distinct disputes or transactions, and one of which was a "general" file that is typically intended to encompass other miscellaneous activities, or activities relating simultaneously to multiple matters. Dogali Decl. ¶6.

At all material times, the undersigned counsel was co-founder, managing shareholder, and majority or sole shareholder of DLG.  Undersigned counsel's direct involvement in the representation was very limited, encompassing only consultation and research regarding certain specific areas of law for a total of about one percent of the firm's total time commitment (8.7 of about 850 total hours).  Outside of this involvement, undersigned counsel was generally aware of the firm's EVMC representation, to the extent the attorneys employed by the firm who directly handled the representation routinely reported to the undersigned regarding the client relationship, the firm's commitments to or for the client, and the client's payments to the firm for services rendered and costs incurred. Dogali Decl. ¶7.

On July 22, 2010, Defendant Wells Fargo served a subpoena upon non-party DLG generally seeking production of documents relating to one of the firm's EVMC matters.  At that time, it appeared that EVMC was a non-party, and no party asserted that EVMC was inactive or incapable of asserting any legally cognizable privileges.  On July 29, 2010, the firm timely raised a number of objections to the subpoena. Thereafter, the firm communicated with counsel for Wells Fargo, assembled and produced documents responsive to the subpoena, and created a privilege log of withheld items.  Dogali Decl. ¶8.

 In September of 2010, the firm submitted to Wells Fargo, pursuant to Rule 45 of the Federal Rules of Civil Procedure, an invoice reflecting the time and expense the firm had incurred in complying with the subpoena. Though Wells Fargo received and obtained the benefit

2

of the subpoenaed documents, Wells Fargo paid no portion of the invoice. DLG then heard nothing about the matter, for *six years*. Dogali Decl. ¶9.

During April of 2016, DLG was contacted by counsel for Defendant Tisdale & Nicholson. Those communications related generally to the 2010 activities and the current status of EVMC. Apparently, sometime during the intervening six years, EVMC had been joined into the lawsuit, and had become dissolved. The firm was advised that Wells Fargo and perhaps other parties might contact the firm to seek reconsideration of the objections raised in the firm's 2010 privilege log. Dogali Decl. ¶10.

That communication arrived during July of 2016, when DLG was first contacted by counsel for Defendant Wells Fargo regarding the 2010 subpoena. The firm was advised that Wells Fargo had filed a motion to compel with this Court, seeking to overrule the privilege-based objections which a similarly-situated law firm, Defendant Tisdale & Nicholson, had asserted in connection with its EVMC-related files. In response to Wells Fargo's initial outreach, DLG diligently: attempted to contact the principals of the former client; reviewed the motion practice and materials provided by Wells Fargo's counsel; reviewed this Court's docket for the case; and constantly, cooperatively, candidly and cordially communicated with Wells Fargo's counsel about such efforts. Dogali Decl. at ¶11. These efforts and communications essentially abated in mid-August of 2016, when DLG advised Wells Fargo's counsel that it had been instructed by a former principal of EVMC to assert all available objections and privileges in relation to the subpoena. Dogali Decl. ¶12.

In December of 2016 counsel for Wells Fargo re-established contact and advised DLG that this Court had granted Wells Fargo's motion to compel against Tisdale & Nicholson and had overruled that law firm's assertions of privilege. Wells Fargo asked DLG to reconsider the

3

objections and assertions of privilege which had been raised in 2010. Dogali Decl. ¶13.

The situation which then existed presented an unusual and difficult position for DLG, in so far as the firm had been instructed by a representative of its former client to assert or preserve any privileges or confidentiality protections which might exist. The unusual situation required research and analysis of issues which would not typically be faced by recipients of a Rule 45 subpoena, including:

- Whether a dissolved or otherwise defunct corporation has standing to assert evidentiary privileges;

- Whether the former principals of a dissolved or otherwise defunct corporation have standing to assert the evidentiary privileges of their former entity, on the entity's behalf or individually;

- Whether these issues, as they relate to protection of DLG's files, are governed by the laws of New York (the location of the case), Florida (the location of the files and the prior activities at issue), and/or California (the domicile of the former client). Dogali Decl. ¶14.

DLG advised Wells Fargo that additional documents were in the possession of DLG, far in excess of the scope of the 2010 subpoena, since the original subpoena was limited to only one of the eight matters handled by the firm. Mr. Dogali suggested that Wells Fargo might consider issuing a new and broader subpoena, and DLG offered to accept service of such a subpoena if one were issued. Dogali Decl. ¶18.

The new subpoena was issued and was served on DLG by agreement, on January 23, 2017. The parties had agreed that upon issuance of the new subpoena, the 2010 subpoena was no longer of force and effect, thus obviating any need to amend, withdraw, or seek adjudication

of the objections which were raised in 2010. Dogali Decl. ¶23.

In addition to the above-described analysis, the firm was required to undertake a series of substantial, extensive, and time-consuming tasks in order to comply with Wells Fargo's subpoenas. Such tasks are described in the Dogali Declaration at paragraphs ¶¶14, 43.

On February 23, 2017, following an extended course of communication between DLG and Wells Fargo, the firm served all parties with its objections and responses to the new subpoena. Dogali Decl. ¶30. The objections and responses are concise and limited. They include:

> The responsive materials will be made available upon reaching an agreement regarding the responsibility of the party serving the subpoena for the burden and expense incurred by Dogali Law Group in complying with the subpoena, pursuant to Rule 45(d)(1). Absent such an agreement, Dogali Law Group will file a petition with the United States District Court for the Middle District of Florida for adjudication of such responsibility.

Dogali Decl. ¶30.

DLG had always advised counsel for Wells Fargo of its intention to seek recompense for the burden of complying with the subpoena.

Simultaneously with service of the responses and objections, DLG provided to counsel for Wells Fargo: 1) a detailed description of all the efforts which had been necessary to comply with the subpoena; 2) a detailed breakdown of the time and cost associated with each of the described activities; 3) a reasonable proposal to compromise the aggregate sum associated with the burden of compliance; 4) a detailed listing of the volume of records to be produced; and 5) a copy of the privilege log, which included updated entries for the single matter which had been encompassed by the 2010 privilege log. Dogali Decl. ¶31.

The firm was encouraged to expect a response to its proposal to resolve its Rule 45 objections as to burden of compliance and cost. During that time, Wells Fargo gave this Court a

letter, which it has characterized as a motion, which DLG viewed as falsely representing the communications and actions which had transpired, and the nature of the dispute which existed at the time of the letter to the Court. [Dkt 281] Upon consideration of Wells Fargo's letter motion, this Court issued an electronic Order dated March 29, 2017, compelling production of the 56 documents which had been withheld from production in 2010. The Order deemed the letter motion to be unopposed and deemed no privilege to have been asserted as to the 56 records.

On or about April 11, 2017, DLG served a motion for reconsideration of the March 29 Order. [Dkt 284] DLG noted that even as the Court had issued its March 29 ruling as to the previously-withheld 56 documents, Wells Fargo's counsel knew but did not advise the Court that the non-party DLG did intend to file an opposition to the motion, and knew but did not advise the Court that DLG had provided an updated privilege log on February 23, 2017, which continued to assert privilege-based objections as to 10 of the documents. These non-disclosures by Wells Fargo necessitated the filing of the motion for reconsideration. On April 12, 2017 Wells Fargo and DLG filed a letter request with the Court, suggesting a telephone conference to address the issues. [Dkt 283]

On April 13, 2017, while reserving its right to pursue an award of expenses under Rule 45, DLG produced the subpoenaed records, and provided to all counsel a copy of the updated privilege log which on February 23, 2017 had been provided to counsel for Wells Fargo. Dogali Decl. ¶31

On April 14, 2017, the Court heard the matter by telephone conference. The Court: 1) ordered DLG to produce the previously-withheld records by April 27, 2017, along with a privilege log for any documents being withheld; 2) invited DLG to submit a fee application to the Court if expense-related issues could not be agreed upon; 3) directed the parties to submit a

6

joint status letter on or before May 12, 2017. [Dkt 285] The production and privilege log had already been produced, the day before the Court's April 14, 2017 Order. Dogali Decl. ¶31

On May 12, 2017, the parties submitted the joint letter as directed by the Court in its Order of April 14, 2017. [Dkt 287] The parties advised that they had not reached an agreement regarding any expenses that might be owed under Rule 45, and suggested another telephone conference.

The telephone conference occurred May 31, 2017. [Dkt 288] At that time the Court ordered Wells Fargo and DLG to continue discussing a resolution of the claim for expenses, noting that if the parties did not reach an agreement, DLG could file an application for relief. DLG does so with the instant motion.

## II.     RULE 45 AND SUBPOENA COMPLIANCE EXPENSES, GENERALLY

Rule 45(d)(1) states as follows:

> (d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.
>   (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

With this motion, non-party DLG suggests that Wells Fargo has imposed undue burden upon DLG, for which reimbursement is appropriate. Courts in this Circuit have applied Rule 45 in this context as follows:

> Rule 45 protects non-parties from significant expenses incurred in their compliance with a subpoena. *See* Fed.R.Civ.P. 45 Advisory Committee's Note 1991 Adoption. The Advisory Committee Notes speak in terms of a non-party's "involuntary assistance to the court"…
>
> The courts have also made clear that Rule 45's required protection of a non-party from significant discovery expenses does not mean that the requesting party must bear the entire cost of compliance in every case. A non-party can be required to

7

> bear some or all of the expenses where the equities of the particular case demand it. *In re Honeywell Int'l, Inc. Securities Litig.,* 230 F.R.D. 293, 302–03 (S.D. N.Y. 2003); *In re Exxon Valdez,* 142 F.R.D. 380, 383 (D.D.C. 1992). To determine who should bear the costs, the courts have considered three factors: (1) whether the non-party actually has an interest in the outcome of the litigation; (2) whether the non-party can more readily bear the costs than the requesting party; and (3) whether the litigation is of public importance. *Linder v. Calero–Portocarrero,* 180 F.R.D. 168, 177 (D.D.C. 1998); *In re Exxon Valdez,* 142 F.R.D. at 383.

*Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009).  Accord, *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249, *4 (S.D. N.Y. 2012), citing *Watts v. SEC,* 482 F.3d 501, 509 (D.C. Cir. 2007); *Solomon v. Nassau County,* 274 F.R.D. 455, 460 (E.D. N.Y. 2011); *MacNamara v. City of New York,* 2006 WL 3298911, *5 (S.D. N.Y. 2006); *Prescient Acquisition Group, Inc. v. MJ Publishing Trust,* 2006 WL 2996645, *2 (S.D. N.Y. 2006); *In re World Trade Center Disaster Site Litigation,* 2010 WL 3582921, *1 (S.D. N.Y. 2010).

In this case, DLG produced the records subject to seeking reimbursement, rather than holding up the discovery process. Such cooperation should operate equitably for, and not against, DLG. "Under Rule 45, a nonparty is not rigidly required to seek reimbursement for the costs of compliance prior to responding to a subpoena." *Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*, 2006 WL 2996645, *2 (S.D. N.Y. 2006), quoting *In re First American Corp.,* 184 F.R.D. 234, 239 (S.D. N.Y. 1998).

Most of the costs sought here take the form of attorneys' fees.  There can be no doubt that a complying non-party's costs appropriately include attorneys' fees incurred in compliance. See, e.g., *In re Law Firms of McCourts & McGrigor Donald*, 2001 WL 345233 (S.D. N.Y. 2001); *Dow Chemical Co. v. Reinhard,* 2008 WL 1968302, *1 (S.D. N.Y. 2008); *Cornell v. Columbus McKinnon Corporation,* 2015 WL 4747260, *2 (N.D. Cal. 2015); *In re Seroquel Products*

8

*Liability Litigation,* 2007 WL 4287676, *2 (M.D. Fla. 2007); *Magna Mirrors of America, Inc. v. Pittsburgh Glass Works LLC,* 2012 WL 4904515, *3 (W.D. Pa. 2012); *In re Mushroom Direct Purchaser Antitrust Litigation,* 2012 WL 298480, *7 (E.D. Pa. 2012); *Finkelman v. Klaus,* 856 N.Y.S.2d 23, 23, (N.Y. Sup. Ct. 2007).

The party serving a subpoena upon a law firm for its files relating to a prior representation or matter must anticipate that the subpoenaed law firm will incur costs that may be different or greater than those incurred by individuals or other types of businesses. *Bozeman v. Chartis Cas. Co.*, 2010 WL 4386826 (M.D. Fla. 2010). In *Bozeman*, the Middle District of Florida considered a subpoena which was served upon a non-party law firm and which sought the law firm's files relating to a prior representation. Even though the non-party law firm had represented the party for "a relatively short amount of time, and the claim settled short of litigation," reimbursable burden and expense was appropriate:

> The Court is mindful that attorney Ward is a non-party and his compliance with this Court's Order would require him and/or his staff to go through the Gilley file to determine which documents Ward believes would be subject to privilege and create a privilege log. Thus, the Court finds that the equities in this case balance in favor of Defendant covering some of the costs associated with the production.

*Bozeman*, 2010 WL 4386826 at *4.

Consistent with Rule 45, the Court will require the party issuing the subject subpoena to show that it took reasonable steps to prevent undue burden for the complying party. *Molefi v. Oppenheimer Trust*, 2007 WL 538547, *2-3 (E.D. N.Y. 2007).

In evaluating costs to be awarded under Rule 45 which include attorneys' fees, the requested attorneys' fees will be evaluated using the lodestar method *Molefi v. Oppenheimer Trust*, 2007 WL 538547, *5-6 (E.D. N.Y. 2007).

9

### III. DLG FULLY AND COOPERATIVELY COMPLIED, EXPENDING A NECESSARY AND REASONABLE AMOUNT OF TIME IN DOING SO

The Dogali Declaration provides considerable detail in describing the effort put forth by DLG to comply with the subpoena and the parties' communications relating to same. Upon review of that Declaration and its exhibits, the Court can only conclude that DLG fully, diligently and cooperatively complied with the 2010 subpoena and the 2017 subpoena. All activities undertaken in compliance with the subpoena were necessary, as was the amount of time incurred in performing them.

DLG has voluntarily recognized a substantial discount against the total burden experienced, to account for the fact that many courts have determined that the complying party should not be spared any and all costs of compliance, and to allow for inefficiencies associated with the law firm's efforts. Dogali Decl. ¶51.

The Dogali Declaration further establishes that all time and cost expended in compliance with Wells Fargo's subpoenas was reasonably and necessarily incurred.

Generally, DLG incurred time with a lodestar value of about $3,600 during 2010, about $6,000 in handling communications relating to the subpoenas, about $5,000 for legal research on related issues, about $10,700 in reviewing and producing the documents and preparing a privilege log, about $8,000 in successfully presenting the Motion to Reconsider, and about $6,300 for the instant motion. The lodestar value of all time incurred is about $41,000. Voluntary reductions recognized by DLG exceed $6,500. The total attorneys' fees sought are $34,249. Dogali Decl. ¶47.

Attorneys' fees relating to presenting the instant motion are fully recoverable and appropriate. Districts courts in this Circuit recognize that attorneys' fees incurred in prosecuting a claim for attorneys' fees – the so-called "fees for fees" situation – are proper. See *Black v.*

10

*Nunwood, Inc.*, 2015 WL 1958917, *7 (S.D. N.Y. 2015), and cases cited therein; *Nat. Res. Def. Council, Inc. v. Fox*, 129 F. Supp. 2d 666, 675 (S.D. N.Y. 2001).

## IV.   THE RATES TO BE APPLIED ARE REASONABLE

In the community where compliance with the subpoena occurred, DLG's proposed hourly rates are reasonable. See Dogali Decl. Exh. 24 (*Santarlas v. Steube*, case no. 8:15-cv-1311-T-27AAS, Order entered January 3, 2017 by the Honorable James D. Whittemore, United States District Judge, awarding $400.00 per hour for Attorney Dogali, upon a finding that "the hourly rates of Plaintiffs' counsel are reasonable and consistent with the market rate for attorneys with similar experience in the community"). See also *Novak v. Safeco Ins. Co. of Illinois*, 2016 WL 8849018, *6 (M.D. Fla. 2016), report and rec. adopted, 2017 WL 1552091 (M.D. Fla. May 1, 2017) ($450 per hour); *Fine v. Baer*, 2017 WL 1437461, *7 (M.D. Fla. 2017), report and rec. adopted, 2017 WL 1449685 (M.D. Fla. April 21, 2017) (reducing otherwise customary rate to $350 per hour due to lack of complexity in the representation); *In re Orlando Gateway Partners, LLC*, 2016 WL 2341901, *7 (Bankr. M.D. Fla. 2016) ($400 per hour); *Cobbler Nevada, LLC v. Jokic*, 2016 WL 3511765, *7 (M.D. Fla. 2016), report and rec. adopted, 2016 WL 3538375 (M.D. Fla. 2016) ($425 per hour).

## V.   THE EXPENSES SOUGHT ARE REASONABLE

DLG incurred $334.83 in expenses in connection with its effort to comply with the 2010 subpoena. See Dogali Decl. Exh. 5.  DLG incurred another $431.08 in expenses in connection with its effort to comply with the 2017 subpoena.

The Dogali Declaration also establishes that these costs were reasonably and necessarily incurred. See Dogali Decl. ¶50.

11

## VI. CONCLUSION

The Court should award $35,014.91 to DLG to offset its burden of compliance under Rule 45, because:

- DLG worked diligently and cooperatively in fully complying with the 2010 subpoena;

- Wells Fargo has enjoyed the benefit of many of the produced records for nearly seven years, and never raised any cognizable objection to DLG's 2010 invoice;

- DLG worked diligently and cooperatively in fully complying with the 2017 subpoena;

- Numerous aspects of this case made compliance more difficult or time-consuming for DLG than might be the case for other types of non-parties, a fact which was always foreseeable to Wells Fargo;

- The time spent in complying with the subpoenas is reasonable;

- The hourly rates sought in connection with DLG's compliance efforts are reasonable;

- The attorneys' fees reasonably and necessarily incurred in complying with the subpoenas, and in prosecuting the related motion practice including the successful motion for reconsideration and the instant motion, are $34,249; and

- The costs reasonably and necessarily incurred in complying with the subpoenas are $765.91.

Dated: July 17, 2017                    Respectfully submitted,

                                        */s/ Andy Dogali*
                                        Andy Dogali
                                        Fla. Bar No.: 0615862
                                        401 East Jackson St., Suite 1825
                                        Tampa, FL 33602
                                        Telephone: (813) 289-0700
                                        Facsimile: (813) 289-9435
                                        Email: adogali@dogalilaw.com
                                        *Attorney for Dogali Law Group, P.A.*

## CERTIFICATE OF SERVICE

I CERTIFY that this document has been served by electronic mail this 17th day of July, 2017, upon the following attorneys and/or parties:

| | |
|---|---|
| Louis Russo, Esq.<br>Goldberg Segalla LLP<br>711 3rd Avenue<br>Suite 1900<br>New York, NY 10017<br>*lrusso@goldbergsegalla.com* | Roy A. Klein, Esq.<br>Law Offices of Roy A. Klein<br>532 Broad Hollow Road #111<br>Melville, New York 11747<br>*rklein@loorak.com* |
| Gregory J. Radomisli<br>Martin, Clearwater & Bell<br>220 East 42nd Street<br>New York, New York 10028<br>*radomg@mcblaw.com* | Mr. Michael D. Reis, *pro se*<br>3017 E. Nisbet Rd.<br>Phoenix, AZ 85032<br>*mreis1117@gmail.com* |

      /s/ Andy Dogali
Andy Dogali
Fla. Bar No.: 0615862
101 East Kennedy Blvd., Suite 1100
Tampa, FL 33602
Telephone: (813) 289-0700
Facsimile: (813) 289-9435
Email: adogali@dogalilaw.com
*Attorney for Dogali Law Group, P.A.*