UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
THE SANDS HARBOR MARINA
CORP., SANDS HARBOR MARINA LLC,
THE SANDS HARBOR MARINA
OPERATING CORP., SANDS HARBOR
MARINA OPERATING LLC, GREG W.
EAGLE, PINE CREEK RANCH, LLC
and UNIVERSITY 1248, LLC,
                            Plaintiffs,

      -against-
                                         **MEMORANDUM AND ORDER**
                                            09-CV-3855 (JS)(AYS)

WELLS FARGO INSURANCE SERVICES
OF OREGON, INC., WELLS FARGO BANK,
N.A., EVMC REAL ESTATE CONSULTANTS,
INC., LARRY ESACOVE, THE ESTATE OF
AIDA ESACOVE, DAVID P. GUILOT,
ANTHONY B. CHOPRA, TISDALE &
NICHOLSON, LLP, JEFFREY A. TISDALE,
GUY C. NICHOLSON and MICHAEL
D. REIS,

                          Defendants.
----------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

      In this nearly ten year old matter, the recipient of a Rule 45 subpoena, non-party Dogali Law Group ("DLG"), formerly known as Forzis & Dogali, P.A, has moved to recover costs and fees from defendant Wells Fargo Insurance Services of Oregon, Inc. ("WFIS"). DLG claims that it incurred $39,709 in costs and attorneys' fees, complying with WFIS' subpoena. WFIS argues that DLG's claimed expenses are exaggerated, unnecessary, or incurred as a result of its own efforts to resist complying with the subpoena.

1

After carefully examining the documentation submitted by DLG, I conclude that DLG's reasonable costs of compliance totals $10,537.33.

BACKGROUND

The plaintiffs are individuals and entities in the business of real estate acquisition and development. Third Amended Complaint ("TAC"), ¶¶ 4-5, Docket Entry ("DE") [147]. Defendant WFIS is an insurance broker licensed to sell insurance as part of the Wells Fargo group of companies, and as relevant to this matter, is the successor in interest to Accordia, the brokerage that employed defendant Michael Reis ("Reis"). Plaintiffs allege that the various defendants were involved in fraudulent conspiracy to obtain advance loan commitment fees from Plaintiffs under the pretense that the fees were to be used for the acquisition of third-party real estate financing. Id. ¶¶ 1-2.

Pertinent to the instant motion, Plaintiffs are real estate developers who allegedly sought financing from the defendant EVMC Real Estate Consultants, Inc. ("EVMC") for development projects in Florida from 2005-2008. TAC ¶¶ 4-5, 13. Plaintiffs alleges that there was never any financing available, and that the representations made with regard thereto were just a ruse designed to deceive Plaintiffs into paying commitment fees. Id. ¶¶ 1, 13, 15. Plaintiffs alleges that defendants Tisdale & Nicholson, LLP ("T&N"), who served as counsel to EVMC, reis (acting in his capacity as an employee of WFIS) and the other defendants engaged in a scheme "mastermind[ed]" by defendants Aida and Larry Esacove (the "Esacoves") (via their "alter ego" EVMC) to fraudulently induce them to wire funds to defendant T&N, which then disbursed the funds to all of the other alleged conspirators. Id. ¶¶ 1, 4-5, 13-14, 24, 40, 89, 103, 121, 141, 259.

A. The 2010 Subpoena

On July 21, 2010, WFIS issued a subpoena concerning EVMC and its principals on Forzis & Dogali ("FD"), the Florida law firm that represented EVMC in connection with the loan transactions that are at issue in this case. See Declaration of Andy Dogali in Suport of Dogali Law Group's Motion for Award of Expenses Pursuant to Rule 45 ("Dogali Decl."), Ex. 1 ("2010 Subpoena"), DE [290-3]. In September 2010, FD representatives produced documents and withheld 56 documents on the basis of privilege. Dogali Decl., Ex. 4, DE [290-3] FD billed EVMC $3,958.83 for the work done to respond to the 2010 subpoena, see Dogali Decl., Ex. 5 ("2010 Invoice"), DE [290-3], but later sought reimbursement for the same from counsel for WFIS. Dogali Decl., Ex. 7, DE [290-3].

   B.  WFIS and Plaintiffs' Motion to Compel T&N to Produce Privileged Documents

Six years later, the T&N defendants, in response to WFIS' document requests, withheld documents based upon attorney-client privilege between the Tisdale firm and their client EVMC (the "T&N Withheld Documents"). WFIS and Plaintiffs' objected to the privilege assertion for a number of reasons, among them, that the California Secretary of State website reflected that EVMC was suspended from doing business by the California Secretary of State Franchise and tax Board, and because defendant Larry Esacove has previously waived the attorney-client privilege on behalf of EVMC in a previous action. On July 15, 2016, WFIS and Plaintiffs moved this Court to compel production of the T&N Withheld Documents. See DE [258], [261].

On October 5, 2016, this Court granted WFIS' motion to compel the T&N Withheld Documents. See DE [271]. Inter alia, with respect to T&N's assertion of the attorney-client privilege, this Court ordered that the "privilege can only be asserted by

persons authorized to act on the dissolved corporation's behalf during the windup process [by] its outgoing management personnel." Declaration of Louis A. Russo in opposition to Non-Party Dogali Law Group's Motion for Award of Expenses pursuant to Rule 45 ("Russo Decl."), Ex. A Transcript of October 5, 2016 Hearing ("Tr."), 5:17-19, DE [291-3]. Tis Court held that the privilege was not being asserted in connection with EVMC's defense or prosecution of actions during its winding up phase because "EVMC is not defending the action" and "the same is true for the parties who might qualify as its outgoing management and personnel who might have asserted a privilege." Tr. 5:22-23. Therefore, "[a]s a defunct corporation, there's no one who can speak for EVMC to assert the privilege." Tr. 5:25-6:1. This Court ordered that the privilege could no longer be asserted since Larry Esacove had previously waived it in a prior action. Tr. 6:3-9.

    C. <u>The 2017 Subpoena</u>

Following this Court's privilege ruling, counsel for WFIS requested that DLG produce the 2010 Privileged Documents. Counsel conferred and efforts were made for the parties to reach an amicable resolution regarding the production of the withheld documents. During these communications, it was disclosed that DLG's files were almost all electronically kept and that production would be time consuming. Dogali Decl., Ex. 13 at 84,[1] DE [290-4]. Counsel for WFIS offered to have their e-discovery venders assess the situation and propose a less costly solution, in an effort to reduce the time and costs in responding.

After substantial correspondence, on January 23, 2017, WFIS issued a broader

---

1. For ease of reference, page numbers referenced herein are numbers assigned to pages on electronically filed documents, and not to the underlying documents themselves.

4

subpoena to DLG. Dogali Decl., Ex. 14 (the "2017 Subpoena"), DE [290-4]. The 2017 Subpoena provided DLG with this Court's Privilege Ruling and the Larry Esacove waiver, and made clear that no privilege could be asserted on behalf of EVMC.

Following the issuance of the 2017 Subpoena, WFIS counsel and Andy Dogali ("Dogali"), President and sole shareholder of DLG, continued communications regarding an agreement of fees. Dogali Decl. ¶ 2. On January 30, 2017, Dogali requested $6,400 for fees associated with the production and provided WFIS counsel support for his request. Dogali Decl. ¶ 24. WFIS counsel disagreed with the $6,400 request arguing through email, that there was no longer a need to review for privilege and as far as conducting an electronic search, WFIS had offered to provide outside staff to assist with production. Dogali Decl. Ex. 15 at 81-82, DE [290-4]. WFIS' counsel then invited Dogali to join a conference with this Court on the following day to discuss the issue. Id. Dogali declined the invitation. Dogali Decl. ¶ 25.

On February 23, 2017, DLG submitted its Objections and Responses to Subpoena Duces Tecum, and provided a chart detailing what was in each of DLG's eight files for EVMC. Dogali Decl. ¶¶ 30. Dogali also submitted an updated fee proposal of $8,750 for the work done for 2017 Subpoena, after Dogali reduced the actual costs by more than 40%. Dogali Decl. ¶ 32. Dogali also included the 2010 invoice which created a total fee request of $12,708.83. Id.

On March 6, 2017, WFIS' counsel advised Dogali that they believed his request to be unreasonable and proposed a $4,500 payment. Dogali Decl. ¶ 34. On March 15, 2017, WFIS' counsel requested an update and response to their proposed payment. Id. ¶ 35. On March 17, 2017, WFIS submitted a letter to this Court requesting it compel DLG

to produce the 2010 Privileged Documents. See DE [281]. A courtesy copy of the letter was emailed to Dogali on the same day. Id.

On March 23, 2017, Dogali communicated to WFIS' counsel that he intended to file opposition to the letter motion. Dogali Decl. ¶ 37. Dogali also communicated that he would accept $8,400 in resolution of all the Rule 45 costs for the 2010 and 2017 Subpoenas. Id. ¶ 38. This amount included the 2010 invoice and over a 70% reduction in the 2017 fees. Id.

On March 29, 2017, with WFIS' letter still unopposed, this Court ordered that the 2010 Privileged Documents be produced by no later than April 10, 2017. See DE [281]. On April 10, 2017, WFIS' counsel received an email from Dogali with an attachment containing a "Dogali Law Group, P.A.'s Motion for Reconsideration, and/or for Modification of Order dated March 29, 2017, and for Protective Order" ("Reconsideration Application"). Russo Decl., Ex. B, DE [291-3]. All counsel conferred and sought a phone conference with this Court.

Thereafter, following two separate phone conferences, this Court ordered DLG to produce all documents responsive to the subpoena, encouraged all parties to see is a resolution could be worked out, and after it became apparent that it could not, permitted the instant motion to be made. See DE [285], [288].

## DISCUSSION

I. <u>Legal Standard</u>

Federal Rule of Civil Procedure 45 provides that "[a] person commanded to produce documents or tangible things . . . may serve on the party or attorney designated in the subpoena a written objection . . . to producing electronically stored information in

the form or forms requested." Fed. R. Civ. P. 45(d)(2)(B). "If an objection is made," then:

> (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
>
> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Id. The Rule also provides that when a person moves to "quash or modify [a] subpoena," the court may "order ... production ... if the serving party ... ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(B)–(C).

Courts have deemed those provisions to "ma[k]e cost shifting mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena." Legal Voice v. Stormans, Inc., 738 F.3d 1178, 1184 (9th Cir. 2013) (citing Linder v. Calero-Portocarrero, 251 F.3d 178, 182 (D.C. Cir. 2001)). "Rule 45's required protection of a non-party from significant discovery expenses does not mean that the requesting party must bear the entire cost of compliance," however. Wells Fargo Bank, N.A. v. Konover, 259 F.R.D. 206, 207 (D. Conn. 2009). Rather, "[a] non-party can be required to bear some or all of the expenses where the equities of the particular case demand it." Id. To determine the proper allocation of costs, the court should consider "(1) whether the non-party actually has an interest in the outcome of the litigation; (2) whether the non-party can more readily bear the costs than the requesting party; and (3) whether the litigation is of public importance." Id. (citing In re Exxon Valdez, 142 F.R.D. 380, 383 (D.D.C. 1992)); In re Honeywell Int'l Sec. Litig., 230 F.R.D. 293, 303 (S.D.N.Y. 2003).

Furthermore, "only reasonable expenses are compensable" under Rule 45. G & E Real Estate v. Avison Young-Wash., D.C., LLC, 317 F.R.D. 313, 316 (D.D.C. 2016); accord In re Subpoena of Am. Nurses Ass'n, 924 F. Supp. 2d 607, 626 (D. Md. 2013); In re Honeywell Int'l Sec. Litig., 230 F.R.D. at 303. "The determination of . . . reasonableness is committed to the sound discretion of the trial court," see Travelers Indem. Co. v. Metro. Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005), but with regard to professional expenses, federal appellate courts have outlined factors that the district judge should consider when setting a reasonable fee. For an attorney, "[t]he reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008) ("Arbor Hill"). Therefore, "in exercising its considerable discretion," the district court should "bear in mind . . . case-specific variables," id. at 190, including the factors set forth in Johnson v. Georgia Highway Express, 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92–93, 96 (1989). Those factors are:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the level of skill required to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance of the case;
> (5) the attorney's customary hourly rate;
> (6) whether the fee is fixed or contingent;
> (7) the time limitations imposed by the client or the circumstances;
> (8) the amount involved in the case and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3. The court "should also bear in mind that a reasonable,

paying client wishes to spend the minimum necessary to litigate the case effectively." Id. at 190.

A non-party who moves for costs and fees bears the burden of demonstrating that those costs and fees are reasonable. See Blum v. Stenson, 465 U.S. 886, 897 (1984). Therefore, when claiming attorneys' expenses, the movant must provide "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998). The court may deduct from the requested amount "[h]ours that are 'excessive, redundant, or otherwise unnecessary.'" Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). Moreover, the movant also "has the burden of showing by satisfactory evidence—in addition to the attorney's own affidavits"—that the requested rates are those "prevailing ... for comparable attorneys of comparable skill and standing in the pertinent legal community." Farbotko v. Clinton Cnty., 433 F.3d 204, 209 (2d Cir. 2005) (quoting Blum, 465 U.S. at 896 n.11); Kirsch, 148 F.3d at 172. The pertinent community typically is "the forum of the litigation" - even if that is not where the non-party's "counsel has its primary office" - unless the movant shows that "a reasonable, paying client would have retained out-of-district counsel." Arbor Hill, 522 F.3d at 184 n.2; Smart SMR of N.Y. v. Zoning Comm'n, 9 F. Supp. 2d 143, 149 (D. Conn. 1998).

In addition to shifting costs for non-parties' compliance with a subpoena, Rule 45 directs district courts to "impose an appropriate sanction—which may include . . . reasonable attorney's fees - on a party or attorney who fails to comply" with the Rule's mandate to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). That provision authorizes

district courts to "protect non-parties from abusive subpoenas" by "award[ing] . . . attorneys' fees for litigating the subpoena." In re Rule 45 Subpoena Issued to Cablevision Systems Corp. Regarding IP Address 69.120.35.31, 2010 WL 2219343, at *11 (E.D.N.Y. Feb. 5, 2010); Stormans Inc. v. Selecky, 2015 WL 224914, at *6 (W.D. Wash. Jan. 15, 2015). Courts have awarded attorneys' fees for resisting a subpoena if (1) "the subpoena imposed an undue burden" on a non-party, and (2) the party requesting the subpoena "fail[ed] . . . to carry out [its] Rule 45-mandated duty to 'take reasonable steps to avoid imposing an undue burden'" on the non-party. See Molefi v. Oppenheimer Tr., 2007 WL 538547, at *2 (E.D.N.Y. Feb. 15, 2007). In considering the reasonableness of fees sought in a sanction motion, courts apply the same factors as used in the cost-shifting analysis. See Johnson v. N.Y.C. Transit Auth., 823 F.2d 31, 32–33 (2d Cir. 1987); Molefi, 2007 WL 538547, at *5.

II.     DLG is Entitled to An Award of Fees

WFIS argues that a fee award should be denied in its entirety. The Court rejects this argument. DLG should be reasonably compensated for the production. However, the Court agrees with WFIS that DLG's reimbursements should be limited to costs reasonably incurred.

III.     DLG's Reasonable Costs and Expenses

The "lodestar" amount for attorneys' fees - what the Second Circuit has called the "presumptively reasonable fee," Arbor Hill, 522 F.3d at 183 - "is the product of reasonable hours times a reasonable rate." Dague, 505 U.S. at 559. In calculating an award of fees and costs, the court first determines the "reasonable hourly rate," that is, "what a reasonable, paying client would be willing to pay." Arbor Hill, 522 F.3d at 184.

Then, multiplies that rate by "the number of hours reasonably expended on the litigation." Hensley, 461 U.S. at 433. "[I]n exercising [my] considerable discretion," the court may increase or reduce the amount of the award in accordance with equitable considerations such as the Johnson factors. Arbor Hill, 522 F.3d at 190; see, e.g., Serricchio v. Wachovia Sec., LLC, 706 F. Supp. 2d 237, 255, 262–63 (D. Conn. 2010) (reducing award because [i] "a reasonable client [would] experience 'sticker shock' and . . . seek to negotiate a lower fee," [ii] "a savvy client would recognize potential leverage to negotiate a lower fee from the reputational benefits that would accrue to Plaintiff's counsel for taking on this representation," and [iii] "administrative and clerical tasks that could have been performed by a paralegal but were performed by Plaintiff's counsel should be awarded at the paralegal rate"), aff'd, 658 F.3d 169 (2d Cir. 2011).

    A.  DLG's Reasonable Rate

DLG seeks rates of $350 per hour for partners Andy Dogali and Lee Atkinson ("Atkinson") and $120 per hour for paralegals Kathy Gilman ("Gilman") and Julianne Michael ("Michael"). The reasonableness of an hourly rate, however, is determined in reference to the prevailing hourly rate in the community where the district court sits. Arbor Hill, 522 F.3d at 190. "[C]ourts in the Eastern District generally approve hourly rates between $200 and $400 for partners...." Caban v. Employee Sec. Fund of the Elec. Prod. Indus. Pension Plan, 2015 WL 7454601, at *6 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). Therefore, this Court finds that the requested partner rates of $350 are reasonable.

"As to paralegals, courts in the Eastern District of New York have held that $90–$100 per hour is a reasonable fee." Douyon v. NY Med. Health Care, P.C., 49 F. Supp. 3d 328, 343 (E.D.N.Y. 2014); see Ferrara v. Prof'l Pavers Corp., 2013 WL 1212816, at *5 (E.D.N.Y. 2013); Finkel v. Rico Elec., Inc., 2012 WL 6569779 (E.D.N.Y. 2012), adopted by 2012 WL 6561270 (E.D.N.Y. 2012) (finding that $90 per hour is a reasonable rate for a paralegal). Therefore, this Court finds it reasonable to reduce the requested hourly rate of $120 for paralegals Kathy Gilman and Julianne Michael to $95 per hour.

Because the original subpoena was issued in 2010 there is an issue of whether fees awarded should be based upon current or historical rates. Therefore, simply reducing DLG's requested rate does not end the inquiry into the reasonableness of the hourly rate. Plaintiff seeks an award of attorney's fees from as early as 2010. The Second Circuit has stated that "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment[.]" LeBlanc–Sternberg, 143 F.3d 748, 764 (2d Cir. 1998) (citing Missouri v. Jenkins, 491 U.S. 274, 283–84 (1989)). In light of this precedent, the Court finds that no further reduction to the hourly rate is warranted.

    B.  Number of Hours Expended

As stated above. DLG seeks an award of fees for the original 2010 Subpoena as well as the 2017 Subpoena and costs associated with the instant motion. This Court agrees with WFIS that some of Dogali's and his law group's billing entries appear excessive.

        i.       2010 Invoice

DLG has submitted a bill totaling 22.4 hours for all work done in connection with the 2010 Subpoena. Dogali Decl., Ex. 5, DE [290-3]; id., Ex.22, DE [290-5]. 8.9 of those are hours are attributed to partner Atkinson and the remaining 13.5 hours are billed to paralegal Gilman. A review of the invoice indicates that the time expended on the matter was reasonable. Therefore, DLG is awarded the 22.4 hours submitted in the 2010 invoice at the rates awarded supra. Additionally, DLG is awarded the $334.83 in costs it advanced for the copying and postage related to the 2010 subpoena. Accordingly, DLG is awarded a total of $4397.50 in fees and $334.83 in costs, for a total of $4732.33.

   ii. 2016-2017 Fees

DLG has submitted a bill totaling 121.60 hours for all the work done during the 2016-2017 period in connection with the production for the 2017 Subpoena, as well as the instant application. The Court notes that DLG's billing entries contain "block-billing". See Dogali Decl., Ex. 21. Block-billing make it difficult to determine the reasonableness of the time spent on particular tasks and warrant a reduction in attorney's fees. See Linde v. Arab Bank, PLC, 293 F.R.D. 138, 142-43 (E.D.N.Y. 2013) ("Where billing records include a large number of block-billed entries and there is an issue as to the reasonableness of the number of hours counsel spent on the matter, an across-the-board reduction in billing hours is appropriate."). However, DLG has also submitted a breakdown of time incurred by category. See Dogali Decl., Ex. 23. For ease, the Court will first address the categories of time incurred.

At the outset, may of the categories DLG seeks reimbursement for are unreasonable. For example, after this Court's Privilege Ruling, DLG conducted research into "[w]hether the attorneys associated with Dogali Law Group have standing to assert

work product protections on their own behalf." Dogali Decl. ¶ 14. DLG undertook another privilege review and created privilege logs of materials already reviewed for privilege during the 2010 review. This review was not done for the benefit of WFIS, rather, it was done for the benefit of DLG. Thus, WFIS should not bear the costs. Further, any research undertaken by DLG with regard to the Privilege Issue and/or the Larry Esacove Waiver are likewise unreasonable as this Court had already ruled upon the issue at the time the research was undertaken and DLG was aware of this Court's ruling. Similarly, as this Court had already ruled as to the Privilege Issue and the Larry Esacove Waiver, WFIS should not shoulder the costs totaling $1050 for communications DLG chose to undertake with Mr. Esacove and David Guilot (another EVMC representative) regarding whether DLG should comply with the court ordered discovery. See e.g., Dogali Decl., Ex. 21 (entries dated 7/19/2016, 7/20/2016, 12/7/2016, 1/2/17, 1/6/17, 1/10/17, 1/11/17, 1/12/17 all attorney communication with principals of EVMC).

In addition, DLG has sought to charge WFIS for communications with former partners. See e.g., Dogali Decl., Ex. 21 (entry dates 1/18/17 and 2/1/17 note Dogali's time communicating with former F&D colleagues.) While Dogali notes his limited work on the EVMC representation, he admits that he was "generally aware of [it]" because his colleagues handling the representation "routinely conferred with [him] regarding the client relationship, the firm's commitment to or for the client and the client's payment to the firm for services rendered and costs incurred." Dogali Decl. ¶¶ 6-7. These communications were solely for the benefit of Dogali and cannot reasonably be shifted to WFIS. Dogali also seeks reimbursement for drafting memoranda to the DLG file. See e.g., Dogali Decl., Ex. 21 (entries dated 2/5/17/, 2/6/17, 2/7/17, 4/12/17, 6/9/17 note

14

Dogali drafting memorandum to file.) For the same reason that it is unreasonable for WFIS to bear the costs of Dogali's communications with former colleagues, it is similarly unreasonable for WFIS to reimburse DLG for notes to the DLG file. Accordingly, any time sought for such communications and drafting is denied.

DLG has also attempted to bill WFIS for time spent conferring with WFIS' counsel about costs and production. See e.g., Dogali Decl., Ex. 21, Billing Records (Attorney Andy Dogali 12/06/2016 .20 "Draft and dictate correspondence to Russo; receive and review correspondence from Russo"); id. (Attorney Andy Dogali 12/06/2016 .30 "Check status; draft communication to Russo"). "Rule 45 does not cut a blank check to non-parties - unnecessary or unduly expensive services do not 'result from compliance' and, therefore, do not count as 'expenses.'" United States v. McGraw-Hill Cos., 302 F.R.D. 532, 536 (C.D. Cal. 2014). In particular, non-parties "should not be permitted to run up bills" merely because they expect "someone else [to] pay[ ] the tab." Cf. Gumbhir v. Curators of Univ. of Mo., 157 F.3d 1141, 1146 (8th Cir. 1998); Medcom Holding Co. v. Baxter Travenol Labs., 200 F.3d 518, 521 (7th Cir. 1999). A reasonable, paying client, would not be willing to pay" over $3,150 for its attorneys to bicker fruitlessly with opposing counsel about fees and deadlines. Therefore, any hours billed with as communications with WFIS' counsel are eliminated from the award.

The plain language of Rule 45 provides that non-parties must be protected from significant expenses resulting from compliance [with a court order or subpoena]. It is a tenuous proposition, at best, that attorneys' fees incurred resisting a subpoena are expenses resulting from compliance." Selecky, 2015 WL 224914, at *6; cf. G & E Real

Estate, 317 F.R.D. at 316 ("It is critical . . . that only expenses that result from, and therefore, are caused by, the order of compliance are potentially compensable."). Many of the submitted records establish that DLG's attorneys were engaged in tasks wholly unrelated to document production, such as attempting to research privilege issues to resist the subpoena, and researching cost-shifting and "fees-for-fees" law.. Those costs, "even undertaken in some sense as a response to [the] subpoena," cannot be said to have "result[ed] from that subpoena." See G & E Real Estate, 317 F.R.D. at 316. Rather, they "result[ed] from whatever set of decisions by and on behalf of the non-party led to those unreasonable expenses being incurred." Id.

In addition, DLG has sought to charge WFIS for the costs of drafting and reviewing the instant application as well as its reconsideration application. As the need for the instant motion and the motion for reconsideration only arose at all because of DLG's determination to expend significant resources on researching and litigating issues that this Court had already ruled on, the costs are unnecessary and excessive. "The 39.8 hours spent on preparing for conferences with this Court, and researching and drafting the two motions may not be fairly pushed onto WFIS. Accordingly, the 39.8 hours of time spent by Dogali for a total of $13,930 are also eliminated from the award.

Finally, DLG seeks reimbursement for 24 hours of paralegal time spent "creating copies of documents and emails to be produced." Dogali Decl., ¶ 43. A review of the communications between the parties indicate offers by WFIS' counsel to allow DLG to utilize their eDiscovery vendor to copy emails. Dogali Decl., Ex. 10 at 82, DE [290-3]. Rather than explore a more efficient and economical approach for the production, DLG opted to have paralegals print each email individually and then convert it into a pdf. Id.,

Ex. 13 at 10, DE [290-4]. WFIS should not be required to bear the cost of DLG's unilateral decision to utilize a more time-consuming approach. Thus, DLG is barred from recouping the 24 paralegal hours spent copying the emails and creating the pdfs.

After excluding the unreasonable hours, a review of the records reflects that partner Dogali reasonably expended a total of 15.5 hours in responding to the 2017 Subpoena for reviewing documents for protection and privilege and creating a privilege log and revising the 2010 privilege log in February 2017. See Dogali Decl., Ex. 22. Paralegal Michael reasonably expended a total of 4 hours of work in February 2017. See Id., Multiplied by their respective reasonable rates, for partner Dogali $350 per hour, and paralegal Michael $95 per hour, partner Dogali incurred $5,425 in reasonable expenses and paralegal Michael incurred $380 in reasonable expenses, for a total of $5,805.

Combining the $4732.33 awarded to DLG for the 2010 invoice, with the $5,805 reasonably expended for the 2016-2017 period, DLG is awarded a total of $10,537.33 in reasonable costs incurred as a result of DLG's compliance with the subpoenas.

## CONCLUSION

For the foregoing reasons, DLG's total requested costs and attorneys' fees of $39,709 are poorly documented, legally unsupported, and unreasonable. After eliminating certain categories of unreasonable expenses and reducing DLG's hourly rates to a reasonable rate for this district, I conclude that $10,537.33 will adequately compensate DLG for its compliance with the Rule 45 subpoenas.

Dated: Central Islip, New York
       March 31, 2018

                                                  /s/ Anne Y. Shields
                                                ANNE Y. SHIELDS
                                       United States Magistrate Judge